1  KEVIN P.B. JOHNSON, SBN 177129
   kevinjohnson@quinnemanuel.com
2  Quinn Emanuel Urquhart & Sullivan, LLP
   555 Twin Dolphin Drive, 5th Floor
3  Redwood Shores, CA 94065
   Telephone: (650) 801-5000
4  Facsimile: (650) 801-5100

5  SEAN S. PAK, SBN 219032
   seanpak@quinnemanuel.com
6  ADAM B. WOLFSON, SBN 262125
   adamwolfson@quinnemanuel.com
7  Quinn Emanuel Urquhart & Sullivan, LLP
   50 California Street, 22nd Floor
8  San Francisco, CA 94111
   Telephone: (415) 875-6600
9  Facsimile: (415) 875-6700

10 KEVIN HARDY (*pro hac vice*)
   D.C. Bar No. 473941
11 QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
12 1300 I Street, N.W., Suite 900
   Washington, DC 20005
13 Tel: 202.538.8000
   Fax: 202.538.8100
14 kevinhardy@quinnemanuel.com

15 *Attorneys for Defendant MediaTek Inc.*

16

17                     UNITED STATES DISTRICT COURT

18                    NORTHERN DISTRICT OF CALIFORNIA

                           SAN JOSE DIVISION
19

20 | REALTEK SEMICONDUCTOR CORP., | Case No. 5:23-cv-02774-PCP |
|---|---|
| Plaintiff, | |
| | **MOTION TO DISMISS COMPLAINT BY MEDIATEK INC.** |
| v. | |
| | Judge: Hon. P. Casey Pitts |
| MEDIATEK INC.; IP VALUE MANAGEMENT INC.; and FUTURE LINK SYSTEMS, LLC., | Date Filed: June 6, 2023 |
| Defendants. | |

27

28                      **PUBLIC VERSION**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on October 26, 2023 at 10:00 a.m., or as soon as the matter may be heard, before the Honorable P. Casey Pitts of the United States District Court, Northern District of California at Courtroom 8 – 4th Floor, 280 South 1st Street, San Jose, California, Defendant MediaTek Inc. will and hereby does move to dismiss Plaintiff Realtek Semiconductor Corp.'s complaint (Dkt. No. 1) under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.  The motion is based upon this notice of motion, the supporting memorandum of points and authorities, the concurrently filed request for judicial notice, and such evidence as may be requested or permitted by the Court.

Dated: September 1, 2023          By: */s/ Adam Wolfson*
                                          KEVIN P.B. JOHNSON, SBN 177129
                                          kevinjohnson@quinnemanuel.com
                                          Quinn Emanuel Urquhart & Sullivan, LLP
                                          555 Twin Dolphin Drive, 5th Floor
                                          Redwood Shores, CA 94065
                                          Telephone: (650) 801-5000
                                          Facsimile: (650) 801-5100

                                          SEAN S. PAK, SBN 219032
                                          seanpak@quinnemanuel.com
                                          ADAM B. WOLFSON, SBN 262125
                                          adamwolfson@quinnemanuel.com
                                          Quinn Emanuel Urquhart & Sullivan, LLP
                                          50 California Street, 22nd Floor
                                          San Francisco, CA 94111
                                          Telephone: (415) 875-6600
                                          Facsimile: (415) 875-6700

                                          KEVIN HARDY (*pro hac vice*)
                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                          1300 I Street, N.W., Suite 900
                                          Washington, DC 20005
                                          Tel: 202.538.8000
                                          Fax: 202.538.8100
                                          kevinhardy@quinnemanuel.com

                                          *Attorneys for Defendant MediaTek Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

    A.    The Allegations in the Complaint. ................................................................ 2

    B.    Facts Subject to Judicial Notice. ................................................................. 3

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT .................................................................................................................... 5

I.    *Noerr-Pennington* Acts as a Complete Bar to Realtek's Claims ........................... 5

    A.    *Noerr-Pennington* Protects Promoting Third-Party Litigation. ................ 5

    B.    No Exception to *Noerr-Pennington* Applies To Permit This Lawsuit. ...... 6

        1.    The Sham Exception Does Not Apply ............................................ 7

        2.    Realtek Fails to Allege a Series-Based Claim ............................... 9

        3.    Realtek Fails to Allege *Walker Process* Or Litigation Fraud .... 10

II.    Realtek Fails to Plausibly Allege Any Antitrust Violation ............................... 11

    A.    Realtek Does Not Plausibly Allege An Antitrust Injury. ......................... 11

    B.    Realtek Does Not Plausibly Allege How MediaTek Could Have Achieved Monopoly Power Through the Alleged Conduct. ..................... 13

        1.    Realtek's Monopolization Claims Lack Economic Sense and Require a Series of Implausible Inferences ................................. 14

        2.    Realtek Does Not Plausibly Allege MediaTek Currently Has or Would Obtain Monopoly Power From Realtek's Exit From the Market ........................................................................................ 15

III.    Realtek Does Not Allege a Plausible UCL Claim. ............................................ 17

    A.    Realtek Fails to State A UCL Violation. ................................................. 18

        1.    Realtek Does Not Plead a Violation Of The Antitrust Laws ...... 18

        2.    Realtek Does Not Plead An Incipient Violation Of The Antitrust Laws ............................................................................ 18

3.  The FTC Act And Policy Statement Provide No Substitute .......................19

4.  Realtek Does Not Plead A Claim Under The Fraudulent Prong ...............21

B.  The UCL Action Is Independently Barred. ...............................................21

1.  The Patent Act Provides A Safe Harbor Under the UCL ..........................21

2.  Realtek Cannot Show Threat Of Future Harm To Obtain Recovery.........22

IV.  The Tortious Interference With Prospective Economic Advantage Claim Is Barred And Inadequate Plead ...........................................................................23

A.  California Supreme Court Precedent Precludes Realtek's Claim. .........................23

B.  Realtek Does Not Allege Independently Wrongful Conduct. ...............................24

C.  Realtek Pleads Only A Vague Possibility of "Attempt" At Interference. ..............24

V.  Amendment Would Be Futile Here........................................................................25

CONCLUSION.............................................................................................................25

1

**TABLE OF AUTHORITIES**

2

**CASES**                                           **Page(s)**

3

*In re Actimmune Mktg. Litig.*,
2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ............................................................. 20

4

5

*Adapt. Pwr. Sol., LLC v. Hughes Missile Sys. Co.*,
141 F.3d 947 (9th Cir. 1998) ........................................................................... 11, 14

6

*Alzheimer's Inst. of Am. V. Eli Lilly & Co.*,
128 F. Supp. 3d 1249 (N.D. Cal. 2015) ...................................................................... 8

7

8

*Am. Prof. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof. Pub., Inc.*,
108 F.3d 1147 (9th Cir. 1997) .......................................................................... 11, 16

9

*AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*,
141 S. Ct. 1341 (2021) ................................................................................................ 20

10

11

*Anthony Cal., Inc. v. Fire Power Co., Ltd.*,
2018 WL 11352483 (C.D. Cal. Aug. 9, 2018) ......................................................... 22

12

13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................5, 6, 24

14

15

*Aspex Eyewear, Inc. v. Vision Serv. Plan*,
389 F. App'x 664 (9th Cir. 2010) .............................................................................. 18

16

*B&G Foods N. Am., Inc. v. Embry*,
29 F.4th 527 (9th Cir. 2022) ........................................................................................ 9

17

18

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ................................................................................... 11

19

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ........................................................................................... 11, 13

20

21

*Caccuri v. Sony Interactive Ent. LLC*,
2022 WL 2789554 (N.D. Cal. July 15, 2022) .......................................................... 18

22

23

*Calvary Chapel San Jose v. Cody*,
2022 WL 827116 (N.D. Cal. March 3, 2022)............................................................ 25

24

*Cel-Tech Commn's, Inc. v. L.A. Cellular Rel. Co.*,
20 Cal 4th 163 (1999)...........................................................................................passim

25

26

*Chavez v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (2001) ...................................................................................... 18

27

28

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
    2006 WL 13058 (N.D. Cal. Jan 3, 2006) ................................................................. 21

*City of San Jose v. Office of Com'r of Baseball*,
    776 F.3d 686 (9th Cir. 2015) ................................................................................. 18

*ComputerXpress, Inc. v. Jackson*,
    93 Cal. App. 4th 993 (2001) ................................................................................... 24

*CRST Van Expedited, Inc. v. Werner Enter., Inc.*,
    479 F.3d 1099 (9th Cir. 2007) ......................................................................... 23, 24

*Davis v. Farmers Ins. Exchange*,
    245 Cal. App. 4th 1302 (2016) ............................................................................... 22

*DeSoto Cab Co., Inc. v. Uber Techs., Inc.*,
    2020 WL 10575294 ................................................................................................. 16

*Distance Learning Co. v. Maynard*,
    2020 WL 2995529 (N.D. Cal. June 4, 2020) ........................................................ 16

*Dreisbach v. Murphy*,
    658 F.2d 720 (9th Cir. 1981) ................................................................................. 19

*E. R.R. Pres. Conf. v. Noerr Motor Freight*,
    365 U.S. 127 (1961) ................................................................................................. 6

*E.I. du Pont de Nemours & Co. v. F.T.C.*,
    729 F.2d 128 (2d Cir. 1984) ................................................................................... 20

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) ......................................................... 17

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ........................................................................... 14, 15

*English v. Mortg. Store Fin. Inc.*,
    2019 WL 2918140 (C.D. Cal. July 8, 2019) .......................................................... 25

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ........................................................................... 17, 20

*ERBE Elektromedizin GMBH v. Canady Tech., LLC*,
    629 F.3d 1278 (Fed. Cir. 2010) ............................................................................... 9

