1  IRELL & MANELLA LLP
   Benjamin W. Hattenbach (SBN 186455)
2  Michael D. Harbour (SBN 298185)
   1800 Avenue of the Stars, Suite 900
3  Los Angeles, California 90067-4276
   Telephone:   (310) 277-1010
4  Facsimile:    (310) 203-7199
   Email: bhattenbach@irell.com
5  Email: mharbour@irell.com

6  A. Matthew Ashley (SBN 198235)
   840 Newport Center Drive, Suite 400
7  Newport Beach, CA 92660-6324
   Telephone:   (949) 760-0991
8  Facsimile:    (949) 760-5200
   Email: mashley@irell.com

9
   *Counsel for Defendants*
10 IPVALUE MANAGEMENT, INC., and
   FUTURE LINK SYSTEMS, LLC

11

12                 **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14 REALTEK SEMICONDUCTOR CORP.,          Case No. 5:23-cv-02774-PCP

15            Plaintiff,

16       v.                              **DEFENDANTS FUTURE LINK
                                         SYSTEMS, LLC AND IPVALUE
17 MEDIATEK INC., IPVALUE               MANAGEMENT, INC.'S NOTICE OF
   MANAGEMENT INC., and FUTURE LINK     MOTION AND MOTION TO DISMISS
18 SYSTEMS, LLC,                         AND TO STRIKE PLAINTIFF'S
                                         COMPLAINT**
19            Defendants.
                                         **PUBLIC VERSION**
20
                                         Hon. P. Casey Pitts
21
                                         Date:        October 26, 2023
22                                       Time:        10:00am
                                         Courtroom:   8
23

24

25

26

27

28

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT at 10:00am on October 26, 2023, in Courtroom 8, 4th Floor of 280 South 1st Street, San Jose, CA 95113, before the Honorable P. Casey Pitts, Defendants Future Link Systems, LLC and IPValue Management, Inc. (collectively, "Future Link") will appear and move to dismiss and to strike the Complaint of Plaintiff Realtek Semiconductor Corp. Specifically, Future Link moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and moves to strike Plaintiff's state law claims pursuant to California Code of Civil Procedure § 425.16 (the "anti-SLAPP" statute). This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Michael D. Harbour, Future Link's Request for Judicial Notice, and any other filing, evidence, or argument presented in this matter. Future Link also joins the arguments made by defendant MediaTek, Inc. in its motion to dismiss, to the extent the arguments are applicable to Future Link.

Future Link will be entitled to an award of attorneys' fees and costs if it prevails on its motion to strike. See Cal. Code Civ. Proc. § 425.16(c)(1). Should Future Link prevail, it requests that the amount of the award be reserved for later briefing following the October 26, 2023 hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether the *Noerr-Pennington* doctrine bars Plaintiff's claims;

2.  Whether Plaintiff has pleaded a viable Sherman Act Section 2 conspiracy claim; and

3.  Whether Plaintiff's California state law claims should be stricken under California's anti-SLAPP statute or alternatively dismissed under Rule 12(b)(6) for failure to state a claim.

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                                    - 2 -

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3   I.      INTRODUCTION..................................................................................................1

4   II.     THE COMPLAINT ...............................................................................................3

5   III.    THE COMPLAINT IS BARRED BY THE *NOERR-PENNINGTON* DOCTRINE .........5

6           A.      The Complaint Attacks Protected Activity .............................................5

7           B.      Plaintiff Has Not Pleaded And Cannot Plead Facts Showing The
                    Sham Exception Applies ........................................................................6

8                   1.      Future Link's Litigations Were Not Objectively Baseless.........................7

9                   2.      Plaintiff Has Not Pleaded Facts Showing Intent To Interfere...................9

10                  3.      Plaintiff Is Estopped From Asserting That The Sham
                            Exception Applies ......................................................10

11  IV.     PLAINTIFF'S SHERMAN ACT § 2 CLAIM FAILS AS A MATTER OF LAW ..........13

12          A.      Plaintiff Does Not Allege That Future Link Is A Competitor In The
                    Market ..........................................................................13

13          B.      The Complaint Fails To Plead A Conspiracy And Specific Intent To
                    Monopolize...................................................................14

14          C.      The Complaint Fails To Plead Cognizable Antitrust Injury .................16

15  V.      PLAINTIFF'S STATE LAW CLAIMS SHOULD BE STRICKEN OR DISMISSED ...19

16          A.      Plaintiff's State Law Claims Arise From Protected Activity................20

17          B.      Plaintiff's State Law Claims Fail As A Matter Of Law .......................20

18                  1.      Plaintiff's State Law Claims Are Barred By The Litigation
                            Privilege .....................................................................21

19                  2.      Plaintiff's Section 17200 Claim Fails To State A Claim .........................22

20                  3.      Plaintiff's Tortious Interference Claim Fails To State A
                            Claim ..........................................................................23

21  VI.     CONCLUSION ..................................................................................................25

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*AlterG, Inc. v. Boost Treadmills LLC*,
5
    388 F. Supp. 3d 1133 (N.D. Cal. 2019) ..................................................................24

6
*Antonious v. Spalding & Evenflo Cos.*,
    275 F.3d 1066 (Fed. Cir. 2002) ..........................................................................11

7

*Apple Inc. v. Wi-LAN Inc.*,
8
    No. C 14-2838, 2014 WL 4477362 (N.D. Cal. Sept. 11, 2014) ...........................8

9
*Arthur J. Gallagher v. Lang*,
    No. C 14-0909, 2014 WL 6816644 (N.D. Cal. Dec. 3, 2014) .............................21
10

11
*Avaya Inc. v. Telecom Labs*,
    838 F.3d 354 (3d Cir. 2016) ...............................................................................8
12

*B&G Foods v. Embry*,
13
    2022 WL 16702141 (E.D. Cal. Nov. 3, 2022) ....................................................7

14
*Bay Area Surgical Mgmt. v. Aetna Life Ins.*,
    166 F. Supp. 3d 988 (N.D. Cal. 2015) ..............................................................25
15

16
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................14

17
*BioResource, Inc. v. U.S. Pharmaco*,
18
    No. C 10-1053 SI, 2010 WL 2763681 (N.D. Cal. July 13, 2010)......................23

19
*Brooke Grp. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ..........................................................................................17
20

21
*Cal. Comput. Products v. Int'l Business Machines*,
    613 F.2d 727 (9th Cir. 1979)..............................................................................18
22

*Calvary Chapel San Jose v. Cody*,
23
    No. 20-cv-03794, 2022 WL 827116 (N.D. Cal. March 3, 2022) .......................10

24
*Cataphote Corp. v. DeSoto Chem. Coatings*,
    450 F.2d 769 (9th Cir. 1971)..............................................................................15
25

26
*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
    No. C 05-3465 PJH, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006)........................18

27
*City of San Jose v. Office of Com'r*,
28
    776 F.3d 686 (9th Cir. 2015)..............................................................................22

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273

- ii -

*City of San Jose v. Office of Comm'r*,
   No. C-13-02787 RMW, 2013 WL 5609346 (N.D. Cal. Oct. 11, 2013), *aff'd*,
   776 F.3d 686 (9th Cir. 2015)...................................................................................19

*Columbia Pictures v. Pro. Real Est. Invs.*,
   944 F.2d 1525 (9th Cir. 1991)...................................................................................6

*Covad Commc'ns v. Bell Atl. Corp.*,
   398 F.3d 666 (D.C. Cir. 2005) ................................................................................19

*Datagate, Inc. v. Hewlett-Packard*,
   672 F. Supp. 1288 (N.D. Cal. 1987) .......................................................................19

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
   11 Cal. 4th 376 (1995).............................................................................................25

*DocMagic, Inc. v. Ellie Mae, Inc.*,
   745 F. Supp. 2d 1119 (N.D. Cal. 2010) .................................................................23

*Dydzak v. U.S.*,
   No. 17-CV-04360-EMC, 2017 WL 4922450 (N.D. Cal. Oct. 31, 2017)..................16

*E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) ...................................................................................................5

*In re Ebay Seller Antitrust Litig.*,
   No. C 07-01882 JF (RS), 2010 WL 760433 (N.D. Cal. Mar. 4, 2010), *aff'd* 433
   F. App'x 504 (9th Cir. 2011)....................................................................................17

*Entrepreneur Media v. Dermer*,
   2019 WL 4187466 (C.D. Cal. July 22, 2019) .........................................................6

*Equilon Enters. v. Consumer Cause, Inc.*,
   29 Cal. 4th 53 (2002)...............................................................................................20

*Evolve Techs. v. Coil Winding Specialist*,
   2019 WL 1383272 (S.D. Cal. Mar. 27, 2019).........................................................9

*Facebook, Inc. v. BrandTotal Ltd.*,
   No. 20-CV-07182-JCS, 2021 WL 662168 (N.D. Cal. Feb. 19, 2021)......................22

*Feldman v. 1100 Park Lane Assocs.*,
   160 Cal. App. 4th 1467 (2008).................................................................................21

*Finato v. Fink*,
   803 F. App'x 84 (9th Cir. 2020)................................................................................21

*Formula One Licensing v. Purple Interactive*,
   No. 00-CV-2222-MMC, 2001 WL 34792530 (N.D. Cal. Feb. 6, 2001) ...................7

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No  5:23-cv-02774-PCP

11257273

- iii -

*Fortinet, Inc. v. Forescout Techs.*,
   No. 20-CV-03343-EMC, 2021 WL 5565836 (N.D. Cal. Nov. 29, 2021).................................7

*Franchise Realty v. San Francisco Local*,
   542 F.2d 1076 (9th Cir. 1976)..............................................................................................9

*Girafa.com, Inc. v. Alexa Internet, Inc.*,
   No. C-08-02745 RMW, 2008 WL 4500858 (N.D. Cal. Oct. 6, 2008)...................................18

*Green Crush LLC v. Paradise Splash I, Inc*.,
   2018 WL 4940825 (C.D. Cal. May 3, 2018)..........................................................................24

*GSI Tech. v. United Memories, Inc.*,
   No. 5:13-CV-01081-PSG, 2014 WL 1572358 (N.D. Cal. Apr. 18, 2014)..............................17

