1  KEVIN P.B. JOHNSON, SBN 177129
   kevinjohnson@quinnemanuel.com
2  Quinn Emanuel Urquhart & Sullivan, LLP
   555 Twin Dolphin Drive, 5th Floor
3  Redwood Shores, CA 94065
   Telephone: (650) 801-5000
4  Facsimile: (650) 801-5100

5  SEAN S. PAK, SBN 219032
   seanpak@quinnemanuel.com
6  ADAM B. WOLFSON, SBN 262125
   adamwolfson@quinnemanuel.com
7  Quinn Emanuel Urquhart & Sullivan, LLP
   50 California Street, 22nd Floor
8  San Francisco, CA 94111
   Telephone: (415) 875-6600
9  Facsimile: (415) 875-6700

10 KEVIN HARDY (*pro hac vice*)
   D.C. Bar No. 473941
11 QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
12 1300 I Street, N.W., Suite 900
   Washington, DC 20005
13 Tel: 202.538.8000
   Fax: 202.538.8100
14 kevinhardy@quinnemanuel.com

15 *Attorneys for Defendant MediaTek Inc.*

16

17                    UNITED STATES DISTRICT COURT
18                  NORTHERN DISTRICT OF CALIFORNIA
                          SAN JOSE DIVISION
19

20 REALTEK SEMICONDUCTOR CORP.,          Case No. 5:23-cv-02774-PCP

                      Plaintiff,
21                                        **REPLY TO MOTION TO DISMISS**
                                          **COMPLAINT BY MEDIATEK INC.**
22         v.

23 MEDIATEK INC.; IP VALUE               Judge: Hon. P. Casey Pitts
   MANAGEMENT INC.; and FUTURE LINK      Date Filed: June 6, 2023
24 SYSTEMS, LLC.,

25
                      Defendants.
26

27

28                          **PUBLIC VERSION**

---

Cognizant that two courts already decided against it, Plaintiff Realtek Semiconductor Corp. ("Realtek") no longer contends that the lawsuits Defendant Future Link Systems, LLC ("Future Link") brought were frivolous. Instead, Realtek now claims only that Defendant MediaTek Inc. ("MediaTek") encouraged Future Link to file lawsuits and that, even if the lawsuits had some basis, they were filed "without regard to the merits." Opp. at 1:12. That admission is fatal to Realtek's claims. Under the *Noerr-Pennington* doctrine, it is not enough for a party to pursue litigation "without regard to the merits"; to qualify for the sham exception, a plaintiff must first show the litigation is "objectively baseless." Without a showing of objective baselessness, subjective motive—even "improper motive"—is not enough.

Apparently aware of this dispositive issue, Realtek attempts to conflate the sham exception with a second exception to *Noerr-Pennington*—when a party files a series of lawsuits—to argue that filing lawsuits without regard to merits may suffice. But this series-exception (known as the *USS-POSCO* exception) is a dead-end here: it requires a large number of lawsuits, a substantial portion of which were ***un***successful—a fact Realtek cannot allege because the Future Link lawsuits at issue ***successfully settled***. And while Realtek repeats the word "scheme" to distract attention from the limited nature of its "sham litigation"-based claim, it alleges no conduct ***but*** litigation that supposedly caused any injury. Thus, Realtek cannot plausibly allege the requirements of its own cited case law and has no response to the central issue in this case: that the alleged conduct, which centers on non-frivolous patent litigation, is immunized by the First Amendment.

But *Noerr-Pennington* is not the only reason Realtek's claims fail. Its antitrust claims lack the requisite allegations of antitrust injury, specific intent to monopolize, and probability of achieving monopoly power. No matter Realtek's protestations, the harm the Complaint identifies is specific only to Realtek; it does not flow from any identified harm to competition. Indeed, according to Realtek's Complaint, the alleged conduct, if successful, would simply level the playing field by ensuring that Realtek and MediaTek ***both*** pay to license the same patents. Nor, given these conceded facts, does Realtek provide any plausible allegation regarding how MediaTek could have obtained monopoly power through the challenged conduct. Finally, Realtek's state law claims fail on multiple levels. Realtek argues that alleged statements by MediaTek to a single customer about the Future

Link litigation (which Realtek has never identified with specificity or even alleged to be false) caused injury. Conspicuously absent from the Complaint is any allegation that the statement actually resulted in Realtek losing any business. This case should be dismissed.