*ESCO Corp. v. Cashman Equip, Co.*,
    158 F. Supp. 3d 1051 (D. Nev. 2016) ................................................................... 10

*Evans Hotel, LLC v. Unite Here! Local 30,* 2021 WL 10310815 (S.D. Cal. Aug. 26, 2021) ......... 10

*F.T.C. v. Indiana Fed. of Dentists*,
    476 U.S. 447 (1986) .................................................................................... 20

*F.T.C. v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ............................................................... 11, 13

*Facebook, Inc. v. BrandTotal Ltd.*,
    2021 WL 662168 (N.D. Cal. Feb. 19, 2021) ...................................... 18, 20

*Fitbit, Inc. v. Laguna 2, LLC*,
    2018 WL 306724 (N.D. Cal. Jan. 5, 2018) ............................................... 7

*Gardner v. Nationstar Mortg. LLC*,
    2015 WL 1405539 (E.D. Cal. Mar. 26, 2015) ......................................... 19

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ................................................................. 5

*Handgards, Inc. v. Ethicon, Inc.*,
    601 F.2d 986 (9th Cir. 1979) ........................................................... 21, 22

*Hardley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................. 17

*Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*,
    627 F.2d 919 (9th Cir. 1980) .................................................... 13, 14, 17

*Hydranautics v. FilmTec Corp.*,
    70 F.3d 533 (9th Cir. 1995) ...................................................................... 5

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
    527 F. Supp. 2d 1084 (N.D. Cal. 2007) ....................................... 10, 21, 22

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) ................................................................ 15

*Internationale Longshore & Warehouse Union v. ICTSI Oregon, Inc.*,
    863 F.3d 1178 (9th Cir. 2017) .................................................................. 9

*Juniper Networks Inc. v. Swarm Techs. LLC*,
    2022 WL 3031211 (N.D. Cal. Aug. 1, 2022) ........................................... 9

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
    552 F.3d 1033 (9th Cir. 2009)
    ................................................................................................6, 7, 10, 21

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .................................................................22, 23, 24

*LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*,
　2019 WL 160335 (N.D. Cal. Jan. 10, 2010) ................................................................. 19

*Liberty Lake Invs., Inc. v. Magnuson*,
　12 F.3d 155 (9th Cir. 1993) ............................................................................. 6, 9

*LiveUniverse, Inc. v. MySpace, Inc.*,
　304 F. App'x 554 (9th Cir. 2008) ...................................................................... 18

*In re Lockard*,
　884 F.2d 1171 (9th Cir. 1989) ............................................................................ 8

*In re Nexus 6P Prods. Liability Litig.*,
　293 F. Supp. 3d 888 (N.D. Cal. 2018) (Freeman, J.) ............................................. 22

*Nguyen v. Encologix, Inc.*,
　962 F.3d 405 (9th Cir. 2020) ............................................................................ 15

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
　305 F. Supp. 3d 1065 (N.D. Cal. 2018) .............................................................. 12

*O'Donnell v. Bank of Am., Nat. Ass'n*,
　504 F. App'x 566 (9th Cir. 2013) ...................................................................... 19

*Ohio v. Am. Express Co.*,
　138 S.Ct. 2274 (2018) ..................................................................................... 11

*Or. Natural Res. Council v. Mohla*,
　944 F.2d 531 (9th Cir. 1991) ............................................................................ 10

*Pacific Gas and Electric Co. v. Bear Stearns & Co.*,
　50 Cal. 3d 1118, 1137 (1990) (In Bank) ................................................... 22, 23, 24

*Paladin Assoc., Inc. v. Mon. Power Co.*,
　328 F.3d 1145 (9th Cir. 2003) ...................................................................... 11, 13

*PLS.Com, LLC v. Nat'l Assoc. of Realtors*,
　32 F.4th 824 (9th Cir. 2022) ............................................................................ 11

*Pool Water Prods. v. Olin Corp.*,
　258 F.3d 1024 (9th Cir. 2001) .......................................................................... 12

*Prof. Real Est. Invs., Inc. v. Columbia Pic. Indus., Inc.*,
　508 U.S. 49 (1993) .......................................................................................... 7

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
　360 F.3d 1295 (Fed. Cir. 2004) ........................................................................ 21

*In re Qualcomm Antitrust Litig.*,
　2023 WL 121983 (N.D. Cal. Jan. 6, 2023) .......................................................... 17

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
   51 F.3d 1421, 1439 (9th Cir. 1995) ..................................................... 15, 16

*Reilly v. Apple Inc.*,
   578 F. Supp. 3d 1098 (N.D. Cal. 2022) ...........................................11, 12, 18

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ...................................................................... 9

*Schmitt v. SN Serv. Corp.*,
   2021 WL 5279822 (N.D. Cal. Nov. 12, 2021) ........................................... 19

*Solano v. Select Portfolio Servs., Inc.*,
   2016 WL 5937794 (C.D. Cal. Apr. 6, 2016) .............................................. 25

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .................................................................... 12

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ................................................................. 5, 6

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993) .......................................................................13, 14, 16

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ................................................................... 24

*Theme Promotions, Inc. v. News Am. Mktg, FSI*,
   546 F.3d 991 (9th Cir. 2008) ................................................................... 5, 9

*Tripati v. Henman*,
   857 F.2d 1366 (9th Cir. 1988) .................................................................... 8

*U.S. ex rel. Wilson v. Maxxam, Inc.*,
   2009 WL 322934 (N.D. Cal. Feb. 9, 2009) ................................................ 10

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
   420 F. Supp. 3d 966 (N.D. Cal. 2019) ................................................ 7, 8, 25

*USS-POSCO Indus. v. Contra Costa Cty. Build. & Constr. Trades Council, AFL_CIO*,
   31 F.3d 800 (9th Cir. 1994) ....................................................................... 9

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .................................................................... 5

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*,
   668 F.2d 1014 (9th Cir. 1981) .............................................................. 14, 16

*Zhang v. Sup. Ct.*,
   57 Cal. 4th 364 (2013) ....................................................................17, 18, 19

# STATUTES AND RULES

35 U.S.C. § 271 ........................................................................................................... 21

California's Unfair Competition Law .................................................................. passim

Antitrust Laws ..................................................................................................... 17, 18

Cal Bus. & Prof. Code § 17200 ................................................................................ 16

California's Unfair Competition Law ......................................................................... 2

Federal Trade Commission Act § 5, 15 U.S.C. § 45 ............................................ 17, 19

First Amendment of U.S. Constitution ............................................................... 2, 5, 7

FTC Act ........................................................................................................ 18, 19, 20

Patent Act .......................................................................................... 17, 21, 22

Rule 9 ...................................................................................................... 10, 20

Rule 11 .............................................................................................................. 25

Rule 12(b)(6) ..................................................................................................... 12

Sherman Act ........................................................................................... 5, 11, 13

Sherman Act (2) § 2 ............................................................................... 2, 13, 14

# OTHER AUTHORITIES

Policy Statement Regarding the Scope of Unfair Methods of Competition Under Section 5 ......... 20

1

**INTRODUCTION**

2      The lynchpin of the complaint filed by Realtek Semiconductor Corp. ("Realtek") is patent

3  litigation brought by Future Link Systems, LLC ("Future Link") allegedly pursuant to an

4  anticompetitive "bounty" agreement with MediaTek Inc. ("MediaTek").   While lurid, these

5  allegations fail to state a plausible claim for relief for multiple reasons, including because Future

6  Link filed lawsuits against multiple defendants, not just Realtek. And while Realtek contends those

7  suits were "meritless," they resulted in a third party licensing Future Link's patents for the benefit

8  of its customers, the vast majority of which do not operate in the alleged TV chips market.  While

9  every other defendant agreed to a stipulated dismissal in light of that license, Realtek chose to keep

10 litigating, arguing that Future Link's actions never should have been brought and that Future Link

11 should be sanctioned.  To no avail.  The International Trade Commission rejected Realtek's claim

12 that the allegations in Future Link's the complaint were deficient on the merits, and the court in the

13 Western District of Texas disagreed that Future Link's infringement claims were frivolous.

14     Realtek now seeks a third bite of the apple.  Again arguing that Future Link's actions were

15 "meritless" and motivated by a supposed "bounty"—a characterization belied by the license itself,

16 which is incorporated in the complaint and attached hereto for the Court's review—Realtek spins a

17 tale of how Future Link's (successful and, according to two separate courts, good faith) patent

18 litigations give rise to antitrust, unfair competition, and tortious interference claims.   Realtek's

19 claims make little sense.  Realtek alleges that MediaTek sought to monopolize the market for TV

20 chips through a license that does not mention TV chips, does not require Future Link to assert TV

21 chip patents, and (based on Realtek's own allegations) could not plausibly result in monopoly

22 power.  Realtek also claims the license harmed competition even though its allegations show the

23 practice at issue—patent assertion—is a cost borne by the entire industry, ***including MediaTek***

24 (which, after all, licensed the patents in question).  Realtek further alleges that MediaTek interfered

25 with unspecified customer relationships, but provides no specificity to identify which, or how

26 Realtek suffered any real injury.  These hodgepodge claims fail for multiple reasons.

27     ***First***, assuming Realtek somehow managed to plead a valid claim, the conduct at issue is

28 squarely immunized by the *Noerr-Pennington* doctrine.  The crux of Realtek's theory is that

1    MediaTek allegedly induced Future Link to bring patent litigation.  Even if true (which MediaTek

2    denies), the Ninth Circuit has held that promoting third-party litigation is protected by the First

3    Amendment unless the litigation was a sham—an issue Realtek already argued and lost in the Future

4    Link lawsuits themselves.  ***Second***, Realtek's claims do not identify harm to ***competition***, just (at

5    best) Realtek.  Because Realtek does not allege the conduct at issue distorted the competitive field,

6    that conduct could not plausibly create or maintain monopoly power.  ***Third***, the unfair competition

7    claims do not survive Realtek's failure to allege harm to competition.  California's Unfair

8    Competition Law ("UCL") does not allow claims based on an amorphous assertions of what is fair

9    or unfair.  Instead, a UCL claim must "borrow" or be "tethered" to another law or policy, and Realtek

10    can identify no such law or policy here, despite numerous attempts.  ***Fourth***, the tortious interference

11    claim fails for lack of basic factual allegations—such as with whom and whether the interference

12    took place—and failure to allege that anything wrongful actually occurred.  Realtek cannot in good

13    faith overcome these various issues, so the claims should be dismissed with prejudice.