*Howard v. City of Coos Bay*,
   871 F.3d 1032 (9th Cir. 2017)..............................................................................................10

*Huawei Techs. v. Samsung Elecs.*,
   340 F. Supp. 3d 934 (N.D. Cal. 2018) ..................................................................................18

*Intel Corp. v. Fortress Inv. Grp.*,
   2022 WL 16756365 (9th Cir. Nov. 8, 2022)..........................................................................22

*Juniper Networks v. Swarm Techs.*,
   No. 3:20-cv-03137-JD, 2022 WL 3031211 (N.D. Cal. Aug. 1, 2022).....................................13

*Kane v. DeLong*,
   No. C-12-5437, 2013 WL 1149801 (N.D. Cal. Mar. 19, 2013)................................................21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)..............................................................................................22

*Kendall v. Visa U.S.A.*,
   518 F.3d 1042 (9th Cir. 2008)..............................................................................................15

*Kewanee Oil Co. v. Bicron Corp.*,
   416 U.S. 470 (1974)..............................................................................................................23

*Kottle v. Nw. Kidney Centers*,
   146 F.3d 1056 (9th Cir. 1998)................................................................................................5

*Kraly v. Nat'l Distillers*,
   502 F.2d 1366 (7th Cir. 1974)..............................................................................................16

*Liberty Lake Invs. v. Magnuson*,
   12 F.3d 155 (9th Cir. 1993)...............................................................................................5, 9

*Mercy-Peninsula Ambulance v. San Mateo Cnty.*,
   592 F. Supp. 956 (N.D. Cal. 1984) .......................................................................................13

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                                   - iv -

*Mercy-Peninsula Ambulance v. San Mateo Cnty.*,
  791 F.2d 755 (9th Cir. 1986)..................................................................................13

*Minichino v. First Cal. Realty*,
  No. C-11-5185 EMC, 2012 WL 4364611 (N.D. Cal. Sept. 24, 2012)..........................20

*Mitchell v. Reg'l Serv.*,
  No. C 13-04212, 2014 WL 12607809 (N.D. Cal. Apr. 23, 2014)..............................22

*NorthBay Healthcare Group v. Kaiser Found.*,
  305 F. Supp. 3d 1065 (N.D. Cal. 2018) ....................................................................18

*NorthBay Healthcare v. Kaiser Found.*,
  No. 17-CV-05005, 2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) ....................14, 15, 16

*NYNEX Corp. v. Discon, Inc.*,
  525 U.S. 128 (1998) ....................................................................................................17

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) .........................................................................23

*O'Donnell v. Bank of Am.*,
  504 F. App'x 566 (9th Cir. 2013)................................................................................22

*Or. Nat. Res. Council v. Mohla*,
  944 F.2d 531 (9th Cir. 1991)..........................................................................6, 7, 9, 22

*Oyeniran v. Holder*,
  672 F.3d 800 (9th Cir. 2012)......................................................................................11

*Pac. Gas & Elec. v. Bear Stearns*,
  50 Cal. 3d 1118 (1990).................................................................................................23

*Paladin Assocs. v. Montana Power Co.*,
  328 F.3d 1145 (9th Cir. 2003)..............................................................................14, 18

*Power Analytics v. Operation Tech.*,
  2017 WL 11486807 (C.D. Cal. Dec. 7, 2017) ...........................................................24

*Prime Healthcare v. Serv. Emps. Int'l*,
  642 F. App'x 665 (9th Cir. 2016)................................................................................18

*Pro. Real Est. Invs. v. Columbia Pictures*,
  508 U.S. 49 (1993) ............................................................................................ *passim*

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
  360 F.3d 1295 (Fed. Cir. 2004)..............................................................................8, 11

*Ramachandran v. City of Los Altos*,
  359 F. Supp. 3d 801 (N.D. Cal. 2019) .................................................................19, 20

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                                    - v -

*Rebel Oil v. Atl. Richfield*,
    51 F.3d 1421 (9th Cir. 1995)................................................................................................16

*Rheumatology Diagnostics v. Aetna, Inc.*,
    No. 12-CV-05847, 2013 WL 5694452 (N.D. Cal. Oct. 18, 2013)............................13

*Rothman v. Jackson*,
    49 Cal. App. 4th 1134 (1996)............................................................................................21

*Sampsell v. Lawrence Warehouse Co.*,
    167 F.2d 885 (9th Cir. 1948)............................................................................................10

*Sayre v. Google, Inc.*,
    No. C 19-02247, 2019 WL 6036703 (N.D. Cal. Nov. 14, 2019)............................19

*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990)........................................................................................................21

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ..............................................................................24

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006)........................................................................................5, 9

*Soukup v. Law Offices*,
    39 Cal. 4th 260 (2006)......................................................................................................20

*St Andrews Links Ltd. v. Gilfin Int'l*,
    No. 18-CV-02131-WHO, 2019 WL 4221725 (N.D. Cal. Sept. 5, 2019)....................7

*Stanislaus Food Prod. v. USS-POSCO Indus.*,
    782 F. Supp. 2d 1059 (E.D. Cal. 2011) .........................................................................14

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ...............................17

*Sumotext Corp. v. Zoove, Inc.*,
    No. 20-17245, 2021 WL 4988024 (9th Cir. Oct. 27, 2021)....................................14

*Swipe & Bite, Inc. v. Chow*,
    147 F. Supp. 3d 924 (N.D. Cal. 2015) ..........................................................................25

*Sybersound Recs. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)..................................................................................23, 24

*Synopsys, Inc. v. Atoptech, Inc.*,
    No. C 13-2965 MMC, 2015 WL 4719048 (N.D. Cal. Aug. 7, 2015) ..................17, 19

*Tessera Inc. v. Toshiba Corporation*,
    No. 15-CV-02543-BLF, 2016 WL 11894761 (N.D. Cal. Nov. 16, 2016) ................12

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
  546 F.3d 991 (9th Cir. 2008).........................................................................................12

*Truck-Rail Handling v. Burlington N.*,
  244 F. App'x 130 (9th Cir. 2007)..................................................................................16

*Tyco Healthcare v. Mut. Pharm.*,
  762 F.3d 1338 (Fed. Cir. 2014).......................................................................................8

*UCP Int'l v. Balsam Brands Inc.*,
  420 F. Supp. 3d 966 (N.D. Cal. 2019) .......................................................................6, 13

*United Tactical Sys. v. Real Action Paintball, Inc.*,
  143 F. Supp. 3d 982 (N.D. Cal. 2015) ...........................................................................20

*Wang v. Heck*,
  203 Cal. App. 4th 677 (2012)..........................................................................................21

*In re Webkinz Antitrust Litig.*,
  695 F. Supp. 2d 987 (N.D. Cal. 2010) ...........................................................................17

*Zhang v. Superior Ct.*,
  57 Cal. 4th 364 (2013)....................................................................................................23

**Statutes**

15 U.S. Code § 2 ...................................................................................................................13

Cal. Bus. & Prof. Code § 17200.............................................................................20, 22, 23

Cal. Civ. Code § 47(b) ..........................................................................................................21

Cal. Code Civ. Proc. § 425.16.................................................................................................2

**Rule**

19 CFR § 210.4(c) .................................................................................................................11

Fed. R. Civ. Proc. 11 ...................................................................................................4, 10, 11

Fed. R. Civ. Proc. 12(b)(6)..................................................................................14, 15, 18, 24

11257273

- vii -

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No  5:23-cv-02774-PCP

**I.       INTRODUCTION**

Plaintiff's Complaint is long on rhetoric and antitrust buzzwords but short on facts necessary to state a claim against Future Link. It should be dismissed, and because its failings cannot be cured, the dismissal should be with prejudice.

At its core, the Complaint constitutes an attack on constitutionally-protected activity by Future Link—the right to bring patent infringement suits—and thus is barred, as a matter of law, under the *Noerr-Pennington* doctrine. Plaintiff has not alleged that Future Link's infringement suits are mere shams, nor can it. The very decisions that the Complaint relies on to attack the allegedly improper agreement between MediaTek and Future Link rejected Plaintiff's request for monetary sanctions and fees and concluded that: (1) Future Link had a reasonable basis to bring the patent suits and (2) the suits were not motivated by an improper purpose. The Court should reject Plaintiff's attempt to collaterally attack these rulings via this case.

In addition to this universal bar, Plaintiff fails to properly plead numerous essential elements of its claims. The sole federal claim against Future Link is for allegedly conspiring to monopolize the "TV Chips" market. This claim fails as a matter of law for at least three independent reasons. First, Future Link is not alleged to be a competitor in the market, which is fatal to a claim for conspiracy to monopolize. Second, the Complaint pleads no facts showing that Future Link had the required specific intent to monopolize. Indeed, monopolization of the "TV Chips" market by MediaTek would only hurt Future Link as it would mean fewer potential licensees for Future Link. Third, the Complaint does not allege any harm to competition, *e.g.*, increase in price, decrease in quantity, or decrease in quality, in the TV Chips market in the four-plus years since the supposed "conspiracy to monopolize" was put in place. The only "harm" Plaintiff pleads is the potential loss of one unidentified customer and costs and fees incurred in the underlying patent cases, which is at most harm to Plaintiff, not harm to ***competition***. For each of these independent reasons, the Court should dismiss Plaintiff's federal claim against Future Link with prejudice.

Not only are Plaintiff's two state law claims against Future Link for unfair competition and tortious interference barred by *Noerr-Pennington*, they are also barred by California's even broader litigation privilege, the ***only*** exception to which is a claim for malicious prosecution, which Plaintiff

1   has not brought and cannot bring. Consequently, the Court should strike the state law claims under

2   California Code of Civil Procedure section 425.16 (the "anti-SLAPP" statute), but at the very least,

3   the Court should dismiss them.

4          In addition to being barred by California's anti-SLAPP statute, Plaintiff's state law claims

5   piggy-back off its antitrust claim and fail for the same reasons plus several additional ones,

6   including, for the unfair competition claim, the failure to allege fraud with particularity, to allege

7   reliance, and the lack of any basis for "restitution" given that the Complaint does not allege that

8   Plaintiff ever paid anything to Future Link. For the tortious interference claim, the Complaint fails

9   to identify any actual customer of Plaintiff, much less one lost due to anything Future Link did.