## I.  *NOERR-PENNINGTON* BARS LIABILITY ON REALTEK'S CLAIMS

Looking past Realtek's overheated rhetoric to the substance of its claims, the "multi-faceted scheme" it alleges is actually just three acts, all centered on the same litigation: (1) a license agreement that allegedly encouraged Future Link to file patent litigation against Realtek; (2) the subsequent patent litigation between Future Link and Realtek; and (3) an alleged statement by MediaTek to one unnamed Realtek customer about that same litigation. *See* Compl. ¶¶ 6-8. Realtek has conceded (by not disputing) that Future Link's litigations were not baseless, but argues that the series-based and "scheme" exceptions apply. But whether one examines the alleged acts individually or collectively, Realtek's own allegations make clear that neither of these exceptions applies: zero plus zero is still zero. Thus, the alleged conduct is protected, and dismissal warranted.

### A.  *Noerr-Pennington* Immunity Applies To The Alleged Conduct.

The First Amendment preserves the "breathing space" around petitioning activity, thus immunizing from liability any conduct that is "sufficiently related to petitioning activity" if liability would "impair the right of access to the courts." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935-36 (9th Cir. 2006). In *Sosa*, which sets forth the applicable standard, the Ninth Circuit made clear that the scope of immunity even extends to "communications between private parties" prior to litigation being filed. The touchstone is not simply whether conduct is "incidental" to litigation (which all of the alleged conduct here indisputably was), but whether it is "sufficiently related" such that liability "could impair the right of access to the courts." *Id*. at 935. Here, whether viewed individually or collectively, each and every aspect of the alleged "scheme" set forth in Realtek's Complaint is subject to immunity pursuant to multiple different examples of binding Ninth Circuit law.

**First**, *Noerr-Pennington* plainly applies to the Future Link's patent litigations. *See BE&K Cons. Co. v. N.L.R.B.*, 536 U.S. 516, 525-30 (2002). That is undisputed.

**Second**, with respect to the license agreement, *Liberty Lake Investments, Inc. v. Magnuson*, 12 F.3d 155, 156 (9th Cir. 1993), is directly on point. There, the court held that "prompting" and

"funding" third-party litigation to block a competitor was protected from liability. *Id*. Realtek seeks to limit *Liberty Lake* to "funding for litigation to enforce rights similar to [defendant's] own," Opp. at 8, but the defendant in that case also "prompt[ed]" plaintiffs to bring the action, and there is no indication that he could have brought the lawsuit on his own. *See id*. Thus, even assuming that the license at issue here motivated and (through an "incentive payment") funded litigation against Realtek, such agreements are related to petitioning and subject to *Noerr-Pennington*. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co. ("PG&E")*, 50 Cal. 3d 1118, 1136 (1990) (explaining that imposing liability on inducing third-party litigation would "choke[] off" access to the courts).

In response, Realtek claims that settlement agreements are not immune from liability, but that argument misses the point entirely. Immunity here does not arise from the fact of settlement— it arises from the content of the agreement between MediaTek and Future Link, which Realtek alleges encouraged and funded litigation. Realtek's cases involved agreements unrelated to petitioning activity, such as agreements not to produce a patented product, *F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013), cross-licensing to deny competitors technology, *U.S. v. Singer Mfg. Co.*, 374 U.S. 174 (1963), and a boycott. *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, 2017 WL 1178224, at *7 (N.D. Ill. Mar. 30, 2017). Such agreements are fundamentally different from ones alleged to be anticompetitive because they allegedly urge another party to file a lawsuit and thus invoke First Amendment rights. Under *Liberty Lake*, agreements of the latter type are subject to immunity.

**Third**, alleged statements to one customer about litigation, which are not even alleged to be false, are also protected. As laid out in *Sosa*, the test is whether imposing liability on truthful statements about litigation would burden access to courts. 437 F.3d at 936. It plainly would: under Realtek's interpretation, a party could ***sue*** another entity but could not ***say*** anything about the lawsuit without exposing itself to liability.[1] Such a holding would amount to a gag order and would "cause a flood of oppressive derivative litigation" as defendants unable to sue for the lawsuit itself turn to

---

[1] Even apart for the immunity question, the alleged statement simply is not actionable under binding Ninth Circuit law. An alleged monopolist's statements to a competitor's customers are only potentially subject to the Sherman Act if, *inter alia*, they are false and sustained (rather than a one-off statement, as alleged here). *See Am. Prof. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof. Pub., Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997). Realtek does not allege or even address the *Harcourt Brace* factors, and thus fails to state a claim. *Id.*

an "assiduous search for" statements *about* a lawsuit to "choke[] off" access to the courts. *See PG&E*, 50 Cal. 3d at 1136 (considering claim based on inducing litigation). The ability to speak truthfully about a lawsuit warrants protection as part of the First Amendment's "breathing space." *See Sosa*, 437 F.3d at 933-34; *cf. Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975) (finding that the First Amendment protects publication of truthful information derived from court records).