14    **BACKGROUND**

15         **A.**      **The Allegations in the Complaint.**

16         According to Realtek, MediaTek and Future Link are parties to a license agreement that

17    purportedly required Future Link "to file meritless patent claims to harass Realtek" and "impose a

18    costly and burdensome distraction."  Compl. ¶¶ 6, 7.  Allegedly pursuant to this clause, Future Link

19    brought three litigations—two in the Western District of Texas and one before the International

20    Trade Commission ("ITC")—seeking damages and "to keep Realtek products off the market."  *Id.*

21    ¶ 7.  Realtek alleges the litigations were "irrational" and "meritless" as demonstrated by arguments

22    in its motions to dismiss, such as lack of service.  *Id.*  "On information and belief," Realtek asserts

23    that MediaTek used the litigation to attempt to coerce one customer "and perhaps more" not to use

24    Realtek products.  *Id.* ¶ 8.  Based on these alleged facts, Realtek brings claims for (1) conspiracy to

25    monopolize under section 2 of the Sherman Act, (2) attempted monopolization under section 2 of

26    the Sherman Act, (3) a UCL violation, and (3) tortious interference with prospective economic

27    advantage under California common law.  *Id.* ¶¶ 72-97.

28         As to the market, Realtek alleges that the relevant product market is TV chips—a product

1  mentioned nowhere in the Future Link and MediaTek license agreement—which are "optimized for

2  a particular purpose." *Id.* ¶¶ 54-56.  The only alleged entry barriers to entry are the same faced by

3  ***all*** chipmakers, including "sophisticated technology design expertise," "experience designing Chips

4  that must meet the exacting specifications of makers of smart TVs," "technological standards that

5  may vary by region or country," and "intellectual property and trade secrets." *Id*. ¶ 62.  Realtek

6  admits that MediaTek is only the fourth largest chip maker in the world overall. *Id.* ¶ 2.  Realtek

7  alleges that MediaTek "attempted to persuade a large TV brand . . . to stop designing Realtek's

8  products into their TVs," but it does not allege that any customer ***actually*** believed that Realtek was

9  an unreliable supplier, ***actually*** withdrew its business as a result, or ***actually*** thought less of Realtek

10  as a result of MediaTek's alleged conduct.  *Id*. ¶ 69.

11        Notably absent from the complaint are factual allegations of harm to competition—*i.e.*, that

12  anyone besides Realtek was harmed.  Realtek alleges that defendants "sought to bar Realtek from

13  selling its TV Chips and in essence shut Realtek out of the TV Chip market" through "injunctions

14  and an exclusion order" and thereby "negatively affected competition by jeopardizing Realtek's

15  participation in the TV Chip market."  Compl. ¶¶ 65, 67, 77.  But Realtek ***also*** alleges the lawsuits

16  were "meritless" and thus had little likelihood of actually achieving these harms.  *Id.* ¶ 7.  Realtek

17  generically claims that the challenged conduct "increase[d] costs to consumers" and "reduc[ed] the

18  likelihood of potential or nascent competition."  *Id*. ¶¶ 4, 77.  Beyond these conclusory assertions,

19  Realtek does not allege any facts supporting an effect on competition—nothing indicating that

20  Realtek, let alone all of MediaTek's TV chip competitors, had to raise prices or reduce quality; that

21  the number of TV chips has gone down due to the alleged conduct; or that any potential or nascent

22  competitor refrained from entering the market as a result.

23        **B.    Facts Subject to Judicial Notice.**

24        In its complaint, Realtek references and incorporates the license agreement between

25  MediaTek and Future Link.  Request for Judicial Notice ("RJN") at 1.  As even a cursory review of

26  the relevant provision shows, what Realtek describes as a "bounty" is anything but.  The license

27  states that █████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████

-3-

1   ███████████████████████████████████████ *Id*. Ex. A at 29.  This commonsense provision—██████

2   ████████████████████████████████████████████████████████████████████████████

3   ███████████—did not require Future Link to file a lawsuit, let alone a meritless one.  If anything,

4   it is procompetitive insofar as it promoted an even playing field for patent royalties.

5          And while Realtek bemoans Future Link's litigations as "meritless," facts subject to judicial

6   notice show that they were not.  Far from singling out Realtek, Future Link sued more than ten

7   separate entities, including peer companies such as Qualcomm, based on their common use of an

8   ARM processor.  RJN ¶¶ 1-2.  The litigations ended, not with defense verdicts, but rather with a

9   third-party whose component were at issue ***taking a license*** to Future Link's patents for the benefit

10  of its customers.  *See id.*  ¶¶ 5, 7.  That license resolved the litigations, all of which—save

11  Realtek's—were voluntarily dismissed by the parties.  *Id.* ¶¶ 4-5.  For its part, Realtek opted to

12  continue litigating (despite apparently being licensed through the third party). *Id.* ¶¶ 8-18.  It sought

13  ***and was denied*** sanctions or any ruling that it was a "prevailing party."  *Id.*

14         The ITC flatly rejected Realtek's argument that the allegations in Future Link's complaint

15  were deficient.  *Id*. ¶ 12 & Ex. F at 1.  It also held that the Future Link-MediaTek license agreement

16  did not warrant sanctions because there was "no authority" about the relevant provision and "there

17  is evidence that the license provision played no role in Future Link's decision to file the present

18  Complaint."  *Id*. Ex. F at 3.  In the Western District of Texas, Realtek moved for sanctions, arguing

19  that Future Link's infringement claims were "baseless."  *Id*. ¶ 9 & Ex. D at 1, 24.  It further sought

20  attorneys' fees and costs, arguing that Future Link "failed to investigate its claims and ensure that

21  they had a sufficient factual and legal basis."  *Id.* ¶ 10 & Ex. E at 1.  The court ***denied*** those motions

22  on the merits.  *Id.* ¶ 13.  Although the court converted the dismissal to "with prejudice," it did not

23  do so based on any substantive deficiency; indeed, it expressly rejected Realtek's claim that Future

24  Link's patent suit was "frivolous" or "meritless."  *Id.* ¶ 13 & Ex. G at 10-12, 14-15.  Realtek then

25  appealed that decision, but voluntarily dismissed the appeal, choosing to move for reconsideration

26  instead.  *Id.* ¶¶ 16-17.  The Western District of Texas subsequently denied reconsideration, rejecting

27  the claim that Realtek was a "prevailing party."  *Id.* ¶ 15.

28         Thus, each court to consider the ***merits*** of Future Link's litigations denied Realtek's claims

1  that they were "baseless" or lacked sufficient investigation.

2  <u>**LEGAL STANDARD**</u>

3  In its complaint, a plaintiff must plead enough "factual content" to "allow[] the court to draw

4  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

5  556 U.S. 662, 678 (2009).  This must be more than "sheer possibility that a defendant has acted

6  unlawfully."  *Id.*  On a motion to dismiss, the court assumes the truth of the allegations and

7  "construe[s] them in light most favorable to plaintiffs," but does not "accept as true allegations that

8  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead*

9  *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  Furthermore, a court need

10 not accept "allegations that contradict matters properly subject to judicial notice or by exhibit."  *Id.*

11 <u>**ARGUMENT**</u>

12 **I.**   ***NOERR-PENNINGTON* ACTS AS A COMPLETE BAR TO REALTEK'S CLAIMS**

13 Although each of Realtek's claims is substantively meritless, Realtek's most fundamental

14 problem is that the alleged conduct is immune from liability under the *Noerr-Pennington* doctrine.

15 "Noerr-Pennington is a label for a form of First Amendment protection."  *White v. Lee*, 227 F.3d

16 1214, 1231 (9th Cir. 2000).  The doctrine holds that, except in narrowly-prescribed situations, "no

17 violation of the Sherman Act may be predicated upon the defendant's attempts to influence the

18 passage or enforcement of laws," which includes filing a lawsuit.  *Hydranautics v. FilmTec Corp.*,

19 70 F.3d 533, 537 (9th Cir. 1995).  Immunity is not limited to antitrust claims.  "While the *Noerr-*

20 *Pennington* doctrine originally arose in the antitrust context, it is based on and implements the First

21 Amendment right to petition" and thus "applies equally in all contexts," including to state law

22 claims.  *White*, 227 F.3d at 1231 (italics added); *see Theme Promotions, Inc. v. News Am. Mktg, FSI*,

23 546 F.3d 991, 1007 (9th Cir. 2008) (applying *Noerr-Pennington* to state law tortious interference

24 claims).  Here, MediaTek's conduct is immune, and no exception applies.

25 **A.**   ***Noerr-Pennington* Protects Promoting Third-Party Litigation.**

26 Immunity under *Noerr-Pennington* extends beyond direct "petition[ing] the Government for

27 a redress of grievances" to "preserve the breathing space required for the effective exercise of the

28 rights."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929, 933 (9th Cir. 2006).  That "breathing space"

includes promoting third-party litigation, *i.e.*, the conduct that Realtek alleges MediaTek engaged in here. *See Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 157-59 (9th Cir. 1993). In *Liberty Lake*, a majority shareholder "prompted" and "paid for" local businesses to launch environmental litigation against a competitor to block development of a shopping center. *Id.* at 156. The Ninth Circuit upheld dismissal of claims against the shareholder under *Noerr-Pennington* because nothing "intimated that the [local businesses'] suit was frivolous or objectively baseless." *Id*. at 158.