10         Unable to plead facts to support a cognizable claim against Future Link, the Complaint slings

11  mud, categorizing IPValue as a "PAE" and citing position pieces on PAEs as though being one

12  automatically constitutes an antitrust violation. In addition to failing to state a claim, this *ad*

13  *hominem* attack ignores that IPValue's approach to patent licensing "mirrors the licensing

14  approaches of the most successful IP owners, from Microsoft to Qualcomm and others . . .." Harbour

15  Decl. Ex. 14 (Gaston Kroub, *Value Creation in IP*, Above the Law (Sept. 13, 2022)).[1]  Indeed,

16  IPValue's "litigation last" approach to patent monetization "differs significantly from many others

17  in the same line of business." Ex. 15 (Angela Morris, *IPValue—the licensing business that rarely*

18  *goes to court*, IAM (Aug. 15, 2022)). Prior to filing a lawsuit, IPValue sends notice letters and

19  typically engages in successful negotiations with potential licensees, *id.*, and that is exactly what

20  Future Link attempted in this case. When Plaintiff rebuffed those attempts, Future Link brought the

21  lawsuits that Plaintiff now challenges, followed by Future Link promptly voluntarily dismissing its

22  cases against Plaintiff upon achieving a successful settlement that accrued to Plaintiff's benefit.

23         In any event, even if every allegation in the Complaint, including the mudslinging, is

24  accepted as true, Plaintiff has not come close to pleading facts entitling it to relief.  The Court should

25  dismiss all of Plaintiff's causes of action with prejudice (and should strike its state law causes of

26  action).

27

28

_____

[1] All exhibits are attached to the Declaration of Michael D. Harbour.

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No. 5:23-cv-02774-PCP

11257273                          - 2 -

## II.     THE COMPLAINT

Plaintiff alleges that "MediaTek, IPValue, and Future Link entered into an anticompetitive agreement containing an improper litigation bounty, which appears to have motivated IPValue and Future Link to initiate a campaign of meritless litigation to harm Realtek and destroy competition in the market for TV Chips." Compl. ¶ 87. It further alleges that "MediaTek, IPValue, and Future Link engaged in the conspiracy willfully, knowingly, and with the specific intent for MediaTek to gain a monopoly over TV Chips so as to collect monopoly profits for Defendants by ensuring MediaTek could price TV Chips above the competitive level." *Id.* ¶ 88.

But Plaintiff never alleges that Future Link had the specific intent to aid MediaTek (who paid a flat fee for a license from Future Link) in monopolizing the so-called TV Chips market, nor does Plaintiff allege, let alone explain, how Future Link would benefit from such a monopoly. Indeed, a patent licensor benefits when there are ***more*** not ***fewer*** licensees in a market (as demonstrated by Future Link's behavior in the underlying lawsuits). While the alleged conspiracy has purportedly been in place since at least May 2019 (the date of the contract with the conditional payment provision; *see* Ex. 13, and Request for Judicial Notice ("RJN") at 4)), the Complaint never alleges any increase in price, or any decrease in quantity or quality, of TV Chips.

While the Complaint uses antitrust buzzwords like "monopoly profits" and "competitive [price] level" (*e.g.,* Compl. ¶ 88), it pleads no facts identifying the "monopoly profits" or what the "competitive level" price for TV Chips was either before or after the alleged conspiracy. Finally, while the state law interference claim contends that Plaintiff has lost customers, the Complaint does not identify a single lost customer by name, much less allege any facts showing disruption of an actual customer relationship ***by Future Link***. Nor does the Complaint allege any facts showing Future Link took any action with respect to this unnamed customer.

The purported "campaign of meritless litigation to harm Realtek" (Compl. ¶ 87) consists of three patent cases brought by Future Link against Plaintiff, two in the Western District of Texas (collectively, the "WDTX Action") and the other in the International Trade Commission (the "ITC Action"). *Id.* ¶¶ 26, 31. Promptly after Future Link obtained a monetary settlement that granted a license that accrued to the benefit of Plaintiff's supplier, and, in turn to Plaintiff, Future Link

1  voluntarily dismissed the WDTX Action. The U.S. District Court for the Western District of Texas

2  ("WDTX") then denied Plaintiff's motions for Rule 11 sanctions and attorneys' fees, which raised

3  virtually all of the assertions that Plaintiff regurgitates in its Complaint. *Compare id.* ¶¶ 26-30 *with*

4  Ex. 7 at 10-13. So, too, did the ALJ in the ITC Action (under a standard similar to Rule 11). Ex. 9.

5        The allegedly "anticompetitive agreement" is a May 2019 Patent License Agreement

6  between Future Link Systems, LLC and MediaTek Inc. (herein, "License Agreement"), a copy of

7  which is attached as Ex. 13. The provision that is the focus of the Complaint (and was the focus of

8  Plaintiff's two failed motions for monetary sanctions and attorneys' fees in the WDTX Action and

9  ITC Action) is in Schedule B of the License Agreement. It provides a flat license fee paid in three

10  installments. It also provides for a conditional lump sum payment if Future Link executes a patent

11  license agreement with, or institutes litigation against, certain companies, including Plaintiff.

12        The Complaint (¶¶ 7, 37) quotes an excerpt from an opinion of the Administrative Law Judge

13  ("ALJ") in the ITC Action discussing this provision. However, the Complaint fails to disclose that,

14  immediately after the language quoted, the ALJ stated: "I have found no authority expressly

15  addressing a similar provision. Nor is Realtek's cited authority especially analogous[,]" and that

16  "the license provision played no role in Future Link's decision to file the present [ITC] Complaint."

17  Ex. 9 at 3; RJN at 3.  The ALJ then denied Realtek's motion for sanctions. *Id.* The Complaint also

18  does not disclose that when the issue of the conditional payment provision came before the

19  International Trade Commission itself—which reviews ALJ decisions—the Commission expressly

20  held that "***Realtek did not establish that any portion of the license agreement is unlawful***." Ex. 12

21  at 2 (emphasis added).

22        The Complaint (¶ 37) also quotes an excerpt from an order in the WDTX Action addressing

23  the conditional payment provision. In that order, the WDTX denied Plaintiff's motion for Rule 11

24  monetary sanctions and attorneys' fees, refused to find Plaintiff the "prevailing party," and rejected

25  many of the arguments Plaintiff makes in the Complaint."

26      • "The Court holds that counsel for FLS [Future Link Systems, LLC] did not violate Rule 11 of the Federal Rules of Civil Procedure. Counsel for FLS conducted their own

27         investigation and concluded that the claims had merit."

28      • "[T]he Court finds that an improper purpose was not the but-for cause of FLS's filing the 363 Complaint. Regardless of whether the ███████████████ motivated the

DEFENDANTS' FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273
- 4 -

1    client FLS, that ▮▮▮ was not the but-for cause of FLS's counsel's actions."

2        The WDTX further rejected Plaintiff's argument (recycled in its current Complaint) that

3    Future Link's voluntary dismissal was to avoid an adverse ruling. Instead, the WDTX held that

4    Future Link dismissed the WDTX Action *because it had reached a settlement with* ▮▮▮

5    ▮▮▮ which "covered Realtek's use of ▮▮▮ in the accused products."

6    Ex. 7 at 13; *id.* at 15 ("FLS promptly dismissed the case once it finalized a settlement agreement

7    ▮▮▮ that covered the accused Realtek products. This settlement and dismissal just happened

8    to align with the Court's text order indicating that the Court would grant at least one form of relief

9    for Realtek."). The order further noted that " ▮▮▮ non-frivolous settlement payment shows that

10   another serious party believed the case [*sic* to] be non-frivolous." *Id.* at 12.

11   **III.   THE COMPLAINT IS BARRED BY THE *NOERR-PENNINGTON* DOCTRINE**

12       The Complaint attacks Future Link's First Amendment-protected petitioning activity and

13   Plaintiff has not pleaded facts showing that the underlying suits were a sham. Consequently, the

14   entire Complaint against Future Link is barred by *Noerr-Pennington*. *See Kottle v. Nw. Kidney*

15   *Centers,* 146 F.3d 1056, 1059 (9th Cir. 1998) ("The *Noerr–Pennington* doctrine sweeps broadly and

16   is implicated by both state and federal antitrust claims.").

17       **A.   The Complaint Attacks Protected Activity**

18       Under the *Noerr-Pennington* doctrine, "those who petition government for redress are

19   generally immune from antitrust liability." *Pro. Real Est. Invs. v. Columbia Pictures,* 508 U.S. 49,

20   56 (1993) ("*PRE*"); *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961)

21   ("[N]o violation of the Act can be predicated upon mere attempts to influence the passage or

22   enforcement of laws."). This includes claims based on allegedly anticompetitive agreements to bring

23   litigation against a competitor. *See, e.g., Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 937 (9th Cir. 2006)

24   ("secret funding of a lawsuit brought against a potential competitor to maintain a monopoly was

25   protected under *Noerr–Pennington*") (citing *Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394,

26   397-99 (4th Cir. 2001)); *Liberty Lake Invs. v. Magnuson*, 12 F.3d 155, 156-58 (9th Cir. 1993) (claim

27   that a competitor conspired with others and "prompted and paid for" allegedly "frivolous" litigation

28   was barred by *Noerr-Pennington*).

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No  5:23-cv-02774-PCP

11257273                                  - 5 -

1       Plaintiff's entire Complaint is predicated on allegedly anticompetitive patent litigation. *See,*

2  *e.g.,* Compl. ¶¶ 4-5 ("frivolous lawsuits"); ¶¶ 6-8 ("scheme" that "significantly increase[ed] Future

3  Link's incentives to bring patent cases against MediaTek competitors"); ¶¶ 21-40 (attacking WDTX

4  and ITC Actions); ¶ 42 and ¶¶ 65-69 ("harm" from WDTX and ITC Actions); Count I, ¶ 79 ("forced

5  to needlessly incur litigation costs and fees"); Count II, ¶ 84 ("Future Link intentionally and

6  knowingly asked . . . for injunctions . . ."); Count III, ¶ 87 ("anticompetitive agreement . . . which

7  appears to have motivated IPValue and Future Link to initiate a campaign of meritless litigation");

8  and ¶ 89 ("harmed by having to pay to defend meritless litigation"). Plaintiff's Complaint is thus a

9  direct attack on First Amendment-protected litigation activity, and it is barred by *Noerr-Pennington*

10  unless Plaintiff can demonstrate that Future Link's litigation was merely a "sham" brought solely to

11  harm a competitor. *PRE,* 508 U.S. at 60. The Complaint fails to even allege, let alone demonstrate,

12  that this exception applies.