Realtek's cited cases are not to the contrary. In *Arista Networks, Inc. v Cisco Systems Inc.*, 2018 WL 11230167, at *13 (N.D. Cal. May 21, 2018), plaintiff challenged an "open early, closed late" scheme in which the defendant allegedly encouraged companies to adopt its technology as an "industry standard" (the "open early" phase), but then sought to exclude competitors after market-wide adoption (the "closed late" phase) via copyright infringement litigation, blog posts, and certain customer communications. *Id*. at *13. The blog posts and customer communications were deemed actionable because they conveyed the "closed late" policy—and thus had an effect independent of litigation. *Id.* Realtek does not allege anything resembling an "open early, closed late" scheme here, rendering *Arista*'s holding inapposite as a general matter, but also because *Arista* focused on the effects of multiple market statements and, here, the allegations involve communications with just one customer, with no explanation of how such communications could cause market wide harm to competition. In *Wisk Aero LLC v. Archer Aviation Inc.*, 2021 WL 4932734, at *13 (N.D. Cal. Sept. 14, 2021), the statements concerned false representations about a non-existent criminal investigation. Here, by contrast, MediaTek allegedly truthfully stated no more than what Realtek itself alleges: that Future Link filed a lawsuit and sought an exclusion order. *See* Compl. ¶¶ 69, 7, 65.

## B.    No Exception to the *Noerr-Pennington* Doctrine Applies.

Because the litigation "scheme" alleged by Realtek is subject to immunity, the alleged conduct is non-actionable unless an exception to the *Noerr-Pennington* doctrine applies.  None does.

### 1.    The Sham Exception Indisputably Does Not Apply

In an abrupt reversal from the Complaint, Realtek no longer contends that any Future Link lawsuit was objectively baseless. Nor could it:  each court that considered the lawsuits concluded they had merit. *See* Dkt. No. 49 ("RJN") ¶¶ 12-15. To be sure, Realtek argues that Rule 11 orders do not *always* create estoppel for the "sham" exception—such as when they concern reasonableness

of pre-suit investigation, *Magnetar Techs. Corp. v. Intamin, Ltd.*, 2008 WL 11338443, at *6 (C.D. Cal. Feb. 11, 2008). But the Western District of Texas court here expressly considered whether Future Link's case against Realtek was "objectively baseless," so the issues were identical and actually decided. RJN Ex. G at 5-6, 14-15. Moreover, Realtek has the burden to allege that Future Link's lawsuits were baseless, and it simply fails to do so here, particularly in light of multiple prior orders finding otherwise. *See Kearney v. Foley v. Lardner, LLP*, 590 F.3d 638, 647 (9th Cir. 2009) (finding that insufficiently alleged sham exception "could be a proper basis" for dismissal). Having failed to plausibly allege that the Future Link litigations were objectively baseless, the sham litigation exception does not apply, regardless of subjective motive. *See Prof. Real Est. Invs., Inc. v. Columbia Pic. Indus., Inc.*, 508 U.S. 49, 60 (1993) ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation [for the sham exception].");  *Liberty Lake*, 12 F.3d at 159 ("unless a lawsuit is objectively baseless," motive to "sue primarily for the benefit of collateral injuries" inflicted through litigation is "immaterial").

### 2. The *USS-POSCO* "Series" Exception Does Not Apply

Having failed to argue Future Link's lawsuit were objectively baseless, Realtek stakes its case on a narrow alternative basis:  that the lawsuits were brought "pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival" (the *USS-POSCO* exception). Opp. at 9 (quoting *USS-POSCO Indus. v. Contra Costa Cnty. Build. & Constr. Trades Counc., AFL-CIO*, 31 F.3d 800 (9th Cir. 1994)). But a *USS-POSCO* claim is singularly inappropriate here for multiple, independent reasons Realtek remains unable to rebut.

***First***, Realtek cannot plausibly allege that Future Link's lawsuits were brought "without regard to the merits." MediaTek obviously thought the Future Link patents have at least some validity, because ***it licensed them***. With that license at the heart of Realtek's claims here (and incorporated by reference into the Complaint), Realtek's conclusory assertions regarding MediaTek's motivations ring hollow; there is no plausible basis to allege that MediaTek (or Future Link) thought that asserting those patents was meritless. *See Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (dismissing for failure to plead with particularity that defendant "knew its position was baseless").