Here, the crux of Realtek's complaint is that MediaTek "motivated" Future Link to file patent infringement actions against Realtek. Compl. ¶¶ 36, 78, 87. Under *Liberty Lake*, that alleged conduct is immune from liability. *Noerr-Pennington* immunity also extends to Realtek's allegation that MediaTek sought to convince customers not to use Realtek's products based on its involvement in litigation. *Id*. ¶ 42. In *Noerr*, immunity applied "not only to railroad's direct communications with legislators but also to its public relations campaign," *Sosa*, 437 F.3d at 934, even though the campaign's "overriding" purpose was to destroy "the truckers' goodwill, among both the general public and the trucker's existing customers . . . in ways unrelated to the passage or enforcement of laws." *E. R.R. Pres. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 133 (1961). Such communications with a nexus to protected activity are also protected. Here, too, immunity applies both to MediaTek's alleged promotion of litigation and to its statements to customers about it.[1]

**B.    No Exception to *Noerr-Pennington* Applies To Permit This Lawsuit.**

The Ninth Circuit has identified three exceptions to *Noerr-Pennington* immunity. "[F]irst, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552

---

[1]  Since immunity applies, Realtek's remaining allegation of "bundled product offerings" is too conclusory to withstand dismissal. Compl. ¶ 8; *see Iqbal*, 556 U.S. at 678 (affirming dismissal of "naked assertion[s]" devoid of "factual enhancement").

F.3d 1033, 1045 (9th Cir. 2009) (quoting *Sosa*, 437 F.3d at 938).  In the patent context, the third situation includes "*Walker Process* fraud" where an entity "obtains a patent fraudulently and then uses that patent to exclude a competitor from the market through infringement suits."  *Id.* According to Realtek's own allegations, the second and third exceptions facially do not apply here, because it does not allege any fraud on the Patent Office or any court, and does not allege several failed lawsuits among the "series" it identifies (even if the limited number of lawsuits it identifies could legally constitute a "series," which it does not).  Accordingly, Realtek must establish the first exception—the so-called "sham exception"—to state a plausible claim.

Realtek cannot, including because it already tried and failed to convince the ITC and the Western District of Texas that Future Link's lawsuit was objectively baseless.  Having failed in that argument—because the lawsuit was ***not*** baseless—Realtek is foreclosed from attempting a redo here.  And even if Realtek were not foreclosed, it fails to plausibly allege objective baselessness in any event.  *Noerr-Pennington* exceptions are subject to a "heightened pleading requirement" to avoid "chill[ing] the exercise of First Amendment rights," and Realtek cannot meet that heightened pleading standard here.  *See Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724, at \*10 (N.D. Cal. Jan. 5, 2018).  Thus, no matter how the Court views Realtek's sham claims, Realtek fails to state a claim and MediaTek is immune from liability under *Liberty Lake*.

### 1.   The Sham Exception Does Not Apply

To allege that Future Link's lawsuits were a sham, Realtek must plausibly allege, first, that the suits were "objectively baseless" and, second, that the lawsuits were subjectively motivated to harm competition.  *See Prof. Real Est. Invs., Inc. v. Columbia Pic. Indus., Inc.*, 508 U.S. 49, 60 (1993).  If Realtek cannot satisfy the first element, the sham allegations fail, regardless of defendant's subjective motivations.  *Id.* at 65-66.  Realtek cannot plead objective baselessness here because it already ***lost*** on the issue before the very courts where the underlying litigation was pending—which creates issue preclusion and which, in any event, renders the allegations implausible.  *See UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 981 (N.D. Cal. 2019) (striking claims under *Noerr-Pennington* where "past proceedings or judicially noticeable facts make it clear that the sham litigation exception does not apply").

Issue preclusion applies when "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006). "Finality" requires only that "the issue as to which preclusion is sought" be "sufficiently firm." *Alzheimer's Inst. of Am. V. Eli Lilly & Co.*, 128 F. Supp. 3d 1249, 1254 (N.D. Cal. 2015). Courts consider several factors to determine finality, including "(1) whether the decision was not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal." *Finjan LLC v. SonicWall, Inc.*, 2021 WL 3111685, at *3 (N.D. Cal. July 22, 2021). "The basic test . . . is whether the earlier decision was 'procedurally definite,' and not whether the court might have had doubts in reaching the decision." *In re Lockard*, 884 F.2d 1171, 1175 (9th Cir. 1989).

Here, both the ITC and Western District of Texas court issued detailed opinions rejecting Realtek's argument that Future Link's infringement claims were "baseless." RJN Exs. F, G. Realtek argued to the ITC that Future Link's complaint was "defective" and should have never been brought. RJN ¶¶ 11-12. It also moved for sanctions, attorneys' fees, and costs in the Western District of Texas arguing that Future Link's infringement claims were "baseless." *Id.* ¶¶ 9-10 & Exs. D, E. Both forums **rejected** these arguments. *Id.* ¶¶ 12-13. The ITC found no evidence that Future Link's complaint was "defective at all" or that "Future Link violated any pre-filing investigative duties." *Id.* Ex. F at 2. The Western District of Texas denied Realtek's motion for attorneys' fees and costs based on purportedly "baseless" infringement claims and then denied reconsideration of that decision. RJN ¶¶ 13, 15. In so doing, the Western District of Texas expressly rejected Realtek's claims that the lawsuits were "frivolous," "meritless," or "vexatious." *Id.* ¶ 13.

Nothing about those decisions was "tentative." Realtek was fully—and repeatedly—heard on the issues; the Western District of Texas alone considered Realtek's baselessness arguments on four motions: (1) the motions to dismiss, (2) motion for sanction, (3) motion for attorneys' fees and costs, and (4) motion for reconsideration. *Id.* ¶¶ 8-10, 14. The court's decisions denying those motions were then subject to appeal—and Realtek did in fact appeal. *Id.* ¶ 16. Although Realtek

-8-

voluntarily dismissed the appeal, that decision does not preclude finality. *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (pendency of appeal does not defeat finality for issue preclusion). Thus, Realtek definitively lost this argument and should not be allowed to relitigate it. *Reyn's Pasta Bella*, 442 F.3d at 746.

And dismissal is warranted even without issue preclusion. As in *Liberty Lake*, nothing in the underlying litigation "intimated that the . . . suit was frivolous or objectively baseless," which makes sham allegations implausible. 12 F.3d at 158. In any event, the decision should be left to the prior court. As noted by another court in this District, where a plaintiff's claims by their nature disregard a finding from another federal court, the plaintiff cannot simply pursue a "lateral appeal to a sister district court" to try to circumvent those findings. *See Juniper Networks Inc. v. Swarm Techs. LLC*, 2022 WL 3031211, at *1 (N.D. Cal. Aug. 1, 2022). That is so regardless of whether issue preclusion applies. *See id.* Dismissal is appropriate in these circumstances, so the original district court (and that court's reviewing Court of Appeals) may handle further appropriate actions coming out of its decision. Accordingly, the sham exception does not apply.

### 2.   Realtek Fails to Allege a Series-Based Claim

The second exception to *Noerr-Pennington* applies to suits " brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 539 (9th Cir. 2022). A prerequisite to this exception is a "series" of lawsuits—a small number (four or less) does not satisfy the requirement. *See Internationale Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 863 F.3d 1178, 1187 (9th Cir. 2017) ("Two sham suits cannot amount to 'a whole series of legal proceedings' or a 'pattern of baseless, repetitive claims.'"); *ERBE Elektromedizin GMBH v. Canady Tech., LLC*, 629 F.3d 1278, 1293 (Fed. Cir. 2010) ("three relevant lawsuits . . . do not implicate a test for 'a whole series of legal proceedings'"). Realtek alleges no more than two (at best, three) lawsuits by Future Link that supposedly impact competition, so cannot plausibly allege this exception.

If there was any doubt, Realtek also cannot allege that the lawsuits were not "largely successful," which is roughly defined as ***at least*** less than a 50% success rate. *See USS-POSCO Indus. v. Contra Costa Cty. Build. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir.

1994) (affirming dismissal where defendants won half of the lawsuits).  Future Link successfully licensed its patents to the designer of the exact component used by Realtek, and thus largely succeeded.  *See Theme Promotions*, 546 F.3d at 1008 ("The fact that this ongoing litigation settled suggests that the original suit was not objectively baseless."); *see also Evans Hotel, LLC v. Unite Here! Local 30*, 2021 WL 10310815, at *10 (S.D. Cal. Aug. 26, 2021) (dismissing claims where the underlying lawsuits settled).  And Realtek cannot plausibly allege that the lawsuits were filed with an improper purpose; although it claims the suits were motivated by a license agreement with MediaTek, Future Link brought claims against multiple companies based on the same component, and thus did not single out Realtek.  RJN ¶¶ 1-2.  Thus, this exception does not apply.