13      **B.    Plaintiff Has Not Pleaded And Cannot Plead Facts Showing The Sham**

             **Exception Applies**

14

15       In order to fall within the sham exception, "[f]irst, the lawsuit must be objectively baseless

16  in the sense that no reasonable litigant could realistically expect success on the merits." *PRE,* 508

17  U.S. at 60. Second, the lawsuit must be "an attempt to interfere directly with the business

18  relationships of a competitor [] through the use [of] the governmental process—as opposed to the

19  outcome of that process." *Id.*at 60-61, (internal quotation marks and citations omitted). Moreover,

20  "[b]ecause the sham exception to the *Noerr–Pennington* rule may have a chilling effect on those

21  who seek redress in the courts . . . the exception should be applied with caution," *Columbia Pictures*

22  *v. Pro. Real Est. Invs.*, 944 F.2d 1525, 1531 (9th Cir. 1991), and a "plaintiff must plead the sham

23  litigation exception with specificity." *UCP Int'l v. Balsam Brands Inc.,* 420 F. Supp. 3d 966, 981

24  (N.D. Cal. 2019); *see also Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991) ("[W]e

25  apply a heightened pleading standard."). Accordingly, courts "routinely dismiss[] claims that are

26  barred by the *Noerr-Pennington* doctrine." *Entrepreneur Media v. Dermer*, 2019 WL 4187466, at

27  *4 (C.D. Cal. July 22, 2019) (collecting cases).

28

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No  5:23-cv-02774-PCP

11257273                  - 6 -

### 1.   Future Link's Litigations Were Not Objectively Baseless

To plead objective baselessness, it is not enough to allege that a lawsuit failed on the merits; a plaintiff must allege specific facts demonstrating that the suit was "objectively baseless" such that "no reasonable litigant could realistically expect success on the merits." *St Andrews Links Ltd. v. Gilfin Int'l*, No. 18-CV-02131-WHO, 2019 WL 4221725, at *3 (N.D. Cal. Sept. 5, 2019) (quoting *PRE*, 508 U.S. at 60) (granting dismissal). Plaintiff has alleged no such facts here.

Plaintiff's allegations are based on three related suits—two brought in WDTX and one before the ITC. Compl. ¶¶ 26-34. Plaintiff alleges that one of the WDTX Action lawsuits, the "363 Case," suffered from "multiple fatal defects." *Id.* ¶ 29. Plaintiff further asserts that the other WDTX case and the ITC Action, both of which involved the same two patents, were "also meritless," without providing any further explanation. *Id.* ¶ 32.

With respect to the 363 Case, Plaintiff regurgitates its defenses in that action (personal jurisdiction, service of process, and non-infringement), *id.* ¶¶ 29-30, but that is insufficient, as a matter of law, to trigger the sham exception. "Otherwise, a plaintiff could plead its way around the *Noerr-Pennington* doctrine just by reiterating disputed facts." *B&G Foods v. Embry*, 2022 WL 16702141, at *7 (E.D. Cal. Nov. 3, 2022) (granting dismissal). The Complaint does not, and cannot, allege any facts demonstrating that Future Link knew from the outset that it had no reasonable chance of overcoming these defenses or that it failed to undertake a reasonable investigation before suing. *See Or. Nat.*, 944 F.2d at 535 (plaintiff "failed to plead with particularity" suit was a "sham" where it asserted, "without any specifics, that [defendant] knew its position was baseless."); *Fortinet, Inc. v. Forescout Techs.*, No. 20-CV-03343-EMC, 2021 WL 5565836, at *23 (N.D. Cal. Nov. 29, 2021) (granting dismissal where plaintiff "alleges nothing about whether [defendant] undertook a reasonable investigation regarding the infringement."). Plaintiff's allegations with respect to the other two suits are even more threadbare, asserting only that they "were also meritless." Compl. ¶ 32. *Or. Nat.*, 944 F.2d at 533; *see also Formula One Licensing v. Purple Interactive*, No. 00-CV-2222-MMC, 2001 WL 34792530, at *2 (N.D. Cal. Feb. 6, 2001) (granting dismissal where the pleadings alleged in conclusory fashion that the action was "meritless").

The Complaint contends that Future Link's voluntary dismissal of the WDTX Action

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S NOTICE OF MOTION & MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273
- 7 -

1  "demonstrated the deficiencies" of its underlying complaints. Compl. ¶ 7. However, the WDTX
2  rejected this assertion, holding that Future Link's voluntary dismissal was the result of a settlement
3  that "covered Realtek's use of ███████ in the accused products," and further noting that the
4  settlement payment to Future Link showed that Future Link's suit against Plaintiff was not frivolous.
5  Section II, *supra,* and Section III.B.3, *infra.* Moreover, the mere fact that Future Link voluntarily
6  dismissed does not show that the suits were objectively baseless. *See Q-Pharma, Inc. v. Andrew*
7  *Jergens Co.,* 360 F.3d 1295, 1304 (Fed. Cir. 2004) ("[W]e fail to see how a changed legal theory
8  that leads to the voluntary dismissal of a lawsuit can amount to bad faith litigation."). Indeed, the
9  Supreme Court has warned against inferring that a suit was a "sham" simply because it was
10 "ultimately unsuccessful." *PRE*, 508 U.S. at 60 n.5 (The "court must remember that '[e]ven when
11 the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely
12 reasonable ground for bringing suit.'"). Of course, as the WDTX recognized, Future Link's
13 infringement lawsuits were not unsuccessful because they led to a settlement agreement that
14 included a "non-frivolous settlement payment." Ex. 7 at 12-13.

15      Plaintiff's assertion that Future Link has "a history of asserting invalid patents, then
16 canceling claims or settling cases to avoid an adjudication of invalidity," Compl. ¶ 33, similarly
17 fails. In addition to being conclusory, it fails to show objective baselessness. "[C]ases often involve
18 claims of varying degrees of merit, many of which are weeded out pre-trial, and it would be
19 impractical to run a litigation system that made those kinds of claims subject to antitrust suits."
20 *Avaya Inc. v. Telecom Labs,* 838 F.3d 354, 414 (3d Cir. 2016).

21      Plaintiff's assertion that one of the patents-in-suit asserted against it was eventually found
22 invalid by the Patent Trial and Appeal Board (Compl. ¶¶ 33-34) fails for the same reason. "Given
23 the presumption of patent validity and the burden on the patent challenger to prove invalidity by
24 clear and convincing evidence, it will be a rare case in which a patentee's assertion of its patent in
25 the face of a claim of invalidity will be so unreasonable as to support a claim that the patentee has
26 engaged in sham litigation." *Tyco Healthcare v. Mut. Pharm.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014).
27 Courts repeatedly have held that a finding of invalidity or non-infringement does not warrant an
28 inference that the suit was a sham. *See Apple Inc. v. Wi-LAN Inc.*, No. C 14-2838, 2014 WL

4477362, at *7 (N.D. Cal. Sept. 11, 2014) (granting dismissal where plaintiff "merely allege[d] that [defendant] ha[d] been unsuccessful in two prior patent suits"); *Evolve Techs. v. Coil Winding Specialist*, 2019 WL 1383272, at *5 (S.D. Cal. Mar. 27, 2019) ("[E]ven if the Court were to find the patents invalid or not infringed as a matter of law, this would not constitute bad faith[.]"). As for the allegation that Future Link had "actual or constructive knowledge that the patents were invalid," Compl. ¶ 33, that conclusory assertion does not satisfy *Iqbal/Twombly*, much less the heightened pleading requirement to show sham litigation. *Or. Nat.*, 944 F.2d at 535 (affirming dismissal where plaintiff alleged "without any specifics, that [defendant] knew its position was baseless.").

In short, Plaintiff has failed to meet its heavy burden of showing objective baselessness. On this basis alone, all of Plaintiff's claims are barred by the *Noerr-Pennington* doctrine.

### 2. Plaintiff Has Not Pleaded Facts Showing Intent To Interfere

Because Plaintiff has not met, and cannot, meet its burden of showing objective baselessness, the Court need not reach the second requirement of the sham exception, namely that Future Link was "attempt[ing] to interfere directly with the business relationships of a competitor" rather than achieve a "favorable outcome." *PRE*, 508 U.S. at 60-61. "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* Nevertheless, the Complaint fails to adequately allege the "subjective motivation" prong as well.

The Complaint asserts that Future Link was motivated by an "improper litigation bounty agreement" with MediaTek to sue Realtek. Compl. ¶ 38. But even if this were true, it would not show that Future Link was using the litigation merely as an "anticompetitive weapon." *PRE*, 508 U.S. at 60. The *Noerr-Pennington* doctrine protects the right of a company to fund and incentivize lawsuits against their competitors. *See Sosa*, 437 F.3d at 937; *Liberty Lake*, 12 F.3d at 156-58. The sham exception is meant to capture instances in which a petitioner is "not seeking official action by a governmental body" and as a result, its "activities complained of are '***nothing more***' than an attempt to interfere with the business relationships of a competitor." *See Franchise Realty v. San Francisco Local*, 542 F.2d 1076, 1081 (9th Cir. 1976) (emphasis added). It is limited to situations in which the party suing has used the "governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *PRE*, 508 U.S. at 61. The Complaint alleges that Future

1  Link is a PAE whose primary goal is to "exploit" its patents through litigation that will "potentially
2  end in the payment of settlements or damages." Compl. ¶ 4. Moreover, the Complaint expressly
3  alleges that Future Link sought to achieve "injunctions and an exclusion order . . . that shut Realtek
4  out of the TV Chip market." *Id.* ¶¶ 65, 67. These allegations are judicial admissions that Future Link
5  sought to use the "outcome of the judicial process" to achieve its alleged goals, which, as a matter
6  of law, means its activities cannot constitute sham litigation. *See, e.g., PRE,* 508 U.S. at 60. *Calvary*
7  *Chapel San Jose v. Cody*, No. 20-cv-03794, 2022 WL 827116, at *11-12 (N.D. Cal. March 3, 2022)
8  (dismissing without leave to amend where complaint alleged that the outcome of the litigation
9  process was used to achieve the allegedly anticompetitive goal).