**Second**, this exception requires a large number of suits that seek to impose a "crushing burden" on a defendant. *USS-POSCO*, 31 F.3d at 811 (considering twenty-nine suits). A couple of suits does not suffice. *See Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 863 F.3d 1178, 1187 (9th Cir. 2017) ("Two sham suits cannot amount to 'a whole series of legal proceedings' or a 'pattern of baseless, repetitive claims.'"); *ERBE Elektromedizin GMBH v. Canady Tech., LLC*, 629 F.3d 1278, 1292 (Fed. Cir. 2010) ("three relevant lawsuits ... do not implicate a test for 'a whole series of legal proceedings'"); *Relevant Grp., LLC v. Nourmand*, 2023 WL 4291654, at **11-12 (C.D. Cal. May, 24, 2023) (listing cases finding four to six suits insufficient).

Realtek alleges only two or three suits against itself,[2] Compl. ¶¶ 26, 31, which is insufficient. *See Amarel v. Connell*, 102 F.3d 1494, 1519 (9th Cir. 1996) (two suits do not demonstrate "a whole series of legal proceedings"). Recognizing this, Realtek pivots and claims there are really six suits by aggregating cases against Amlogic, but there is no basis for aggregation here. Opp. at 10-11. The series exception is based on the premise that "having to defend a whole series of [legal] proceedings can inflict a crushing burden on a business" and thus "has far more serious implications than filing a single action." *USS-POSCO*, 31 F.3d at 811. When the litigations are against different parties, the burden on any one party is the same as for a single lawsuit and this reasoning does not apply. And six lawsuits is insufficient in any event. *See Relevant Grp.*, 2023 WL 4291654, at *11.

**Third**, Realtek cannot allege that the lawsuits were largely unsuccessful—because they **were** successful. *See B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 539 (9th Cir. 2022) (dismissing complaint for failure to allege lack of success). As Realtek admits, each Future Link suit alleged infringement by a third-party component, an ARM-based processor. RJN ¶¶ 1-2; Opp. at 3:17-19. The suits ended when Future Link **successfully licensed** the third-party whose components were at issue. RJN ¶¶ 4-7. As the Western District of Texas explained, Future Link "voluntarily dismissed both cases" against Realtek because it "considered the case against Realtek to be resolved" after it "entered into a confidential license agreement" with a third party that "covers accused Realtek products." RJN Ex. G at 4. Similarly, at the International Trade Commission, Future Link dismissed

---

[2] The International Trade Commission case had mirror allegations as the district court cases and does not count separately. *See Amarel*, 102 F.3d at 1519 (not counting cases with mirror allegations).

its case because an "upcoming licensing agreement … will resolve the issues" against Realtek.[3] RJN Ex. C at 2 n.2. Future Link's successful settlement in its cases against Realtek "cannot be reconciled with the charge that" it was "filing lawsuits and other actions willy-nilly without regard to success." *USS-POSCO*, 31 F.3d at 811; *see Theme Promo., Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (settlement "suggests that the original suit was not objectively baseless").

*Finally*, Future Link cannot allege that any series was filed "for the purpose of injuring a market rival." *USS-POSCO*, 31 F.3d at 811. The alleged "bounty" described in the Complaint, on its face, ████████████████████████████, so it could not have motivated a "series" of suits. RJN Ex. A. at 29. Moreover, Future Link's suits against other defendants, such as Qualcomm, show that Future Link was not motivated by the license. These other defendants do not manufacture TV chips and are not covered by the alleged agreement between Future Link and MediaTek. RJN ¶¶ 1-2. The Court may consider the fact of those lawsuits—which were filed at or near the same time as the lawsuits against Future Link and involve the same third-party component—when assessing whether the contemporaneous lawsuits against Realtek were a potentially anticompetitive "series" aimed at harming competition in the TV chip market. The fact that the *majority* of the lawsuits Future Link filed were not against entities supposedly within the alleged relevant market here shows that the very few lawsuits could be a "series" falling under the *USS-POSCO* exception, because there is no reasonable inference that Future Link filed suits in order to harm TV chip competition.

### 3. The Potential Scheme Exception Does Not Apply

Realtek finally argues that even if no other exception applies, litigation conduct may "still be considered as part of ... [an] anticompetitive scheme." Opp. at 14. This exception—unrecognized by the Ninth Circuit—has strict requirements Realtek does not attempt to address, despite MediaTek raising them in its opening brief. *See* Mot. at 22:7-10. Liability under this exception may only be imposed on litigation conduct if "other aspects of the [alleged] scheme independently produce anticompetitive harms." *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1095-96

---

[3] Realtek claims that the third-party settlement was not "part of the series" but only a "related patent case." Opp. at 12. That is not correct; Realtek's products were expressly covered by the settlement.

(N.D. Cal. 2007). Moreover, the "gravamen" of the case must "center[] on *non*petitioning activity." *hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1146 (N.D. Cal. 2020) (emphasis added).