### 3.   Realtek Fails to Allege *Walker Process* Or Litigation Fraud

To bring a *Walker Process* claim, a plaintiff must show "the patentee 'obtained the patent by knowingly and willfully misrepresenting facts to the [Patent Office]."  *Kaiser*, 552 F.3d at 1047.  Realtek alleges only that Future Link's patents "were invalid" as evidenced by Future Link allegedly "canceling claims or settling cases to avoid an adjudication of invalidity" and the Patent Trial and Appeal Board finding some claims unpatentable during *inter partes* review.  Compl. ¶ 33.  But that some claims were cancelled due to an "honest mistake as to the effect of prior art on patentability" does not mean the patent were fraudulently obtained in the first place.  *Kaiser*, 552 F.3d at 1048.  "[A]ntitrust liability should not reach mere 'patents that for one reason or another may turn out to be voidable under one or more of the numerous technicalities attending the issuance of a patent."  *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007).  Absent allegations compliant with Rule 9 of a misrepresentation or material omission to the Patent Office, Realtek does not  state a *Walker Process* fraud claim.  *See ESCO Corp. v. Cashman Equip, Co.*, 158 F. Supp. 3d 1051, 1073 (D. Nev. 2016) (listing pleading requirements).

Nor does it allege any litigation fraud.  Realtek generically claims that Future Link's "false claims regarding effecting service on Realtek" was fraudulent, Compl. ¶ 78, but Realtek cannot "simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party."  *Or. Natural Res. Council v. Mohla*, 944 F.2d 531, 536 (9th Cir. 1991).  Disagreement over service is not the type of pervasive misconduct that would "deprive the [underlying] proceedings of

-10-

1  legitimacy."  *See U.S. ex rel. Wilson v. Maxxam, Inc.*, 2009 WL 322934, at *10 (N.D. Cal. Feb. 9,

2  2009).  Indeed, the Federal Circuit has recently rejected Realtek's request for mandamus regarding

3  service in a similar case.  RJN ¶ 19.  Accordingly, no exception to *Noerr Pennington* applies.

4  **II.    REALTEK FAILS TO PLAUSIBLY ALLEGE ANY ANTITRUST VIOLATION**

5      **A.    Realtek Does Not Plausibly Allege An Antitrust Injury.**

6      "The purpose of the Sherman Act is 'the promotion of consumer welfare.'"  *PLS.Com, LLC*

7  *v. Nat'l Assoc. of Realtors*, 32 F.4th 824, 832 (9th Cir. 2022) (citation and internal quotation marks

8  omitted).  Allegedly dominant firms are free to compete using even "hypercompetitive" tactics, so

9  long as they do not harm consumers by seeking to "destroy competition itself."  *F.T.C. v. Qualcomm*

10 *Inc.*, 969 F.3d 974, 1005 (9th Cir. 2020).  Thus, absent effects on consumers stemming from harm

11 to competition, even "an act of pure malice by one business competitor against another" does not

12 state a federal antitrust claim.  *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S.

13 209, 225 (1993).  Consumer harm is measured by supracompetitive prices, reduced market wide

14 output, or decreased quality.  *Ohio v. Am. Express Co.*, 138 S.Ct. 2274, 2284 (2018).

15     Given this law, courts repeatedly reiterate that the Sherman Act protects protect competition,

16 not competitors.  *Qualcomm*, 969 F.3d at 993.  A private plaintiff such as Realtek must therefore

17 plausibly allege "an injury to competition beyond the impact on the plaintiffs," from which its own

18 injury "flows."  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198, 1200 (9th Cir. 2012).  This

19 is known as "antitrust injury," and it is a bedrock requirement for a private antitrust claim.  *Paladin*

20 *Assoc., Inc. v. Mon. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003); *see Reilly v. Apple Inc.*, 578

21 F. Supp. 3d 1098, 1110 (N.D. Cal. 2022) (a plaintiff must allege more than "the defendant is engaged

22 in some anticompetitive conduct" and "some injury is occurring").

23     The harms Realtek alleges are all specific to itself, for instance: "undermining Realtek's

24 relationships with its customers"; "harming [Realtek's] reputation with end users"; seeking to bar

25 Realtek's "access to key technologies from cutting-edge vendors"; and imposing "time and money

26 burdens" on Realtek.  *See* Compl. ¶¶ 68-70, 78.  At most, Realtek alleges only "disparagement of a

27 rival" and increased costs from litigation, which is "ordinarily not significant enough to warrant

28 recognition under [Section] 2 of the Sherman Act."  *Am. Prof. Testing Serv., Inc. v. Harcourt Brace*

1  *Jovanovich Legal & Prof. Pub., Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997).  That is because the effect

2  from such conduct is "at most, temporary" and not "of significant [enough] magnitude" to harm

3  competition.  *Adapt. Pwr. Sol., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998).

4        Even where Realtek tries to allege general harm, it pleads only harm to itself.  Realtek claims

5  that the challenged conduct created "the harmful illusion of supply chain uncertainties" and

6  "unfairly limited customers' and end users' ability to rely on Realtek for TV Chips," Compl. ¶¶ 68,

7  78, but it does not allege this uncertainty affected any other TV chip makers, like Novatek, to prevent

8  competition.  Indeed, Realtek could have removed its supply uncertainty at any time simply by

9  licensing the patents.  Thus, even if Realtek had lost market share (and Realtek does not allege that

10  it did), that still would not show injury to competition; it would simply shift sales to other

11  competitors.  *See Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001).

12        With respect to harm to ***competition***, Realtek pleads only conclusory allegations that the

13  alleged conduct "increased costs to consumers" and "reduc[ed] the likelihood of potential or nascent

14  competition."  Compl. ¶¶ 4, 77.  However, Realtek does not allege a single fact supporting these

15  allegations.  For example, Realtek does not allege it raised or would need to raise its own prices in

16  the future.  Nor does it allege that purchasers lost the ability to buy chips from other TV chip makers;

17  that non-Realtek competitors increased their prices or limited their offerings in any way due to the

18  alleged scheme; that the market lost or would likely lose any unique types of TV chips, even if

19  Realtek were excluded due to the alleged scheme; or that any potential entrants to the market were

20  dissuaded from doing so.  *See generally id*.  Realtek does not explain how the license agreement

21  between MediaTek and Future Link even ***could*** dissuade any other entrants to the market, since

22  ██████████████████████████████.  *See* RJN, Ex. A at 29.

23        In short, Realtek does not allege any ***facts*** showing that consumers paid (or are likely to pay)

24  higher prices, lost competitive choice, or experienced lower market output.  This is fatal to its

25  antitrust claims.  *See Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013) (holding that a

26  complaint that merely "leaves open the possibility that [plaintiff] 'might later establish some set of

27  undisclosed facts' supporting antitrust injury" does not "permit the [complaint] to survive a Rule

28  12(b)(6) motion to dismiss"); *see, e.g., Reilly*, 578 F. Supp. 3d at 1110 (dismissing complaint that

only alleges harm to the plaintiff without harm to competition); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 305 F. Supp. 3d 1065, 1074 (N.D. Cal. 2018) (same).

Realtek's failure to plead harm to competition is more than just missing allegations. Fundamentally, Realtek cannot allege harm to competition because the conduct at issue is, according to Realtek itself, Future Link's attempt to impose the same royalty on Realtek that it already imposed on MediaTek.  In *Qualcomm*, the Ninth Circuit explained that a "surcharge" paid by the industry as a whole does not violate the antitrust laws because it simply raises the "all-in" price for competing. 969 F.3d at 1002.  That "by definition does not distort the 'area of effective competition' or impact competitors" because it requires all competitors to pay the same costs, so whether the cost is "reasonable or unreasonable" is an "issue that sounds in patent law, not antitrust law."  *Id*.  Here, the supposed "bounty agreement" is one in which MediaTek itself agreed to pay a license to Future Link.  RJN, Ex. A.  Even if Future Link were successful in obtaining a similar agreement from Realtek, that would mean Realtek paid royalties to Future Link ***alongside*** MediaTek.  Accordingly, Realtek cannot allege an antitrust injury because its allegations show, at most, that it must pay the same costs to compete as MediaTek, which does not distort competition.

### B.      Realtek Does Not Plausibly Allege How MediaTek Could Have Achieved Monopoly Power Through the Alleged Conduct.

The Sherman Act "do[es] not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in interstate commerce."  *Brooke Group*, 509 U.S. at 225.  Instead, it proscribes specific conduct to "protect the public from the failure of the market."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).  For Section 2 claims, the underlying market failure concerns the "willful acquisition or maintenance of [monopoly] power."  *Qualcomm*, 969 F.3d at 990.  Thus, absent a "realistic probability that the defendant could achieve monopoly power" through its conduct, even "'unfair' or 'predatory' tactics" do not violate the Sherman Act.  *Spectrum Sports*, 506 U.S. at 459.

Here, Realtek asserts two Section 2 claims: conspiracy to monopolize and attempted monopolization of the TV chips market.  Compl. ¶¶ 86-97.  "A conspiracy to monopolize action is similar in its essence to an attempt to monopolize action" because "[b]oth focus on specific intent

to monopolize and anticompetitive acts designed to effect that intent." *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 926 (9th Cir. 1980).  Both claims require an antitrust injury (which does not exist here for the reasons described above).  *Paladin*, 328 F.3d at 1158 & 1163 n.22.  Attempted monopolization further requires the plaintiff to show a "dangerous probability of actual monopolization" stemming from the alleged conduct, which requires examining "the relevant product and geographic market and the defendant's economic power in that market."  *Spectrum Sports*, 506 U.S. at 455-56, 459.

Although a "dangerous probability of success" is not an express element of a conspiracy to monopolize claim, the same market factors impact the plausibility of the requisite specific intent for such a claim.  *See Hunt-Wesson Foods*, 627 F.2d at 927.  For an attempt claim, "if market conditions are such that a course of conduct described by the plaintiff would be unlikely to succeed in monopolizing the market, it is less likely that the defendant actually attempted to monopolize the market," including through a conspiracy.  *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014, 1030 (9th Cir. 1981).  Similarly, for a conspiracy to monopolize claim, "the existence and extent of market power may make the inference of specific intent [to monopolize] from conduct more or less plausible."  *Hunt-Wesson Foods*, 627 F.2d at 927.  Here, Realtek alleges neither that MediaTek has monopoly power nor that it could achieve monopoly power through the challenged conduct.  Indeed, its theory of specific intent to monopolize makes no sense:  as explained below, MediaTek could not have realistically achieved a monopoly through the alleged conduct.  Each of the Section 2 claims thus fails.