10     Moreover, the WDTX concluded that the █████████████████ "was not the but-
11  for cause of FLS's counsel filing the 363 Complaint . . .. [A]lthough the contract *allowed* for a
12  frivolous case, FLS did not choose to file a frivolous case. FLS filed a plausible patent infringement
13  case …" Ex. 7 at 12.[2]   The ALJ in the ITC Action similarly concluded that Future Link had
14  "demonstrate[ed] that the present investigation did not directly result from the █████████-Future
15  Link license agreement's objectionable provision. . . . Such evidence *decisively undermines* . . .
16  Realtek's basis for sanctions arising from that license." Ex. 10 at 1-2 (emphasis added). Thus,
17  Plaintiff cannot meet its burden of showing the "subjective motivation" prong of the sham litigation
18  exception to *Noerr-Pennington* applies either.

19          **3.    Plaintiff Is Estopped From Asserting That The Sham Exception Applies**

20     Plaintiff made the same assertions it is making here in a Rule 11 motion in WDTX, and that
21  court rejected them (as did the ALJ and the ITC). This is an independent basis for dismissing the
22  Complaint on *Noerr-Pennington* grounds. "Issue preclusion, or collateral estoppel, bars successive
23  litigation of an issue of fact or law actually litigated and resolved in a valid court determination
24  essential to the prior judgment, even if the issue recurs in the context of a different claim." *Howard*
25  *v. City of Coos Bay*, 871 F.3d 1032, 1040–41 (9th Cir. 2017) (internal quotation marks omitted). It

26

27  [2] Future Link disputes that the MediaTek license should be read to require payment for
   bringing "frivolous" litigation given that a contract should be interpreted to "make it lawful" when
28  possible. *Sampsell v. Lawrence Warehouse Co.*, 167 F.2d 885, 886 (9th Cir. 1948). But the Court
   need not decide this issue given the numerous other failings of Plaintiff's Complaint.

applies when "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012). Each of these requirements is met here.

The issues are the same. Under Rule 11, Plaintiff had to show that "an objectively reasonable attorney would not believe, based on some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device." Ex. 7 at 6 (quoting *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002)); RJN at 3.[3]  This is the same standard under the objective prong of the *Noerr-Pennington's* sham exception, which applies when "no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60. Indeed, the *PRE* Court held that a suit was not a sham because it satisfied Rule 11. *Id.* at 65; *see also Q-Pharma*, 360 F.3d at 1305 ("For many of the reasons discussed above in our analysis of the district court's denial of Rule 11 sanctions, we agree with Q–Pharma that its claim of infringement was not 'so baseless that no reasonable litigant could realistically expect to secure favorable relief.'").

The remaining three elements for preclusion are also satisfied. The reasonableness of Future Link's infringement suits was "actually litigated" and "decided" by the WDTX (as well as the ITC), and Plaintiff had "a full and fair opportunity" to litigate the issue.[4]  Moreover, the court (as well as the ALJ) had to decide whether Future Link's suits were reasonable in order to resolve whether Future Link had violated Rule 11. *Antonious*, 275 F.3d at 1066.

Plaintiff repeatedly raised its objective baselessness arguments in WDTX (in a motion to dismiss, motion for sanctions, motion for attorneys' fees, and motion for reconsideration), and the court consistently held that Future Link's (referred to as "FLS") patent suits were not objectively baseless. RJN at 2-3. For example, it held that: "FLS's counsel reasonably believed that the accused products might infringe," Ex. 7 at 12; "FLS did not choose to file a frivolous case. FLS filed a plausible patent infringement case based on what it believed to be an implemented, optional feature

---

[3] The ITC standard tracks Rule 11. *Compare* 19 CFR § 210.4(c) *with* Rule 11(b).

[4] Indeed, the Complaint in this action reads like a regurgitation of Plaintiff's arguments for Rule 11 sanctions and attorneys' fees. *Compare* Compl. ¶¶ 29-32 *with* Ex.7 at 10-12, 14-15, 17-18.

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                                      - 11 -

of a standard." *Id.* "[N]othing shows that FLS persisted in litigation or vexatiously multiplied the proceedings." *Id.* at 14-15. "[FLS] found a reasonable basis for filing this lawsuit and did not actually file a meritless case," *id.* at 16, and its "infringement allegations" were "plausible and not objectively unreasonable." *Id.* at 17. The ALJ's decision denying Plaintiff's sanctions motion at the ITC is in accord. Ex. 9 at 1-2; RJN at 3.

The WDTX also held that none of the supposed "defects" that Plaintiff identifies in its Complaint supported a finding that Future Link's suits were objectively baseless. For instance, the Complaint alleges that Future Link "failed to plausibly allege infringement" and "relied on optional features without any showing that such features were actually included in the accused products." Compl. ¶ 29. The court, however, concluded that Future Link conducted a sufficient "pre-suit investigation" and "[a]s a result of that investigation, FLS's counsel reasonably believed that the accused products might infringe because the optional feature was turned on." Ex. 7 at 12. Plaintiff also alleges that "there was no personal jurisdiction" and "the complaint was not properly served[,]" Compl. ¶ 29, but the court held that "FLS did not know it filed a pleading with a jurisdictional and procedural problem" at the time the cases were filed. Ex. 7 at 18.

The WDTX similarly rejected Plaintiff's theory that Future Link's voluntary dismissal somehow demonstrated that its suits were objectively baseless. It held that Future Link dismissed the suits because it had reached a confidential settlement with ███████████████████, which "covered Realtek's use of ██████ in the accused products." Ex. 7 at 13. The WDTX further noted that, far from showing that Future Link's suits were a sham, "██████ non-frivolous settlement payment shows that another serious party believed the case [*sic* to] be non-frivolous." Ex. 7 at 12; *see also Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) ("The fact that . . . litigation settled suggests that the original suit was not objectively baseless.").

Even if they are not issue preclusive, the WDTX's rulings and the ALJ and ITC decisions discussed herein (and relied on by the Complaint) are at the very least highly probative of the multiple failings of the Complaint's conclusory assertions and unreasonable inferences, and ultimately its failure to plead a sham exception to the *Noerr-Pennington* doctrine. *See Tessera Inc.*

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                                    - 12 -

1    *v. Toshiba Corporation,* No. 15-CV-02543-BLF, 2016 WL 11894761, at *4 n.6 (N.D. Cal. Nov. 16,

2    2016) ("Although the Court finds that collateral estoppel does not apply to preclude relitigation of

3    the issue, it may consider or even rely upon the prior decision."); *Juniper Networks v. Swarm Techs.*,

4    No. 3:20-cv-03137-JD, 2022 WL 3031211, at *1 (N.D. Cal. Aug. 1, 2022) (declining to re-litigate

5    issue because "[a] lateral appeal to a sister district court is not appropriate, or consistent with the

6    fair and efficient administration of justice"); *UCP Int'l*, 420 F. Supp. 3d at 981 (claim barred by

7    *Noerr-Pennington* where "past proceedings or judicially noticeable facts make it clear that the sham

8    litigation exception does not apply").

9    **IV.    PLAINTIFF'S SHERMAN ACT § 2 CLAIM FAILS AS A MATTER OF LAW**

10           Plaintiff's antitrust claim against Future Link is an alleged conspiracy to monopolize under

11   Sherman Act Section 2. In addition to being barred by *Noerr-Pennington,* it fails as a matter of law

12   for three independent reasons: (A) Plaintiff does not and cannot allege that Future Link is a

13   competitor in the market; (B) there are no alleged facts showing a conspiracy or specific intent to

14   monopolize; and (C) there are no alleged facts showing harm to competition.

15           **A.    Plaintiff Does Not Allege That Future Link Is A Competitor In The Market**

16           The Complaint does not (and cannot) allege that Future Link is a competitor in the TV Chips

17   market. Thus, Future Link cannot conspire to monopolize the TV Chips market. *Mercy-Peninsula*

18   *Ambulance v. San Mateo Cnty.*, 791 F.2d 755, 759 (9th Cir. 1986) (affirming dismissal of Section 2

19   conspiracy case). In *Mercy,* San Mateo County was alleged to have conspired with a health services

20   provider to monopolize a local health services market in violation of Section 2. *Id.* at 756; *see also*

21   *Mercy-Peninsula Ambulance v. San Mateo Cnty.*, 592 F. Supp. 956, 960-61 (N.D. Cal. 1984). The

22   Ninth Circuit affirmed the dismissal of the Section 2 claim because "the county is not a competitor

23   in the health care provision market[.]" *Mercy*, 791 F.2d at 759. Indeed, "[i]t is axiomatic in antitrust

24   law that a defendant may not be found liable under the Sherman Act for monopolizing or attempting

25   or conspiring to monopolize a market unless that defendant is a competitor in the relevant market[.]"

26   *Rheumatology Diagnostics v. Aetna, Inc.*, No. 12-CV-05847, 2013 WL 5694452 at *16 (N.D. Cal.

27   Oct. 18, 2013) (granting motion to dismiss Section 2 conspiracy claim). This alone compels

28   dismissal of the Section 2 conspiracy claim against Future Link.

**B.    The Complaint Fails To Plead A Conspiracy And Specific Intent To Monopolize**

To state a claim for conspiracy to monopolize, Plaintiff must plead non-conclusory facts plausibly showing "the existence of a combination or conspiracy to monopolize" and that Future Link had "*the specific intent to monopolize*" the TV Chips market. *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) (emphasis added); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (complaint must allege "facts," not just "labels and conclusions"). Plaintiff has not met this burden.

The crux of the Complaint is that Future Link and MediaTek entered into an allegedly "improper bounty conspiracy" whereby Future Link would receive additional compensation for suing Realtek. Compl. ¶ 36. But the existence of an agreement to do something allegedly "improper"—does not constitute a Section 2 conspiracy. Rather, a Section 2 claim must allege that the defendant specifically agreed and intended *to monopolize* the relevant market. *NorthBay Healthcare v. Kaiser Found.*, No. 17-CV-05005, 2017 WL 6059299, at *5 (N.D. Cal. Dec. 7, 2017) ("NorthBay . . . has not expressly alleged the existence of an agreement between the defendants to monopolize.") (dismissing Section 2 conspiracy claim).