As noted above, Realtek's claims boil down to three alleged acts: (1) the license between MediaTek and Future Link, (2) Future Link's litigations, and (3) unspecified statements to one customer about the litigation. ***All*** of these acts are protected by the First Amendment, for the reasons stated above. Even assuming *arguendo* that the license and statements were not protected, they did not produce anticompetitive harm "independently" of litigation. The license only allegedly caused harm because it "motivated" Future Link to file suit,[4] Compl. ¶ 78, and the alleged statement merely capitalized on the "illusion of supply chain uncertainties" created by the litigation. *Id.* ¶ 68. Thus, the acts were not "independently" anticompetitive, and the "gravamen" of the suit "centers" on petitioning activity. *hiQ Labs*, 485 F. Supp. 3d at 1146.

A comparison with the cases cited by Realtek shows that this is nothing like the prior "schemes." *Hynix*, 527 F. Supp. 2d at 1098, involved "patent ambush," where a party made false claims to a standard-setting organization and then used that to extract higher royalties for standard essential patents after industry "lock[] in." Litigation was a tool used to capitalize on previous anticompetitive act, not the core anticompetitive act itself. *hiQ Labs* involved blocking access to website functionality to deny resources to a competitor, which happened to be accompanied by (otherwise immunized) cease and desist letters. 485 F. Supp. 3d at 1142-45. Neither *Hynix* nor *hiQ* involved an alleged scheme focusing ***entirely*** on promoting or commenting on non-sham litigation.

## II.    REALTEK'S ANTITRUST CLAIMS ARE FUNDAMENTALLY DEFECTIVE

### A.    Realtek Still Has Not Plausibly Articulated Any Harm to Competition.

Even if *Noerr-Pennington* immunity did not apply, Realtek fails to state a plausible antitrust claim. At bottom, whatever its grievance, Realtek does not have an ***antitrust*** case, which must be based on harm to competition and consumers, not competitors. *PLS.Com, LLC v. Nat'l Assoc. of Realtors*, 32 F.4th 824, 832 (9th Cir. 2022). Absent harm to competition, "[e]ven an act of pure malice by one business competitor against another does not ... state a claim under federal antitrust

---

[4] Put differently, if Future Link never filed suit, there would be nothing for Realtek to defend, no legal costs to incur, and no license to pay (like MediaTek already does).

laws." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993); *see also Paladin Assoc., Inc. v. Mon. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) (injury to plaintiff from conduct that is "neutral to competition" is not cognizable). Realtek's claims in response fail.

**First**, Realtek's legal claims do not correspond to its allegations. For instance, Realtek argues that driving a competitor out of business or reducing innovation can suffice as an injury. But Realtek has not alleged any market exit or that Realtek or Amlogic reduced R&D budgets due to Future Link's litigations. Realtek also does not allege increased consumer prices, decreased product quality, or restricted consumer choice (or the danger of any of that happening). On these points, Realtek's cited cases are inapplicable. In *Funai Electric Co. v. LSI Corp.*, 2017 WL 1133513, at *7 (N.D. Cal. Mar. 27, 2017), the court analyzed standard-essential patents that affected innovation for **all** compliant products, while recognizing that forcing plaintiff "to expend significant resources" on litigation "is only 'harm[] particular to [plaintiff].'" In *Arista*, 2018 WL 11230167, at *20, the plaintiff expressly alleged loss of customers and reduced R&D budget—allegations absent here.[5]

Realtek's responds that these are "factual disputes" inappropriate for resolution on a motion to dismiss. Opp. at 17. But this is not a question of factual dispute; it is a question of basic pleading. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There simply is no factual allegation in the Complaint that, if true, would prove harm to competition. Unable to point to any competitive effects from the alleged conduct, Realtek asserts that a "threat" to competition could suffice, but its allegations do not support even that: at most, there is a "sheer possibility" that competition may somehow be harmed—which is insufficient under the law. *Id.*

**Second**, none of the five allegations specifically identified in Realtek's opposition brief are plausible allegations of "harm to competition." Opp. at 16. Namely:

- "Needlessly incur[ring] litigation costs and fees" is plainly harm to Realtek only. *See Chip-Mender, Inc. v. Sherwin-Williams Co.*, 2006 WL 13058, at *5 (N.D. Cal. Jan. 3, 2006) (finding that litigation costs are a "purely individual economic injury").

- "Disrupted . . relationships with customers and end users" is not alleged—Realtek does not allege that it **actually** lost business as the result of the alleged conduct. Even

---

[5] Realtek cites *Amarel*, 102 F.3d at 1509, which noted other decisions where being driven out of a market or suffering reduced profits provided standing to sue. But, as noted, Realtek does not allege market exit or reduced profits.

if it could, the effect would simply shift market share from Realtek to other competitors, so a marketwide injury (such as supracompetitive prices) would still be required. *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001).