### 1. Realtek's Monopolization Claims Lack Economic Sense and Require a Series of Implausible Inferences

"Antitrust arguments must make economic sense."  *Adaptive Power* 141 F.3d at 952.  Where a complaint requires drawing "'implausible' inferences that Defendants acted with specific intent," the claims should be dismissed.  *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014).  Here, Realtek's monopolization claims lack any economic sense.  Realtek alleges that MediaTek intended to monopolize the TV chip market through a license agreement that covers multiple different types of patents other than TV chips, and that contains a supposed "bounty

provision" that does not mention TV chips, does not require Future Link to assert patents related to TV chips, and would have had MediaTek pay Future Link the same royalty even if Future Link litigated patents related to *other* types of chips.  *See* RJN Ex. A at 13-28, 29.  It is inherently implausible to assume that such an agreement was meant—apparently, through unstated implication only—to help MediaTek monopolize the alleged TV chip market.

Similarly, Realtek's theory assumes without any supporting allegations (plausible or not) that MediaTek somehow knew Realtek voluntarily takes on the "costly position of fighting . . . frivolous lawsuits brought by PAEs" and would never sway from that position even if it threatened Realtek's position in the alleged TV chips market.  *See* Compl. ¶¶ 5, 68.  And Realtek implausibly alleges that the lawsuit—rather than its voluntary decision to fight such lawsuits at all costs—is what created enough supply uncertainty (which it does not otherwise allege) to hand MediaTek a still-unrealized monopoly, even though Realtek could have licensed the patents, as MediaTek itself did.  *Id.*  More fundamentally, Realtek presumes that patent litigation—an ubiquitous feature of the chip markets—could have imposed such costs as to hand MediaTek a monopoly over all competitors.  This series of unrealistic logical leaps shows Realtek's specific intent theory lacks common sense and should be dismissed for requiring "implausible inferences."  *Eclectic Properties*, 751 F.3d at 999; *cf. Nguyen v. Encologix, Inc.*, 962 F.3d 405, 408, 415 (9th Cir. 2020) (affirming dismissal of a claim that "does not make a whole lot of sense").

## 2. Realtek Does Not Plausibly Allege MediaTek Currently Has or Would Obtain Monopoly Power From Realtek's Exit From the Market

"[M]onopoly power" in antitrust law means more than market dominance; it refers to "the power to control prices or exclude competition."  *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997).  "A mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme" because "with easy entry, a predator charging supercompetitive prices will quickly lose market share . . . as new rivals enter the market to undercut its high price."  *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1439 (9th Cir. 1995); *see also Image Tech.*, 125 F.3d at 1208 ("Even a 100% monopolist may not exploit its monopoly power in a market without entry barriers.").  Thus, alleging monopoly

-15-

power requires a plaintiff to "show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price." *Rebel Oil*, 51 F.3d at 1439.

Realtek alleges that MediaTek has a market share of "roughly" 60% in the TV chip market, Compl. ¶ 48, which is below the 65% required for a prima facie showing of monopoly power.  *See Image Tech.*, 125 F.3d at 1206.  The only alleged entry barriers are the same faced by all chip makers, including "sophisticated technology," "design expertise," "experience designing Chips that must meet the exacting specifications of makers and smart TVs," "meeting technological standards that may vary by region and country," and "intellectual property."  Compl. ¶ 62.  Realtek never explains why *other* chip manufacturers would be unable to expand output or enter the TV chip market if MediaTek raised prices to increase profits. *See generally id.* ¶¶ 45-51.  If anything, Realtek alleges only that TV chips have simpler design than other types of chips—making it easy for other chip makers to increase output or shift supply.  *Id*. ¶¶ 55-56.

Thus, absent allegations that current competitors cannot constrain MediaTek's pricing power or fill any vacuum created by Realtek's market exit or market share loss, Realtek cannot plausibly allege MediaTek has monopoly power in the TV chip market.  *Rebel Oil*, 51 F.3d at 1439; *see DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, 2020 WL 10575294, at *4 (N.D. Cal. Mar. 25, 2020) (dismissing complaint that failed to allege entry barriers); *Distance Learning Co. v. Maynard*, 2020 WL 2995529, at *8 (N.D. Cal. June 4, 2020) (same; the need to compete is not a "structural barrier").

And for much the same reasons, Realtek fails to plausibly allege that MediaTek could have achieved monopoly power through the challenged conduct.  "[N]either monopoly power nor a dangerous probability of achieving monopoly power can exist absent evidence of barriers to new entry or expansion." *Am. Prof. Testing*, 108 F.3d at 1154.  Thus, even if MediaTek drove Realtek out of the market through the Future Link litigation—an implausible claim given patent litigation's ubiquity—the complaint alleges no facts to suggest that other chip makers would not simply fill the void.  Accordingly, Realtek fails to allege that MediaTek could have achieved a monopoly through the challenged conduct—or that it specifically intended to do so or had a dangerous probability of success.  *Spectrum Sports*, 506 U.S. at 459 (requiring "realistic probability" of monopolization);

-16-

1  *William Inglis & Sons*, 668 F.2d at 1030 (lack of market power makes specific intent to monopolize

2  implausible); *Hunt-Wesson Foods*, 627 F.2d at 927 (same).

3  **III.    REALTEK DOES NOT ALLEGE A PLAUSIBLE UCL CLAIM.**

4         The UCL prohibits any "unlawful, unfair, or fraudulent" business practice.  Cal Bus. & Prof.

5  Code § 17200.  The "unlawful" prong "borrows" and requires a predicate violation of another law,

6  while the "unfair" prong may prohibit a practice "even if not specifically proscribed by some other

7  law."  *Cel-Tech Commn's, Inc. v. L.A. Cellular Rel. Co.*, 20 Cal 4th 163, 180 (1999).  Even so,

8  "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair."  *Id.* at

9  182.  The California Supreme Court has held that "[a]n undefined standard of what is 'unfair' fails

10  to give businesses adequate guidelines as to what conduct may be challenged and thus enjoined and

11  may sanction arbitrary or unpredictable decisions about what is fair or unfair."  *Id.* at 185.  Thus,

12  even under the "unfair" prong, "courts may not apply purely subjective notions of fairness."  *In re*

13  *Qualcomm Antitrust Litig.*, 2023 WL 121983, at *21 (N.D. Cal. Jan. 6, 2023).

14         To avoid such purely subjective standards, courts must "tether[]" competitor claims under

15  the "unfair" prong to the antitrust laws to consider "whether the defendant's conduct 'threatens an

16  incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because

17  its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens

18  or harms competition."  *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023) (quoting

19  *Cel-Tech*, 20 Cal. 4th at 186-7).  A "safe harbor" further prohibits UCL claims where "California or

20  federal statutory law 'absolutely precludes private causes of action or clearly permits the defendant's

21  conduct.'"  *Id.* at 1001 (quoting *Zhang v. Sup. Ct.*, 57 Cal. 4th 364, 379-80 (2013)) (simplified).

22         Here, Realtek alleges that defendants' conduct (1) violates the "unlawful" prong based on

23  "federal antitrust law;" (2) threatens an incipient violation of antitrust law, or violates the policy or

24  spirit of one of those laws; (3) violates the "unlawful" and "unfair" prongs under Section 5 of the

25  Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), and (4) violates the "fraudulent"

26  prong based on "Future Link's false claims regarding effective service."  Compl. ¶¶ 76-78.  These

27  claims have multiple defects that bar recovery.  And even without these defects, the claims are

28  barred because the Patent Act provides a "safe harbor" under the UCL and Realtek has no equitable

-17-

1   remedy for past conduct.  The UCL claim should proceed no further.

2       **A.      Realtek Fails to State A UCL Violation.**

3               **1.      Realtek Does Not Plead a Violation Of The Antitrust Laws**

4           As explained above, Realtek fails to plead a violation of the antitrust laws.  Its claims under

5   the "unlawful" prong premised on the same antitrust laws thus necessarily fail.  *See Hardley v.*

6   *Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (where "a plaintiff cannot state a

7   claim under the predicate law," the UCL claim "also fails" under the unlawful prong); *Ebeid v.*

8   *Facebook, Inc.*, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (similar).

9               **2.      Realtek Does Not Plead An Incipient Violation Of The Antitrust Laws**

10          Although the UCL may sweep broader than an actual violation of antitrust law, it is not a

11  carte blanche to disregard antitrust law requirements.  *See Cel-Tech*, 20 Cal. 4th at 1185.  A plaintiff

12  must still allege "at a minimum" that the "actions were anti-competitive" or have a comparable

13  effect to an antitrust violation.  *Reilly*, 2022 WL 1215305, *8; *see also Aspex Eyewear, Inc. v. Vision*

14  *Serv. Plan*, 389 F. App'x 664, 666 (9th Cir. 2010) (an "incipient" antitrust violation still requires

15  "proof of some actual or threatened impact on competition").  "If the same conduct is alleged to be

16  both an antitrust violation and an 'unfair' business act or practice for the same reason—because it

17  unreasonably restrains competition and harms consumers—the determination that the conduct is not

18  an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward

19  consumers."  *City of San Jose v. Office of Com'r of Baseball*, 776 F.3d 686, 691 (9th Cir. 2015)

20  (quoting *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001)).