The Complaint alleges no facts plausibly showing that Future Link had any such specific intent. Instead, the Complaint's conspiracy assertions are wholly conclusory. Compl. ¶ 88 ("MediaTek, IPValue, and Future Link engaged in the conspiracy willfully, knowingly, and with the specific intent for MediaTek to gain a monopoly over TV Chips so as to collect monopoly profits for Defendants by ensuring MediaTek could price TV Chips above the competitive level."). These conclusory allegations fail as a matter of law. *See, e.g., Sumotext Corp. v. Zoove, Inc.*, No. 20-17245, 2021 WL 4988024, at *1 (9th Cir. Oct. 27, 2021) (affirming dismissal of Section 2 conspiracy claim where complaint "baldly allege[d] that [defendant] 'joined, furthered, [and] profited from a Conspiracy to monopolize the [relevant] market . . . [b]ut the complaint [was] 'devoid of further factual enhancement'"); *Stanislaus Food Prod. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1079 (E.D. Cal. 2011) (assertion that defendant had "entered into [the allegedly anticompetitive agreement] with the specific intent to eliminate competition and monopolize the Relevant Market" was "conclusory") (granting Rule 12 motion to dismiss Section 2 conspiracy claim).

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                                   - 14 -

1      Once its conclusory allegations are set aside, as they must be, Plaintiff's only other allegation

2  in support of the purported conspiracy to monopolize is its citation to the conditional payment

3  provision in the license agreement between Future Link and MediaTek discussed in Section II,

4  *supra*. That provision does not suggest that Future Link had the specific intent to monopolize

5  anything, or that it intended to assist MediaTek in doing so. ████████████████████

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████

8  It thus, at most shows that Future Link was motivated to maximize its revenues through licensing

9  or, if necessary due to holdout behavior, litigation, not that it intended to help MediaTek monopolize

10  the TV Chips market. *See NorthBay*, 2017 WL 6059299, at *8 (granting Rule 12 motion to dismiss

11  Section 2 conspiracy claim where "[a]t most, [plaintiff] allege[d] that the defendants were acting

12  with the intent of increasing their revenues and/or reducing their costs").

13      Indeed, the Complaint itself alleges that Future Link's "business objectives [are to]

14  monetize[e] patents through serial licensing and litigation." Compl. ¶ 16. As the Ninth Circuit has

15  held, "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the

16  defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the

17  antitrust laws." *Kendall v. Visa U.S.A.*, 518 F.3d 1042, 1049 (9th Cir. 2008) (citing *Twombly*, 550

18  U.S. at 557 n.5); *NorthBay*, 2017 WL 6059299, at *8 (acting with the "intent of increasing []

19  revenues" does not constitute intent to monopolize). Indeed, as the WDTX found, *see supra* Sections

20  II and IIIB(3), Future Link dismissed the WDTX Action because Future Link granted a license to

21  the patents-in-suit to Plaintiff's supplier, which in turn gave Plaintiff (as well as others) the right to

22  exploit the patents-in-suit. Granting licenses to other competitors in the same alleged market is

23  entirely inconsistent with a specific intent to monopolize.

24      Nor is it uncommon or improper for licensees to include provisions incentivizing or even

25  requiring the licensor to sue the licensee's competitors to ensure that those competitors do not gain

26  an unfair advantage in the market by freely infringing. As the Ninth Circuit has recognized, "there

27  is nothing suspicious about the requirement that [the licensor] bring suit against alleged infringers."

28  *See Cataphote Corp. v. DeSoto Chem. Coatings,* 450 F.2d 769, 774 (9th Cir. 1971). Clauses such

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273      - 15 -

as this, which can take many different forms, are sometimes referred to as "substantial unlicensed sales" clauses. *See Kraly v. Nat'l Distillers*, 502 F.2d 1366, 1372 (7th Cir. 1974). In any event, the Court need not decide whether the conditional payment provision is somehow "improper" as alleged, because it is insufficient to plead Future Link's specific intent to monopolize.

Moreover, "it is not enough to show that [Future Link] merely agreed to go along" with an alleged scheme to monopolize the TV Chips market. *Rebel Oil v. Atl. Richfield*, 51 F.3d 1421, 1437 n.8 (9th Cir. 1995). Rather, Plaintiff must plead non-conclusory facts showing that ***Future Link itself*** specifically intended to monopolize the TV Chips market. *NorthBay*, 2017 WL 6059299, at *8 ("If a plaintiff brings a conspiracy claim against multiple defendants, it must plead that each such defendant had a specific intent to monopolize."). In addition to all of the logical failings of the purported "conspiracy to monopolize" noted by MediaTek in its motion to dismiss,[5] the Complaint contains no allegations, let alone any explanation, as to why ***Future Link*** would supposedly want MediaTek (or anyone for that matter) to gain a monopoly in the TV Chips market. That would just mean Future Link had no one else to license in that market after having provided a flat-fee license to MediaTek. *See Truck-Rail Handling v. Burlington N.*, 244 F. App'x 130, 132 (9th Cir. 2007) (It is "simply not reasonable to infer that [defendant] would conspire to provide [third parties] with monopoly power . . . when the logical result of such a monopoly would be" detrimental to the defendant); *Dydzak v. U.S.*, No. 17-CV-04360-EMC, 2017 WL 4922450, at *4 (N.D. Cal. Oct. 31, 2017) (granting dismissal of conspiracy claim and noting that "[c]ourts should not 'permit factfinders to infer conspiracies when such inferences are implausible'") (quoting *Stanislau*s, 803 F.3d at 1089).

### C.    The Complaint Fails To Plead Cognizable Antitrust Injury

The Section 2 claim fails for yet another independent reason: it does not allege any non-conclusory facts showing harm to competition, an essential requirement to showing antitrust injury.

"It is axiomatic that the antitrust laws were passed for 'the protection of *competition*, not

---

[5] This includes but is not limited to the lack of any ability for MediaTek to block competitors from entering the market or expanding their output, or to prevent Future Link from licensing others in the industry beyond MediaTek (indeed, the conditional payment provision was triggered by either litigation *or licensing*, which is exactly what Future Link did).

1  *competitors'.*" *Brooke Grp. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 224 (1993)

2  (emphasis in original). An alleged agreement to harm a competitor thus does "not amount to a

3  conspiracy to monopolize" unless the alleged "agreement[] harmed the competitive process."

4  *NYNEX Corp. v. Discon, Inc*., 525 U.S. 128, 139 (1998); *see also Brooke Grp.*, 509 U.S. at 225

5  ("Even an act of pure malice by one business competitor against another does not, without more,

6  state a claim under the federal antitrust laws."). Harm to competition consists of "higher prices,

7  lower output, or decreased quality in the products within a defined market." *Stearns v. Select*

8  *Comfort Retail Corp*., No. 08-2746 JF, 2009 WL 1635931, at *13 (N.D. Cal. June 5, 2009) (granting

9  dismissal).**6** To survive a motion to dismiss, a complaint must allege facts showing that such harms

10  have occurred. *Id.*; *see also GSI Tech. v. United Memories, Inc.,* No. 5:13-CV-01081-PSG, 2014

11  WL 1572358, at *3 (N.D. Cal. Apr. 18, 2014) ("GSI also has not pled any facts, such as reduced

12  output, rising prices or deteriorating quality, to demonstrate any other detrimental impact on the

13  market[.]") (granting dismissal).

14       Plaintiff has not alleged any ***facts*** of higher prices, lower output, or decreased quality in the

15  TV Chips market. It just makes the conclusory assertion that "Defendants' conspiracy harmed not

16  only Realtek, but also competition in the market for TV Chips," Compl. ¶ 71. That "naked

17  assertion[]" is insufficient. *Synopsys, Inc. v. Atoptech, Inc*., No. C 13-2965 MMC, 2015 WL

18  4719048, at *6 (N.D. Cal. Aug. 7, 2015) (quoting *Iqbal*, 556 U.S. at 678) (granting dismissal); *In re*

19  *Webkinz Antitrust Litig*., 695 F. Supp. 2d 987, 997 (N.D. Cal. 2010) (granting dismissal where

20  "Plaintiffs merely state[d] that the conduct by [defendant] caused harm to competition generally,

21  but [did] not allege specific facts supporting such conclusory legal claims.").

22       The only harms Plaintiff alleges are, at most, harms to itself. For instance, Plaintiff claims

23  that it has been "harmed by having to pay to defend meritless litigation, and by lost sales and the

24  harm to its business due to the uncertainty that such meritless litigation nevertheless creates."

25  Compl. ¶ 89. But "[a] claim of injury in the form of attorneys' fees in defending against a patent

26

27  _____

28       **6** Even higher prices are insufficient to show antitrust injury without a corresponding
reduction in output that caused the price increase. *In re Ebay Seller Antitrust Litig*., No. C 07-01882
JF (RS), 2010 WL 760433, at *5 (N.D. Cal. Mar. 4, 2010), *aff'd* 433 F. App'x 504 (9th Cir. 2011).

1    infringement suit is not an injury to 'competition' . . . but is rather a purely individual economic

2    injury to [the plaintiff] that has no effect on competition in the relevant market." *Chip-Mender, Inc.*

3    *v. Sherwin-Williams Co.*, No. C 05-3465 PJH, 2006 WL 13058, at *5 (N.D. Cal. Jan. 3, 2006)

4    (granting dismissal); *see also Huawei Techs. v. Samsung Elecs.*, 340 F. Supp. 3d 934, 956 (N.D.

5    Cal. 2018) ("The only 'injury' to Samsung disclosed in Dr. Hausman's Report is Samsung's

6    litigation costs, which Dr. Hausman conceded were 'harms to Samsung,' not 'harms to

7    consumers.'") (granting dismissal); *Girafa.com, Inc. v. Alexa Internet, Inc.*, No. C-08-02745 RMW,

8    2008 WL 4500858, at *3 (N.D. Cal. Oct. 6, 2008) (while "baseless litigation can form the basis for

9    an unfair competition claim," plaintiff must also allege "some proof of harm to competition.")

10   (granting dismissal).