- "Coerc[ing]" customers and "compelling their loyalty" through "bundled product offerings" are wholly conclusory allegations. Realtek never explains what is being compelled or the nature of "bundled product offerings." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (disregarding naked conclusions).

- "Attempt[ing] to persuade a large TV brand" to stop using Realtek's chips is not harm even to Realtek, which does not allege that any customer stopped using its products. And as detailed below, such statements to customers—even when they "impair the opportunities of a rival"—presumptively do not harm competition. *Harcourt Brace*, 108 F.3d at 1151.

- "Significant time and monetary burdens" are likewise harm to Realtek only; these "burdens" are not alleged to have impacted other competitors or resulted in increased costs to **consumers**. *See Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1110 (N.D. Cal. 2022) (finding that allegation of injury "confined to specific harms experienced by Plaintiffs or a small group of competitors" are insufficient).

**Third**, aside from the lack of basic allegations, Realtek fails to show that any alleged harm to competition was "more-than-temporary" and "of significant magnitude." *See Adapt. Pwr. Sol., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998). *Adaptive Power Solutions* is instructive: there, the plaintiff was **driven out of the market**, and the court **still** rejected antitrust liability because new entrants simply filled plaintiff's role. *Id.* at 951. The requirement for a "significant" effect on competition poses a particular problem for any claim based on alleged statements to customers—which are **presumed** to have no significant effect on competition, even when they "impair the opportunities of a rival."[6] *Harcourt Brace*, 108 F.3d at 1151. This presumption may only be overcome when a plaintiff makes a "preliminary showing of significant and more-than-temporary harmful effects on competition" based on six factors outlined in *Harcourt Brace*. *See id.* at 1151-52. Realtek does not allege these six factors and thus cannot show the statements affected competition. *See Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1079-80 (N.D. Cal. 2002) (dismissing claims for failure to make preliminary showing)

**Lastly**, Realtek cannot allege harm to competition as a matter of law because the challenged

---

[6]  An antitrust claim based on statements to customers must also be pleaded with particularity, which Realtek does not do. *See Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 785 (N.D. Cal. 2022).

conduct could not distort the "field of effective competition." *See F.T.C. v. Qualcomm Inc.*, 969 F.3d 974, 1002 (9th Cir. 2020). As explained in *Qualcomm*, a cost imposed on an entire industry does not distort competition but merely raises the "all-in" price for competing. *Id.* Here, the Complaint itself recognizes that patent assertion is a cost borne by the entire industry. Compl. ¶ 4. MediaTek had licensed Future Link's patents for its own use, and the alleged conduct (if assumed to be true) merely required Realtek to pay the same licensing costs. *See id.* ¶ 37. Realtek responds that a "naked tax" imposed without "added value" could be actionable, but it no longer argues that Future Link's patent suits were objective baseless. And since the Future Link's patent claims did not lack merit, Realtek cannot allege they were a "naked tax" based on patents having no value.

## B. Realtek's Monopoly Power Allegations Remain Deficient.

In its opposition, Realtek does not explain how MediaTek sought (or could have obtained) a monopoly in the TV chip market, where the allegations show that the TV chip market is free and open, the alleged conduct did not target that market, and MediaTek has no current or potential monopoly power to exclude a competitor. It thus has not alleged specific intent to monopolize or a dangerous probability of doing so. *See William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014, 1030 (9th Cir. 1981) ("[I]f market conditions are such that a course of conduct described by the plaintiff would be unlikely to succeed in monopolizing the market, it is less likely that the defendant actually attempted to monopolize the market.").

Realtek attempts to show specific intent based on "[a]nticompetitive conduct alone," Opp. at 18, but the Ninth Circuit has rejected such arguments when a defendant lacks market power. *See Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 926 (9th Cir. 1980). "What may be legal for the company lacking substantial market power may be illegal for the firm with such power," *id.* at 925, because competitors are "not required to engage in a lovefest" when their conduct does not threaten a monopoly. *Qualcomm*, 969 F.3d at 993. Thus, "conduct that harms a business rival" cannot be "clearly anticompetitive" to infer specific intent absent other "market considerations." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1379 (9th Cir. 1989). Here, Realtek does not plausibly allege that MediaTek has monopoly power: it alleges only a 60% market share, which is below the level required for a *prima facie* case, and none of its alleged barriers to entry are

specific to TV chip markets. *See* Mot. at 15-16. Realtek therefore has not alleged either direct or indirect evidence of monopoly power sufficient to infer specific intent from conduct.