21          Here, Realtek fails to allege the basic elements of an antitrust violation, such as any plausible

22  effect on competition or antitrust injury.  This is not a case where Realtek merely failed to meet its

23  burden; Realtek has not alleged anything close to an antitrust violation in the first place.  Absent

24  allegations of harm to competition—the most fundamental aspect of the antitrust laws—Realtek

25  cannot plead an "incipient" antitrust violation or violation of the "policy or spirit" of those laws.

26  *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557-58 (9th Cir. 2008).  Thus, the UCL

27  claim must be dismissed for the same reasons as the antitrust claims.  *See Facebook, Inc. v.*

28  *BrandTotal Ltd.*, 2021 WL 662168, at *10 (N.D. Cal. Feb. 19, 2021)  (dismissing UCL claims where

1   plaintiff fail to allege "antitrust injury, which 'is an element of all antitrust suits'"); *Caccuri v. Sony*

2   *Interactive Ent. LLC*, 2022 WL 2789554, at *5 (N.D. Cal. July 15, 2022) (similar).

3        **3.**     <u>**The FTC Act And Policy Statement Provide No Substitute**</u>

4          The law regarding whether the FTC Act can supply a predicate violation is unsettled.  In

5   *Zhang*, the California Supreme Court held that a plaintiff may not "'plead around' an 'absolute bar

6   to relief'"—like lack of a private right of action—"simply 'by recasting the cause of action as one

7   for unfair competition.'" 57 Cal. 4th at 3.  The statute in that case "contemplated only administrative

8   enforcement," which meant that "a litigant may not rely on [it] as the basis for a UCL claim" unless

9   the conduct independently violated "other statutes or the common law." *Id.* at 384; *see also id.* at

10  369 (allowing a UCL claim "based on grounds independent from" the statute).

11         As in *Zhang*, the FTC Act rests remedial power "solely in the Federal Trade Commission."

12  *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981).  Many courts hold that it cannot supply a

13  predicate violation because Congress affirmatively "considered a situation and concluded no action

14  should lie." *Cel-Tech*, 20 Cal. 4th at 182; *see, e.g.*, *O'Donnell v. Bank of Am., Nat. Ass'n*, 504 F.

15  App'x 566, 568 (9th Cir. 2013) (holding that the FTC Act "doesn't create a private right of action,

16  and plaintiffs can't use California law to engineer one"); *Gardner v. Nationstar Mortg. LLC*, 2015

17  WL 1405539, at *8 (E.D. Cal. Mar. 26, 2015) (same).  Although some decisions come out the other

18  way, they do not consider *Zhang* or whether the FTC Act provides a basis under the UCL

19  *independent* of the antitrust laws to which it is tethered.  *See, e.g.*, *Schmitt v. SN Serv. Corp.*, 2021

20  WL 5279822, at *5 (N.D. Cal. Nov. 12, 2021).  Under the clear (and controlling) holding of *Zhang*,

21  the FTC Act cannot supply a predicate law independent of the antitrust laws.

22         Moreover, even if the FTC Act could provide a predicate violation, there is no basis to utilize

23  it here in light of the UCL's "tethering" test.  *See Cel-Tech*, 20 Cal. 4th at 186.  In defining that test,

24  the California Supreme Court found that "California courts remain the ultimate arbiters of the

25  meaning and scope of the unfair competition law," which it limited, in part based on FTC Act cases,

26  to an "incipient violation of an antitrust law," violation of "the policy or spirit of one of those laws,"

27  or conduct that "significantly threatens or harms competition."  *Id.*  But while the court cited

28  "parallel" FTC Act jurisprudence, "it did not indicate . . . that Section 5 provides an alternative

-19-

applicable test that **displaces** the *Cel-Tech* test." *LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, 2019 WL 160335, at *17 (N.D. Cal. Jan. 10, 2010) (emphasis in original).

For the reasons explained above, Realtek fails to state a claim under the *Cel-Tech* tethering test.  Until recently, the FTC Act standard was the same—requiring a violation of the "spirit" or "policy" of the antitrust laws, an "incipient" antitrust violation, or other significant threat or harm to competition—and there is no indication it would come out differently.  RJN Ex. I at 7-8 (citing cases).  That standard remains the only interpretation of the FTC Act endorsed by the courts, which remain the ultimate arbiters of the scope and meaning of the FTC Act.  *See F.T.C. v. Indiana Fed. of Dentists*, 476 U.S. 447, 454 (1986) (holding, under the FTC Act, that "the identification of governing legal standards and their application to the facts" are "for the courts to resolve"); *see also E.I. du Pont de Nemours & Co. v. F.T.C.*, 729 F.2d 128, 141 (2d Cir. 1984) (reversing an FTC interpretation of the FTC Act that allowed prohibition of conduct without "significantly lessened competition); *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 141 S. Ct. 1341, 1346-47 (2021) (rejecting FTC's interpretation that the FTC Act permits restitution).  Thus, to the extent that the FTC Act provides a predicate law, it requires the same dismissal for the same reasons.

And the FTC's recent "Policy Statement Regarding the Scope of Unfair Methods of Competition Under Section 5 of the [FTC Act]" does not suffice as a separate basis for Realtek's UCL claim.  Compl. ¶ 77.  The policy statement is not a "law" under the "unlawful" prong.  *See Cel-Tech*, 20 Cal. 4th at 180.  Nor is it a "legislatively declared policy."  *Id.* at 186.  Under the "unfair" prong, the California Supreme Court expressly adopted a "more precise" tethering test for competitor cases when rejecting "undefined standard[s]" that allow for "arbitrary and unpredictable decisions about what is fair or unfair."  *Id.* at 185.  To the extent the policy statement is inconsistent with this test and allows for such "unpredictable" decisions—e.g., because it allows conduct that "goes beyond competition on the merits" without "significant" effect on competition—it must give way to the tethering test and fails for the same reasons.  *See Epic Games*, 67 F.4th at 1000 (recognizing the "tethering test" as the controlling standard for competitor cases under the unfair" prong); *cf. Facebook*, 2021 WL 662168, at *10 ("the 'unfair' prong implicates antitrust law").

Regardless, Realtek fails to allege that MediaTek violated either the FTC Act or its policy.

1   MediaTek's attempt to level the playing field to ensure that competitors paid the same costs as itself

2   was neither "unfair" nor harmful to competition for the reasons explained above.   Realtek's

3   opportunistic attempt to rely on a different formulation of the FTC Act cannot salvage its claims.

4                    **4.      Realtek Does Not Plead A Claim Under The Fraudulent Prong**

5             Realtek halfheartedly alleges that the conduct at issue was fraudulent because of "Future

6   Link's false claims regarding effecting service on Realtek."  Compl. ¶ 78.  This claim fails for two

7   reasons.   ***First***, Realtek fails to plead fraud with particularity under Federal Rule 9.   *See In re*

8   *Actimmune Mktg. Litig.*, 2009 WL 3740648, at *13 (N.D. Cal. Nov. 6, 2009).   ***Second***, even if

9   Realtek had adequately plead fraud, Future Link's representations about service have nothing to do

10  with MediaTek.  The "fraudulent" prong thus cannot state a UCL violation by MediaTek.

11            **B.      The UCL Action Is Independently Barred.**

12                    **1.      The Patent Act Provides A Safe Harbor Under the UCL**

13            Even if Realtek had managed to allege a UCL claim, it would still be barred because it falls

14  under the "safe harbor" for lawful conduct.  "Acts that the Legislature has determined to be lawful

15  may not form a basis for an action under the unfair competition law." *Cel-Tech*, 20 Cal. 4th at 183.

16  Here, the Patent Act expressly grants patent owners like Future Link a limited monopoly and

17  statutory right to enforce that monopoly against infringers.  35 U.S.C. § 271.  The circumstances in

18  which these statutory rights may yield to antitrust prohibitions have been carefully delineated to

19  avoid impermissibly hindering the Patent Act, which otherwise provides a "safe harbor."  *See Q-*

20  *Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304-05 (Fed. Cir. 2004) (emphasizing the

21  limited cases where patent assertion can give rise to antitrust liability).

22            An antitrust case may rest on patent assertion where (1) "the patent was procured by fraud

23  on the Patent Office," or (2) "the patent holder is enforcing the patent in bad faith."  *Chip-Mender,*

24  *Inc. v. Sherwin-Williams Co.*, 2006 WL 13058, at *4 (N.D. Cal. Jan 3, 2006).  Some courts have

25  also held that patent assertion may be actionable as part of a larger anticompetitive "scheme," if that

26  involves separate acts that independently cause anticompetitive harm.  *See Hynix*, 527 F. Supp. 2d

27  at 1091-97.  Outside of these categories, the "proper course" is to "erect such barriers to antitrust

28  suits as are necessary to provide reasonable protection for the honest patentee" and "prevent

-21-

frustration of patent law by the long reach of antitrust law." *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979); *cf. Q-Pharma*, 360 F.3d at 1304 ("A patent owner who brings a suit for infringement, without more, is generally exempt from the antitrust laws for that action.").

Here, Realtek alleges none of the exceptions. First, as explained above, Realtek cannot show that Future Link procured its patents by "fraud on the Patent Office." *Kaiser*, 552 F.3d at 1047. Second, it does not allege an anticompetitive "scheme"; only a single allegedly anticompetitive lawsuit. Antitrust liability under this standard (to the extent that it provides an exception) requires that "other aspects of the scheme independently produce anticompetitive harms." *Hynix*, 527 F. Supp. 2d at 1097. Although the complaint uses the word "scheme," it identifies no non-litigation conduct besides "illegal bundling," a conclusory allegation. Compl. ¶ 43. Last, there is no bad faith here; the mere "commencement and maintenance of related infringement actions" does not show "bad faith." *Handgards*, 601 F.2d at 995. Because none of the exceptions apply, the Patent Act makes the activity "lawful" and provides a "safe harbor" under the UCL.