11        Similarly, vague references to "lost sales" and "harm to [] business" (Compl. ¶ 89) are

12   conclusions, not pleaded facts. *NorthBay Healthcare Group v. Kaiser Found.*, 305 F. Supp. 3d 1065,

13   1074 (N.D. Cal. 2018). And even if treated as facts, they still would not constitute harm to

14   competition as opposed to harm to one competitor. *See Paladin*, 328 F.3d at 1158 ("Where the

15   defendant's conduct harms the plaintiff without adversely affecting competition generally, there is

16   no antitrust injury."); *Cal. Comput. Products v. Int'l Business Machines*, 613 F.2d 727, 732 (9th Cir.

17   1979) ("[T]he plaintiff must demonstrate that the defendant's conduct was intended to or did have

18   some anticompetitive effect beyond his own loss of business or the market's loss of a competitor.");

19   *NorthBay*, 305 F. Supp. 3d at 1073 ("[A] decrease in one competitor's market share . . . affects

20   competitors, not competition.").

21        In addition, the Complaint never explains how Plaintiff's costs from three patent

22   infringement suits (two voluntarily dismissed at the pleading stage) could have possibly impacted

23   the entire market for TV Chips. Plaintiff does not allege that consumers in this market now face

24   higher prices, reduced quantity, or decreased product quality as a result of these suits. *Prime*

25   *Healthcare v. Serv. Emps. Int'l*, 642 F. App'x 665, 667 (9th Cir. 2016) (affirming Rule 12 dismissal

26   of Section 2 conspiracy claim where plaintiff failed to allege "that the Defendants' actions actually

27   caused health care consumers to face higher prices or a reduction in quality of care, quantity of

28   services, or overall choice of providers."). Nor does Plaintiff allege that MediaTek has been able to

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                              - 18 -

increase its market share in the over four years since the time of the alleged conspiracy. *Id.* ("Prime never alleges that any competitors have exited the market or reduced their production because of the Defendants' actions."); *see also Synopsys*, 2015 WL 4719048, at *6 (finding no harm to competition where plaintiff had "not alleged any facts showing the state of the market before the challenged" conduct).

Plaintiff's other alleged "harms" fare no better. Plaintiff claims that MediaTek used Future Link's patent suits to "coerce at least one [unidentified] customer" to stop purchasing products from Plaintiff. Compl. ¶¶ 8, 42. But "[t]he Court cannot infer injury to competition solely from certain competitors' loss of customers." *Datagate, Inc. v. Hewlett-Packard,* 672 F. Supp. 1288, 1291 (N.D. Cal. 1987); *see also Sayre v. Google, Inc.*, No. C 19-02247, 2019 WL 6036703, at *2 (N.D. Cal. Nov. 14, 2019) (loss of access to "cell phone users in the global market" did not constitute "injury to the market") (granting dismissal); *Covad Commc'ns v. Bell Atl. Corp.*, 398 F.3d 666, 674 (D.C. Cir. 2005) ("That [plaintiff] might have lost customers" does not demonstrate harm to competition.) (affirming dismissal). Plaintiff also alleges that "MediaTek ***attempted*** to persuade a large TV brand that includes Realtek TV Chips in their products to stop designing Realtek products into their TVs[.]" Compl. ¶ 69 (emphasis added). However, "injury that has not yet occurred . . . is generally insufficient to give rise" to a cognizable antitrust injury, *City of San Jose v. Office of Comm'r*, No. C-13-02787 RMW, 2013 WL 5609346, at *11 (N.D. Cal. Oct. 11, 2013), *aff'd*, 776 F.3d 686 (9th Cir. 2015). And even if it occurred in the future, it would be harm solely to Plaintiff, not competition. *Sayre*, 2019 WL 6036703, at *2; *Datagate, Inc.*, 672 F. Supp. at 1291; *Covad Commc'ns Co.*, 398 F.3d at 674. In short, Plaintiff's failure to plead harm to competition is yet another reason the Section 2 claim fails as a matter of law.

## V.   PLAINTIFF'S STATE LAW CLAIMS SHOULD BE STRICKEN OR DISMISSED

In addition to being barred by *Noerr-Pennington*, Plaintiff's state law claims should be stricken pursuant to California's anti-SLAPP statute, or, in the alternative, dismissed for failure to state a claim. "A defendant in federal court may bring an anti-SLAPP motion with respect to California state law claims[.]" *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 810 (N.D. Cal. 2019). The anti-SLAPP analysis proceeds in two steps:

1
2
3

> At step one, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from the protected activity . . .. At step two, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated.

4    *Id*. (internal quotation marks and citations omitted). Both prongs are satisfied here.

5         **A.    Plaintiff's State Law Claims Arise From Protected Activity**

6         Plaintiff's state law claims are predicated on Future Link's patent lawsuits, which qualify as

7    protected activity under California's anti-SLAPP statute. *Soukup v. Law Offices*, 39 Cal. 4th 260,

8    291 (2006) ("The filing of lawsuits is an aspect of the First Amendment right of petition"); *see also*

9    *United Tactical Sys. v. Real Action Paintball, Inc.,* 143 F. Supp. 3d 982, 998 (N.D. Cal. 2015)

10   (protected activity "includes communicative conduct such as the filing, funding, and prosecution of

11   a civil action") (internal quotation marks omitted).

12        Plaintiff's Section 17200 claim is premised on Future Link allegedly "fil[ing] a series of

13   meritless patent infringement actions against . . . Realtek." Compl. ¶ 78. Moreover, the only injury

14   that Plaintiff alleges is "needlessly incur[ring] litigation costs and fees." *Id.* ¶ 79. This alone satisfies

15   step one. *See Minichino v. First Cal. Realty*, No. C-11-5185 EMC, 2012 WL 4364611, at *2 (N.D.

16   Cal. Sept. 24, 2012) (step one automatically satisfied where "complaint stem[med] from the alleged

17   harm caused by Defendant's lawsuit"). Plaintiff's interference claim is likewise premised on Future

18   Link's alleged "serial litigation . . . to induce a breach or disruption of Realtek's relationships and

19   prospective relationships." *Id*. ¶ 84. Indeed, Plaintiff's alleged "interference" consists of Future

20   Link's requests "for injunctions prohibiting importation of Realtek TV Chips and devices." *Id.*

21        Finally, Plaintiff's state law claims necessarily arise from protected activity because one of

22   the remedies Plaintiff seeks is "[a] permanent injunction enjoining Future Link and IPValue from

23   enforcing any of the patents in their portfolios against Realtek." Compl. ¶ 80, Prayer at (L). The

24   California Supreme Court has held that step one is satisfied where the plaintiff seeks "injunctive

25   relief that expressly would restrict [defendant's] exercise of petition rights," including the filing of

26   lawsuits. *Equilon Enters. v. Consumer Cause, Inc*., 29 Cal. 4th 53, 67 n.4 (2002).

27        **B.    Plaintiff's State Law Claims Fail As A Matter Of Law**

28        For two independent reasons, Plaintiff cannot carry its burden of demonstrating the

1   sufficiency of its claims (which is the same standard as Rule 12(b)(6)). First, the claims are barred

2   by the litigation privilege. *Feldman v. 1100 Park Lane Assocs.*, 160 Cal. App. 4th 1467, 1491 (2008)

3   (plaintiff "failed to establish a probability of success on the merits" because defendant's actions

4   "were shielded by the litigation privilege."). Second, they fail to state a claim for relief.

**1.    Plaintiff's State Law Claims Are Barred By The Litigation Privilege**

6          California's litigation privilege provides that a "publication or broadcast" made as part of a

7   "judicial proceeding" cannot give rise to liability. California Civil Code § 47(b). The litigation

8   privilege is even broader than the *Noerr-Pennington* doctrine, *Kane v. DeLong*, No. C-12-5437,

9   2013 WL 1149801, at *12 n.5 (N.D. Cal. Mar. 19, 2013), and unlike the First Amendment, the

10  privilege provides a "mantle of an ***absolute*** immunity." *Rothman v. Jackson*, 49 Cal. App. 4th 1134,

11  1149 (1996) (emphasis added). There is no "sham" exception to the privilege, *Kane*, 2013 WL

12  1149801, at *12 n.5, and even pleadings alleged to be "fraudulent, perjurious, unethical, or even

13  illegal," are privileged. *Id.* at 12 (quoting *Kashian v. Harriman*, 98 Cal. App. 4th 892, 917 (2002)).

14  The "***only*** exception" is a claim for malicious prosecution, which the Complaint does not, indeed

15  cannot, plead. *Silberg v. Anderson*, 50 Cal. 3d 205, 216 (1990) (emphasis added). Furthermore,

16  "[a]ny doubt about whether the privilege applies is resolved in favor of applying it." *Wang v. Heck,*

17  203 Cal. App. 4th 677, 686 (2012) (internal quotation marks omitted).

18         Both of Plaintiff's state law claims are predicated on Future Link's infringement suits, and

19  "[n]o communication . . . is more clearly protected by the litigation privilege than the filing of a

20  legal action." *Kane*, 2013 WL 1149801, at *11 (dismissing UCL claims) (quoting *Action Apartment*

21  *v. City of Santa Monica*, 41 Cal. 4th 1232, 1249 (2007)); *see also Arthur J. Gallagher v. Lang*, No.

22  C 14-0909, 2014 WL 6816644, at *2 n.2 (N.D. Cal. Dec. 3, 2014) ("[T]he litigation privilege

23  certainly bars a cause of action based on the filing of a lawsuit."). Consequently, the litigation

24  privilege bars Plaintiff's UCL and tortious interference claims. *Kane*, 2013 WL 1149801, at *12

25  ("[T]he litigation privilege serves to prohibit UCL action to the extent it is based on Plaintiffs' filing

26  their infringement action, even if such action is unethical or even illegal."); *Finato v. Fink*, 803 F.

27  App'x 84, 89 (9th Cir. 2020) (the "litigation privilege barred Finato's interference with contractual

28  relations claim").

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                          - 21 -

1            **2.    Plaintiff's Section 17200 Claim Fails To State A Claim**

2            Even setting the litigation privilege aside, Plaintiff's Section 17200 claim fails as a matter

3    of law for multiple additional reasons.