Indeed, not even Realtek appears to believe that MediaTek could have achieved monopoly power here. Realtek claims that the alleged conduct was "designed to drive up the cost to compete" and create a "likelihood that [MediaTek] would achieve at least a 65% market share." Opp. at 18. But as explained in MediaTek's motion, monopoly power is not the same as high market share—there must also be substantial barriers to new entry that Realtek does not allege. *See* Mot. at 15-16. Absent such barriers (and the corresponding potential for monopoly power), high market share is ephemeral and neither harms, nor is itself evidence of harm, to competition. *See, e.g.*, *U.S. Syufy Enter.*, 903 F.2d 659, 665 (9th Cir. 1990) (finding that market acquisitions that allowed a defendant to temporarily obtain a 91% market share "did not short circuit the operation of natural market forces" to harm competition absent entry barriers). For this reason, Realtek fails to state an attempted monopolization or conspiracy to monopolize claim.

## III. STATE LAW CLAIMS FAIL BECAUSE NOTHING WRONGFUL OCCURRED

### A. Realtek Concedes That No Separate UCL Claim Is Available.

In its motion, MediaTek explained that Realtek cannot rely on subjective notions of fairness for its UCL claim but must predicate or "tether" its claim to a violation of another law or policy. Mot. at 17-18. MediaTek also explained that neither the antitrust laws nor the Federal Trade Commission Act ("FTC Act") provide such law or policy here, but, on the contrary, the Patent Act provides an affirmative safe harbor. *Id*. at 20-22. Because the license is expressly time-limited, MediaTek also showed that Realtek has no claim for injunctive relief. *Id*. at 22.

Realtek's opposition does not disturb any of these conclusions. ***First***, Realtek concedes that both its "unlawful" and "unfair" UCL claims are tied to the antitrust laws. Opp. at 20. Realtek thus concedes that it must plead an actual violation, an "incipient violation," or violation of "policy or spirit" of the antitrust laws for the UCL claim. *See id.* But despite acknowledging these requirements, Realtek claims that it can state a claim under *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015). That is not correct: *Luxul* applied a ***different test*** than the antitrust-based "tethering" test applicable here. Specifically, *Luxul* applied a "balancing" test that

only applies to **consumer** UCL claims. *See id.*; *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023). MediaTek is indisputably a competitor, not a customer, of Realtek, so the "tethering" test applies. *Id.* Because Realtek has not shown anything close to an antitrust violation, its UCL claim fails. And even if *Luxul* somehow applied, it concerned statements about "legal issues that do not exist," while the Future Link litigations plainly did exist. *See* 78 F. Supp. 3d at 1174.

*Second*, Realtek concedes that the Patent Act provides a safe harbor under the UCL unless one of the established exceptions applies. Opp. at 21. Realtek claims only that the "sham" and "scheme" exceptions argued for *Noerr-Pennington* also apply to the Patent Act. *Id.* This concession is critical because it means that Realtek cannot state a UCL claim based on an "incipient" or "policy or spirit" violation of antitrust laws; instead, consistent with the "sham" and "scheme" exceptions, it must show that an actual antitrust violation. *See Prof'l Real Est. Env'rs*, 508 U.S. at 61 ("[E]ven a plaintiff who defeats the defendant's claim to Noerr immunity ... by demonstrating ... a sham must still prove a substantive antitrust violation."); *Arista*, 2018 WL 11230167, at *12 (same under scheme exception). Thus, even if Realtek could overcome *Noerr-Pennington* immunity, its UCL claim would still fail because it does not plead an actual antitrust violation.

*Finally*, Realtek cannot show a likelihood of future injury sufficient to obtain relief. *See Anthony Cal., Inc. v. Fire Power Co., Ltd.*, 2018 WL 11352483, at *2 (C.D. Cal. Aug. 9, 2018). Realtek claims an "ongoing conspiracy between Defendants," but its allegations do not support that claim; the only alleged "conspiracy" involves an agreement ███████████████████ ████████████. RJN Ex. A at 29. None of Realtek's cited cases involved an agreement that had such an express expiration. *See Robinson v. U-Haul Co. of Cal.*, 4 Cal. App. 5th 304, 318 (2016) (claim based on ongoing "unfair business practice"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2014 WL 2527221, at *2 (N.D. Cal. June 4, 2014) (alleging price fixing conspiracy not involving written agreement); *see also W. Air Charter, Inc. v. Schembari*, 2017 WL 7240775, at *5 (C.D. Cal. Dec. 14, 2017) (analyzing economic loss without considering injunctive relief). For these reasons, Realtek cannot plead a UCL claim independent of the antitrust claims, and relief is not available.