## 2. <u>Realtek Cannot Show Threat Of Future Harm To Obtain Recovery.</u>

Even if Realtek had pled a violation, it has no remedy under the UCL because its claims concern past conduct. "While the scope of conduct covered by the UCL is broad, its remedies are limited." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). UCL permits recovery of only "injunctive relief and restitution." *See Anthony Cal., Inc. v. Fire Power Co., Ltd.*, 2018 WL 11352483, at *2 (C.D. Cal. Aug. 9, 2018). "To support an award for an injunctive relief under the UCL, 'there must be a threat that the wrongful conduct will continue.'" *Id*. (quoting *Davis v. Farmers Ins. Exchange*, 245 Cal. App. 4th 1302, 1326-27 (2016)). Here, there is no such threat: the license agreement, █████████████████████████████████████

█████████████████ RJN Ex. A at 29. Realtek alleges that "MediaTek has not indicated that it will refrain from further litigation bounty agreements with IPValue and Future Link," Compl. ¶ 79, but that is pure speculation: there is no reason for MediaTek to take out a second license to patents it has already licensed. Nor is there room for restitution because Realtek does not allege that MediaTek possesses money or property "trace[able]" to Realtek. *See In re Nexus 6P Prods. Liability Litig.*, 293 F. Supp. 3d 888, 952-53 (N.D. Cal. 2018). There is thus no recovery.

1

2

3

## IV.   THE TORTIOUS INTERREFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE CLAIM IS BARRED AND INADEQUATELY PLEAD

### A.   California Supreme Court Precedent Precludes Realtek's Claim.

In *Pacific Gas and Electric Co. v. Bear Stearns & Co.*, the California Supreme Court sharply limited tortious interference claims based on inducing third-party litigation. 50 Cal. 3d 1118, 1137 (1990) (In Bank). There, a private equity firm encouraged a California agency to sue PG&E to terminate its contract. *Id.* at 1124. The firm paid for "legal, engineering, and marketing studies" and retained legal counsel to help the agency litigate the termination. *Id.* The California Supreme Court held that permitting a tortious interference claim on those facts would be "repugnant" to the philosophy of the legal system and "threaten free access to the courts." *Id.* at 1137. "Not every person who wishes to achieve the object of a lawsuit, or who is involved in the bringing of a lawsuit, is a named party," and California has "no public policy against the funding of litigation by outsiders." *Id.* at 1136. Allowing tort claims against them would "choke[] off" access to the courts and "cause a flood of oppressive derivative litigation." *Id.* Thus, "a plaintiff seeking to state a claim for intentional interference with contract or prospective economic advantage because defendant induced another to undertake litigation, must allege that the litigation was brought without probable cause and . . . concluded in plaintiff's favor." *Id.* at 1137.

Here, Realtek alleges neither of these elements. Realtek claims that the license agreement "and Future Link's serial litigation that followed" was tortious interference with potential customer relationships. Compl. ¶ 84. But as explained above, Realtek already lost the argument that Future Link's litigation lacked probable cause: Both Judge Albright and the ITC rejected its claims for sanctions on the merits. Moreover, even if Realtek could allege lack of probable cause, it cannot show that the Future Link concluded in its favor. Future Link's cases were dismissed voluntarily, and the Western District of Texas court expressly ***denied*** Realtek's motions for sanctions and attorneys' fees and costs because the lawsuits were not "meritless." RJN ¶ 13 & Ex. G at 14. Realtek thus cannot allege prerequisite requirements for bringing a tortious interference claim based on inducing third-party litigation.

1    **B.    Realtek Does Not Allege Independently Wrongful Conduct.**

2    To state a claim for tortious interference with prospective economic advantage, a plaintiff

3    must "allege an act that is wrongful independent of the interference itself."  *CRST Van Expedited,*

4    *Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007).  That is because where no "formal

5    economic relationship" exists, interference with prospective economic advantage is not a "wrong in

6    and of itself."  *Korea Supply*, 29 Cal. 4th at 1158 (citation omitted).  "An act is not independently

7    wrongful merely because defendant acted with an improper motive."  *Id*.  Rather, the act must be

8    "proscribed by some constitutional, statutory, common law, or other determinable standard."  *Id*.

9    Requiring an independently wrongful act helps "keep legitimate business competition outside

10   litigative bounds."  *Id.* at 1159-60.

11   Here, Realtek fails to allege any "independently wrongful act."  Inducing Future Link to

12   bring litigation is privileged, for the reasons explained above, and thus cannot be proscribed by any

13   law.  *Pacific Gas & Elec.*, 50 Cal. 3d 1137.  Realtek's allegation that MediaTek told "Realtek's

14   existing and potential customers and end users about Future Link's lawsuits to suggest that Realtek

15   might be an unreliable supplier" also fails.  Compl. ¶ 69.  Drawing all inferences in favor of Realtek,

16   the alleged statement was ***true***—Realtek admits it was involved in litigation seeking "injunctions

17   and an exclusion order," *id.* ¶ 65—and truthful statements about competitors are not wrongful.  *See*

18   *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1014 (2001) ("A person cannot incur

19   liability for interfering with contractual or economic relations by giving truthful information to a

20   third party.").  Accordingly, Realtek fails to plead an independently wrongful act to state a claim.

21   **C.    Realtek Pleads Only A Vague Possibility of "Attempt" At Interference.**

22   Assuming Realtek somehow plead tortious interference, the allegations are so vague and

23   tentative that they fail to give notice of the conduct accused or state a plausible claim.  Realtek

24   alleges that MediaTek "coerced at least one TV Chip customer not to incorporate Realtek TV Chips

25   into its products," but it fails to explain ***which*** customers were supposedly interfered with or any

26   facts giving rise to this allegation.  Compl. ¶ 42.  Indeed, Realtek appears to be uncertain that

27   interference even took place:  It alleges that MediaTek "attempted" to interfere with customer

28   relationships and that Realtek only "believes it lost business as a result" upon "information and

-24-

belief." *Id*. ¶ 69.  This is insufficient.  Realtek must allege sufficient "factual matter" to create a "reasonable inference" of tortious interference, not simply a "sheer possibility" that MediaTek may have interfered.  *Iqbal*, 556 U.S. at 678.  And California does not recognize an attempt at tortious interference claim at all; Realtek must allege "actual disruption of the relationship."  *CRST Van Expedited*, 479 F.3d at 1108; *see Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (affirming dismissal for failure to "plead facts either showing or allowing the inference of actual disruption").  Accordingly, to the extent that the claim is not barred, Realtek does not plead sufficient facts for a tortious interference claim.

## V.  AMENDMENT WOULD BE FUTILE HERE

Leave to amend may be denied where "past proceedings or judicially noticeable facts make it clear that the sham litigation exception [to *Noerr-Pennington*] does not apply."  *UCP International*, 420 F. Supp. 3d at 981; *see also Calvary Chapel San Jose v. Cody*, 2022 WL 827116, at *12 (N.D. Cal. March 3, 2022) (denying leave to amend where the complaint allegations and attached documents show "[n]o factual allegations could bring [the conduct] outside of *Noerr-Pennington* immunity").  Here, facts subject to judicial notice confirm that Future Link's lawsuits were not objectively baseless—and that Realtek already litigated and lost on the issue.  No allegations consistent with these judicially noticed facts could overcome the deficiencies, and leave to amend should be denied.  *See English v. Mortg. Store Fin. Inc.*, 2019 WL 2918140, at *4 (C.D. Cal. July 8, 2019) (denying leave to amend where the court cannot "conceive of additional facts, consistent with the [operative complaint] and judicially-noticed documents, that would remedy" the defects); *Solano v. Select Portfolio Servs., Inc.*, 2016 WL 5937794, at *5 (C.D. Cal. Apr. 6, 2016) (denying leave to amend where, "[i]n light of the background to this case filled in by the judicially noticeable documents, it is simply implausible that Plaintiffs would be able to plead facts, consistent with their obligations under Rule 11, that would cure the deficiencies discussed above.").

## CONCLUSION

For the foregoing reasons, MediaTek respectfully request dismissal of the complaint in full.

1   Dated: September 1, 2023                 By:  _/s/ Adam Wolfson_

2

3                                              KEVIN P.B. JOHNSON, SBN 177129
                                             kevinjohnson@quinnemanuel.com
                                             Quinn Emanuel Urquhart & Sullivan, LLP
4                                              555 Twin Dolphin Drive, 5th Floor
                                             Redwood Shores, CA 94065
5                                              Telephone: (650) 801-5000
                                             Facsimile: (650) 801-5100

6                                              SEAN S. PAK, SBN 219032
                                             seanpak@quinnemanuel.com
7                                              ADAM B. WOLFSON, SBN 262125
                                             adamwolfson@quinnemanuel.com
8                                              Quinn Emanuel Urquhart & Sullivan, LLP
                                             50 California Street, 22nd Floor
9                                              San Francisco, CA 94111
                                             Telephone: (415) 875-6600
10                                             Facsimile: (415) 875-6700

11                                             KEVIN HARDY (_pro hac vice_)
                                             D.C. Bar No. 473941
12                                             QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                             1300 I Street, N.W., Suite 900
13                                             Washington, DC 20005
                                             Tel: 202.538.8000
14                                             Fax: 202.538.8100
                                             kevinhardy@quinnemanuel.com
15

16                                             _Attorneys for Defendant MediaTek Inc._

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

2       Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that

3   concurrence in the filing of the document has been obtained from each of the other signatories to

4   this document.

5

6       Executed on September 1, 2023.

7                                 */s/ Adam Wolfson*_____

8                                 Adam Wolfson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28