4            First, the claim is premised on the allegation that Future Link's conduct "violates federal

5    antitrust law" and "or violates the policy or spirit of one of those laws[.]" Compl. ¶¶ 76, 78. Because

6    Plaintiff's antitrust claim fails, its "UCL claim fails as well." *See Mitchell v. Reg'l Serv.,* No. C 13-

7    04212, 2014 WL 12607809, at *5 (N.D. Cal. Apr. 23, 2014); *see also O'Donnell v. Bank of Am.*,

8    504 F. App'x 566, 568 (9th Cir. 2013) (FTC Act "doesn't create a private right of action, . . . and

9    plaintiffs can't use [the UCL] to engineer one"); *City of San Jose v. Office of Com'r*, 776 F.3d 686,

10   691 (9th Cir. 2015) ("[T]he determination that [] conduct is not an unreasonable restraint of trade

11   necessarily implies that the conduct is not 'unfair' toward consumers.") (citations omitted);

12   *Facebook, Inc. v. BrandTotal Ltd.*, No. 20-CV-07182-JCS, 2021 WL 662168, at *10 (N.D. Cal. Feb.

13   19, 2021) (failure to allege "injury to competition" was fatal to 17200 claim based on alleged

14   "unfair" competition by competitor). As for the UCL claim's passing reference to patent

15   "aggregation," it, too, fails as a matter of law. *See Intel Corp. v. Fortress Inv. Grp.*, 2022 WL

16   16756365, at *2 (9th Cir. Nov. 8, 2022) (affirming dismissal where complaint contained no

17   explanation of how an "allegedly aggregated patent portfolio prevented [plaintiff] from making any

18   product or practicing any technology").

19           Second, the allegation that Future Link's conduct "was also fraudulent" (Compl. ¶ 78) is

20   unavailing. Plaintiff alleges that Future Link made "false claims regarding effecting service on

21   Realtek." *Id.* However, the WDTX rejected this assertion and held that Future Link "did not know

22   it filed a pleading with a jurisdictional and procedural problem[.]" Ex. 7 at 18; RJN at 3. Plaintiff

23   cannot "recast disputed issues from the underlying litigation as 'misrepresentations' by the other

24   party." *Or. Nat.*, 944 F.2d at 536. Nor does the Complaint allege fraud with the required particularity

25   under Rule 9(b). It does not identify the specific alleged misstatement, why it was supposedly false,

26   who made it and had the supposed intent to defraud, and when. *Kearns v. Ford Motor Co*., 567 F.3d

27   1120, 1124 (9th Cir. 2009) (fraud under the UCL must "must be accompanied by 'the who, what,

28   when, where, and how' of the misconduct"). In addition, Plaintiff does not allege that it relied on

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                          - 22 -

1   the supposed misstatements. As this District has held, "UCL fraud plaintiffs must allege their own

2   reliance—not the reliance of third parties—to have standing under the UCL." *See O'Connor v. Uber*

3   *Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) (granting judgment on the pleadings).

4   Third, "[t]he UCL claim is defective because the claim seeks relief that is not available under

5   the UCL." *BioResource, Inc. v. U.S. Pharmaco*, No. C 10-1053 SI, 2010 WL 2763681, at *3 (N.D.

6   Cal. July 13, 2010). Section 17200 remedies are "generally limited to injunctive relief and

7   restitution." *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 371 (2013). Plaintiff does not seek "restoration"

8   of any money it paid to Future Link (because it paid none). Instead, Plaintiff seeks compensation

9   for money it spent defending against Future Link's infringement suits. Such "compensatory"

10  damages are not recoverable under Section 17200. *Id.* at 376. Plaintiff's request to "enjoin[] Future

11  Link and IPValue from enforcing any of the patents in their portfolios against Realtek" (Compl.

12  ¶ 80, Prayer at (L)) is also not cognizable. Even assuming it were permitted given the litigation

13  privilege (and it is not), California law cannot be used to prohibit Future Link from enforcing its

14  constitutionally enshrined patent rights. *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480

15  (1974) (where patent law and state law clash, the "state law must fall").

16           **3.    Plaintiff's Tortious Interference Claim Fails To State A Claim**

17  Plaintiff's claim for tortious interference likewise fails as a matter of law for multiple

18  independent reasons in addition to being barred by the litigation privilege.

19  First, the California Supreme Court has held that a "plaintiff seeking to state a claim for

20  intentional interference with contract or prospective economic advantage because defendant induced

21  another to undertake litigation, must allege that the litigation was brought without probable cause[.]"

22  *Pac. Gas & Elec. v. Bear Stearns*, 50 Cal. 3d 1118, 1137 (1990). For all of the reasons explained

23  above, Plaintiff has failed to allege this.

24  Second, the Complaint fails "to identify at least one specific, ongoing business relationship

25  that was disrupted[.]" *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1154 (N.D. Cal.

26  2010). Instead, it merely alleges that "IPValue's and Future Link's actions disrupted Realtek's

27  relationships with customers and end users." Compl. ¶ 70. But such "conclusory" allegations are

28  insufficient to state an interference claim. *Sybersound Recs. v. UAV Corp.*, 517 F.3d 1137, 1151

(9th Cir. 2008) (affirming Rule 12 dismissal where complaint merely alleged that "ongoing business and economic relationships with Customers have been disrupted."). While the Complaint asserts that MediaTek has allegedly coerced "at least one customer . . . not to use Realtek's products," it says nothing about who this customer is or their supposed prior dealings with Plaintiff or why this would state a claim *against Future Link*. This is insufficient. *See, e.g., AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1152 (N.D. Cal. 2019) ("Nowhere does the complaint identify these entities or allege any facts to explain their economic relationship with [Plaintiff], much less suggest that such relationships contain[s] the probability of future economic benefit to [Plaintiff].").

Third, the Complaint also "fail[s] to plead facts [] showing . . . actual disruption to [Plaintiff's] relationships with the Customers." *Sybersound*, 517 F.3d at 1151. The Complaint alleges that "absent Defendants' tortious conduct, Realtek would have sold additional TV Chips." Compl. ¶ 84. But this conclusory assertion is not sufficient to state a tortious interference claim. *Silicon Knights, Inc. v. Crystal Dynamics, Inc*., 983 F. Supp. 1303, 1312 (N.D. Cal. 1997) (granting dismissal where complaint merely alleged interference with a "prospective economic advantage with Microsoft, Activision, and 3DO"). The Complaint does not identify any specific contract or prospective contract that Plaintiff lost or negotiation that failed as result of Future Link's lawsuits. *See, e.g., Sybersound*, 517 F.3d at 1151 ("Sybersound does not allege, for example, that it lost a contract nor that a negotiation with a Customer [sic] failed.") (affirming dismissal); *Power Analytics v. Operation Tech.*, 2017 WL 11486807, at *23 (C.D. Cal. Dec. 7, 2017) ("The SAC does not identify any specific contract with which Defendants allegedly interfered."). Plaintiff does not even allege that its sales have decreased. *Silicon Knights*, 983 F. Supp. at 1312 ("[T]here is no allegation that sales of a particular software product identified with Silicon Knights decreased after these alleged statements were made by Crystal Dynamics.") (granting dismissal). While the Complaint alleges that "one customer" supposedly chose "not to use Realtek products," Compl. ¶ 8, it fails to allege "the nature and extent of [Plaintiff's] relationship with" this "customer." *Green Crush LLC v. Paradise Splash I, Inc*., 2018 WL 4940825, at *9 (C.D. Cal. May 3, 2018).

Fourth, Plaintiff also "fails to allege facts showing that [Future Link] had knowledge of [the

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                                    - 24 -

1    plaintiff's] relationships" with Plaintiff's alleged customers. *Swipe & Bite, Inc. v. Chow*, 147 F.

2    Supp. 3d 924, 935 (N.D. Cal. 2015) (granting dismissal). The Complaint merely alleges in

3    conclusory fashion that "Future Link [was] aware of those relationships." Compl. ¶ 84. It offers no

4    supporting facts or explanation as to how Future Link was aware of these so-called customers and

5    thus, the allegation fails as a matter of law. *See Swipe & Bite*, 147 F. Supp. 3d at 935 (dismissing

6    interference claim that merely alleged that the defendants were "aware of the [plaintiff's]

7    prospects.") (citation omitted).

8         Finally, Plaintiff's tortious interference claim fails because the Complaint does not allege

9    that Future Link's conduct was independently "wrongful by some measure other than an interference

10   with the plaintiff's interest itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376,

11   379 (1995). Because Plaintiff fails to plead its conspiracy to monopolize and UCL claims for the

12   reasons discussed above, Plaintiff has likewise failed to plead facts showing independent

13   wrongfulness. *See Bay Area Surgical Mgmt. v. Aetna Life Ins.*, 166 F. Supp. 3d 988, 998 (N.D. Cal.

14   2015) ("[P]laintiffs have not properly pled the antitrust claim, [and thus] have not satisfied the

15   element of an independent intentional wrongful act.").

16   **VI.    CONCLUSION**

17        The Complaint improperly attacks constitutionally-protected conduct and fails to plead facts

18   that plausibly show a claim for relief against Future Link. The federal claim against Future Link

19   should therefore be dismissed with prejudice, and the state law claims should be stricken.

20   Dated: September 1, 2023                    Respectfully submitted,

21                                               IRELL & MANELLA LLP

22

23                                               By: */s/ A. Matthew Ashley*
                                                 _____
24                                               A. Matthew Ashley
                                                 *Counsel for Defendants*
25                                               IPVALUE MANAGEMENT, INC., and
                                                 FUTURE LINK SYSTEMS, LLC

26

27

28

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                          - 25 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ECF ATTESTATION

I, Lucas S. Oxenford, am the ECF user whose ID and password are being used to file DEFENDANTS' FUTURE LINK SYSTEMS, LLC'S AND IPVALUE MANAGEMENT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT. I hereby attest that I received authorization to insert the signature indicated by a conformed signature (/s/) within this e-filed document.

By: /s/ Lucas S. Oxenford

DEFENDANTS FUTURE LINK SYSTEMS'S & IPVALUE'S
NOTICE OF MOTION & MOTION TO DISMISS AND TO
STRIKE PLAINTIFF'S COMPLAINT
Case No 5:23-cv-02774-PCP

11257273                                    - 26 -