### B. Realtek Fails To Plead Tortious Interference With Prospective Advantage.

Realtek has not shown that its allegations overcome the foundational deficiencies identified

in MediaTek's motion to dismiss. ***First***, Realtek has not—and cannot—show that the Future Link litigations were brought without probable cause and concluded in its favor to state a claim. *PG&E*, 50 Cal. 3d at 1137. Realtek does not address these elements but cross-references its *Noerr-Pennington* analysis. But the California standard is stricter than *Noerr-Pennington*. As explained in *PG&E*, tortious interference claims are absolutely barred unless the litigations concluded in the plaintiff's favor (which forecloses a "sham" exception based on lack of probable cause alone) and there is no "scheme" exception at all. *See id.* Thus, even if Realtek could show a *Noerr-Pennington* exception, it could not state a tortious interference claim because the lawsuits indisputably did not conclude in Realtek's favor. *See* RJN Ex. H at 2 (Realtek admitting that the Western District of Texas denied attorneys' fees because "Realtek ... was not a prevailing party").

Realtek argues that *PG&E* does not apply to allegations that MediaTek used Future Link's litigations "to persuade Realtek's customers to change suppliers" and that the disruption would not have resulted "from the outcome of the litigation." Opp. at 25. But that misses the actual holding of *PG&E*, which states that "a plaintiff seeking to state a claim for intentional interference with contract or prospective economic advantage because defendant induced another to undertake litigation" must satisfy the elements described above. Whether the interference is "through" the outcome of litigation or through some other means is irrelevant; as long as the claim is based on "inducing litigation," the *PG&E* requirements must be satisfied. Thus, the tortious interference claim fails independent of the *Noerr-Pennington* issues.

***Second***, Realtek has not alleged an independently wrongful act. *See CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). Realtek responds by cross-referencing its antitrust and *Noerr-Pennington* analysis, thus conceding that the tortious interference claim rises and falls with the other claims. Opp. at 23. Realtek also argues that it "does not allege that MediaTek made only truthful statements to Realtek's customers," *id.*, but that misconstrues the pleading requirement. Realtek must allege false statements with particularity; it cannot do so by ***failing*** to allege that only true statements were made. *See Vess v. Ciba- Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). In any event, Realtek's own allegations confirm the truth of the alleged

statement here. *See* Compl. ¶ 69, 26, 31, 66-67.[7]

**Finally**, even aside from these deficiencies, Realtek simply has not alleged the elements of a tortious interference with prospective economic advantage claim. *See CRST Van Expedited*, 479 F.3d at 1108 (listing claim elements required to be alleged). Realtek identifies six allegations in its opposition, but ***actual disruption*** of prospective customer relationships is conspicuously absent from the list.[8] Opp. at 24. Because Realtek does not allege that it actually lost business as the result of the alleged conduct, it pleads, at most, an "attempt" claim that is not cognizable. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (affirming dismissal for failure to "plead facts either showing or allowing the inference of actual disruption").

## IV. THE COURT SHOULD DISMISS WITH PREJUDICE DUE TO FUTILITY

Realtek requests leave to amend because it purportedly could not attach confidential documents "[d]ue to protective orders" in prior cases. Opp. at 25. But MediaTek did not rely on confidential documents; the cited matters are on the public docket. In any event, amendment to the Complaint cannot cure the basic deficiencies here: Courts have expressly found that Future Link's litigations were not baseless; Realtek cannot allege any other *Noerr-Pennington* exception; *Qualcomm* bars any antitrust claim based on the alleged conduct; and the state law claims hinge on the antitrust claims. Thus, amendment would be futile, and leave to amend should be denied.

## CONCLUSION

For the foregoing reasons, MediaTek respectfully requests dismissal of the Complaint.


Dated: October 12, 2023

By: */s/ Kevin Hardy*

KEVIN P.B. JOHNSON, SBN 177129
kevinjohnson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065

---

[7] Realtek argues that "sham" litigation could be independently wrongful, but as explained above, Realtek no longer contends that Future Link's litigations were "objectively baseless."

[8] While Realtek claims MediaTek sought to "convince" a brand "to stop designing Realtek products into the TVs," its Complaint states only that MediaTek "attempted" to do so. Compl. ¶ 69.

Telephone: (650) 801-5000
Facsimile: (650) 801-5100

SEAN S. PAK, SBN 219032
seanpak@quinnemanuel.com
ADAM B. WOLFSON, SBN 262125
adamwolfson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

KEVIN HARDY (*pro hac vice*)
D.C. Bar No. 473941
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
Tel: 202.538.8000
Fax: 202.538.8100
kevinhardy@quinnemanuel.com

*Attorneys for Defendant MediaTek Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.


Executed on October 12, 2023.

/s/ Kevin Hardy_____
Kevin Hardy