IRELL & MANELLA LLP
Benjamin W. Hattenbach (SBN 186455)
Michael D. Harbour (SBN 298185)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
Facsimile:   (310) 203-7199
Email: bhattenbach@irell.com
Email: mharbour@irell.com

A. Matthew Ashley (SBN 198235)
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Telephone:  (949) 760-0991
Facsimile:   (949) 760-5200
Email: mashley@irell.com

*Counsel for Defendants*
IPVALUE MANAGEMENT, INC., and
FUTURE LINK SYSTEMS, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORP., | Case No. 5:23-cv-02774-PCP |
| Plaintiff, | |
| v. | **DEFENDANTS FUTURE LINK SYSTEMS, LLC'S AND IPVALUE MANAGEMENT, INC.'S REPLY ISO THEIR MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT** |
| MEDIATEK INC., IPVALUE MANAGEMENT INC., and FUTURE LINK SYSTEMS, LLC, | |
| Defendants. | Hon. P. Casey Pitts |
| | Date:        November 28, 2023 |
| | Time:        10:00am |
| | Courtroom:  8 |
| | <u>**Public Version**</u> |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. PLAINTIFF'S CLAIMS ARE BARRED BY *NOERR-PENNINGTON* ........................... 2

    A. The Complaint Is Predicated On Future Link's Litigations .................................... 2

    B. Plaintiff's "Series" Argument Fails As A Matter Of Law ...................................... 4

    C. Plaintiff Is Precluded From Arguing Sham Litigation ............................................ 7

III. PLAINTIFF'S SHERMAN ACT § 2 CLAIM FAILS AS A MATTER OF LAW ........... 8

    A. Realtek Does Not And Cannot Allege Future Link Is A Competitor ................... 8

    B. Realtek's Conspiracy To Monopolize Allegations Fail ......................................... 9

    C. Plaintiff Has Not Alleged Cognizable Antitrust Injury ........................................ 11

IV. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE STRICKEN OR DISMISSED ... 13

    A. Plaintiff's State Law Claims Arise From Protected Conduct ............................... 13

    B. Plaintiff's State Law Claims Are Barred By The Litigation Privilege................. 13

    C. Plaintiff's UCL And Tortious Interference Allegations Fail To State
    A Claim ................................................................................................................. 14

DEFENDANTS FUTURE LINK'S & IPVALUE'S REPLY ISO
THEIR MOTION TO DISMISS AND TO STRIKE
PLAINTIFF'S COMPLAINT
Case No. 5:23-cv-02774-PCP

- i -

**Page(s)**

**Cases**

*Ad Visor, Inc. v. Pac. Tel. & Tel. Co.*,
  640 F.2d 1107 (9th Cir. 1981)...................................................................................................6

*Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*,
  141 F.3d 947 (9th Cir. 1998)..................................................................................................10

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996)................................................................................................12

*Arista Network v. Cisco Sys.*,
  No. 16-cv-00923-BLF, 2018 WL 11230167 (N.D. Cal. May 21, 2018) ...........................11, 12

*B&G Foods v. Embry*,
  29 F.4th 527 (9th Cir. 2022)....................................................................................................6

*Balt. Scrap Corp. v. David J. Joseph Co.*,
  237 F.3d 394 (4th Cir. 2001)....................................................................................................3

*Catch Curve, Inc. v. Venali, Inc.*,
  2008 WL 11334024 (C.D. Cal. Nov. 3, 2008) ..........................................................................6

*Coca-Cola Co. v. Omni Pac. Co.*,
  No. C 98-0784 S1, 1998 U.S. Dist. LEXIS 23277 (N.D. Cal. Dec. 9, 1998) ............................5

*Confederated Tribes v. Weyerhaeuser Co.*,
  411 F.3d 1030 (9th Cir. 2005).................................................................................................10

*Curtin Maritime v. Santa Catalina Island Co.*,
  786 F. App'x 675 (9th Cir. 2019).............................................................................................9

*DocMagic, Inc. v. Ellie Mae, Inc.*,
  745 F. Supp. 2d 1119 (N.D. Cal. 2010) ..................................................................................15

*E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ..............................................................................................................2, 3

*ERBE Elektromedizin v. Canady Tech.*,
  629 F.3d 1278 (Fed. Cir. 2010)................................................................................................5

*Fitbit, Inc. v. Laguna 2, LLC*,
  No. 17-CV-00079-EMC, 2018 WL 306724 (N.D. Cal. Jan. 5, 2018) ........................................8

*Flower v. Wachovia Mortg.*,
  No. C 09-343 JF HRL, 2009 WL 975811 (N.D. Cal. Apr. 10, 2009)..........................................7

DEFENDANTS FUTURE LINK'S & IPVALUE'S REPLY ISO
THEIR MOTION TO DISMISS AND TO STRIKE
PLAINTIFF'S COMPLAINT
Case No. 5:23-cv-02774-PCP

- ii -

*FTC v. AbbVie Inc*,
   976 F.3d 327 (3d Cir. 2020) ................................................................................6

*FTC v. Actavis, Inc.*,
   570 U.S. 136 (2013) ...........................................................................................3

*Funai Elec. v. LSI Corp.*,
   No. 16-CV-01210-BLF, 2017 WL 1133513 (N.D. Cal. Mar. 27, 2017) ............11, 12

*Glen Holly Ent., Inc. v. Tektronix, Inc.*
   352 F.3d 367, 374 (9th Cir. 2003) ......................................................................12

*Hanover 3201 Realty v. Village Supermarkets*,
   806 F.3d 162(3rd Cir. 2015)................................................................................5

*Herrera v. Cnty. of Los Angeles*,
   482 F. App'x 263 (9th Cir. 2012).........................................................................4

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   639 F. Supp. 3d 944 (N.D. Cal. 2022) ................................................................14

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
   527 F. Supp. 2d 1084 (N.D. Cal. 2007) ............................................................4, 14

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
   No. CV-00-20905 RMW, 2006 WL 1883353 (N.D. Cal. July 7, 2006) ...................14

*J. B. v. G6 Hosp.*,
   No. 19-CV-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) .................15

*Kaiser Found. v. Abbott Lab'ys*,
   552 F.3d 1033 (9th Cir. 2009)...........................................................................5, 6

*Kane v. DeLong*,
   No. C-12-5437 EMC, 2013 WL 1149801 (N.D. Cal. Mar. 19, 2013) .....................14

*Kendall v. Visa*,
   518 F.3d 1042 (9th Cir. 2008)............................................................................11

*Les Shockley v. Nat'l Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989)..............................................................................13

*Liberty Lake Invs. v. Magnuson*,
   12 F.3d 155 (9th Cir. 1993)..............................................................................2, 3

*Macy's Inc. v. Initiative Legal*,
   2015 WL 12655379 (C.D. Cal. May 12, 2015)......................................................14

*Mercy-Peninsula Ambulance v. San Mateo Cnty.*,
   791 F.2d 755 (9th Cir. 1986)...............................................................................8

DEFENDANTS FUTURE LINK'S & IPVALUE'S REPLY
ISO THEIR MOTION TO DISMISS AND TO STRIKE
PLAINTIFF'S COMPLAINT
Case No. 5:23-cv-02774-PCP

- iii -

*Monex Deposit v. Gilliam*,
    680 F. Supp. 2d 1148 (C.D. Cal. 2010).......................................................................15

*Nat. Immunogenics Corp. v. Newport Trial Grp.*,
    2016 WL 11520711 (C.D. Cal. Aug. 1, 2016) ........................................................14

*In re NFL's Sunday Ticket*,
    933 F.3d 1136 (9th Cir. 2019).................................................................................9

*Ni-Q, LLC v. Prolacta Bioscience*,
    2019 WL 637703 (D. Or. Feb. 14, 2019) ..............................................................7

*NorthBay Healthcare v. Kaiser Found.*,
    No. 17-CV-05005, 2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) ..........................10

*Openwave Messaging v. Open-Xchange*,
    No. 16-CV-00253-WHO, 2016 WL 6393503 (N.D. Cal. Oct. 28, 2016) ..................5

*Or. Nat. Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991)...........................................................................6, 7, 8

*Oracle Am. v. CedarCrestone, Inc.*,
    No. 12-CV-04626 NC, 2013 WL 3243885 (N.D. Cal. June 26, 2013)....................15

*Oxbow Carbon v. Union Pac. R.R.*,
    81 F. Supp. 3d 1 (D.D.C. 2015) ..........................................................................10

*Pac. Gas & Elec. v. Bear Stearns*,
    50 Cal. 3d 1118 (1990)........................................................................................15

*Pro. Real Est. Invs. v. Columbia Pictures*,
    508 U.S. 49 (1993) .........................................................................................4, 6, 7

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004) ...........................................................................8

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995).................................................................................8

*Relevant Grp., LLC v. Nourmand*,
    2022 WL 2916860 (C.D. Cal. July 25, 2022) ......................................................5

*Rheumatology Diagnostics v. Aetna, Inc.*,
    2013 WL 5694452 (N.D. Cal. Oct. 18, 2013) ......................................................8

*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990)........................................................................................14

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006)............................................................................2, 3

DEFENDANTS FUTURE LINK'S & IPVALUE'S REPLY
ISO THEIR MOTION TO DISMISS AND TO STRIKE
PLAINTIFF'S COMPLAINT
Case No. 5:23-cv-02774-PCP

- iv -

*Toyo Tire v. Atturo Tire Corp.*,
    2017 WL 1178224 (N.D. Ill. Mar. 30, 2017) ............................................................................3

*Toyo Tire v. CIA Wheel Grp.*,
    2015 WL 4545187 (C.D. Cal. July 8, 2015) ............................................................................5

*Twin City Bakery v. Astra Aktiebolag*,
    207 F. Supp. 2d 221 (S.D.N.Y. 2002) ....................................................................................5

*U.S. v. Kirilyuk*,
    29 F.4th 1128 (9th Cir. 2022) ..................................................................................................9

*U.S. v. Singer Mfg.*,
    374 U.S. 174 (1963) ................................................................................................................3

*United Food v. Teikoku USA*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) ....................................................................................9

*United Mine Workers v. Pennington*,
    381 U.S. 657 (1965) .............................................................................................................3, 4

*Unlockd Media v. Google*,
    No. 21-CV-07250-HSG, 2023 WL 6226379 (N.D. Cal. Sept. 22, 2023) ...............................12

*USS–POSCO Indus. v. Contra Costa Cnty.*,
    31 F.3d 800 (9th Cir.1994) ...................................................................................................5, 6

*Waugh Chapel v. United Food & Com. Workers*,
    728 F.3d 354 (4th Cir. 2013) ...............................................................................................3, 9

*Whitaker v. Tesla Motors*,
    985 F.3d 1173 (9th Cir. 2021) ................................................................................................8

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    555 F. Supp. 3d 829 (N.D. Cal. 2021) ...................................................................................8

**Statutes**

California Civil Code section 47(b) ...............................................................................................14

Sherman Act Section .......................................................................................................................1

Unfair Competition Law ..................................................................................................................1

Anti-SLAPP Statute (Cal. Code Civ. Proc. § 425.16)....................................................... vi, 1, 13

**Rules**

Rule 11 ............................................................................................................................................7

DEFENDANTS FUTURE LINK'S & IPVALUE'S REPLY
ISO THEIR MOTION TO DISMISS AND TO STRIKE
PLAINTIFF'S COMPLAINT
Case No. 5:23-cv-02774-PCP

- v -

## TABLE OF ABBREVIATIONS & DEFINED TERMS

| Abbreviation/Term | Definition |
|---|---|
| Amlogic | Amlogic Holdings, Ltd. |
| Anti-SLAPP | Cal. Code Civ. Proc. § 425.16 |
| Compl. | Complaint (Dkt. 1) |
| Ex. | Exhibit to the Harbour Declaration in Support of Future Link's Motion to Dismiss and Strike (Dkts. 51-3:51-15) |
| Future Link | Future Link Systems, LLC and IPValue Management, Inc. |
| MediaTek | MediaTek Inc. |
| Motion or Mot. | Moving Brief (Dkt. 51) |
| Opp. | Opposition Brief (Dkt. 65) |
| Realtek | Realtek Semiconductor Corp. |

\* Unless otherwise noted, all emphasis is added, and quotations and internal citations are omitted.

# I.    INTRODUCTION

Plaintiff largely ignores the argument and authority that Future Link made and cited in its Motion, including on-point and binding Supreme Court and Ninth Circuit precedent and extensive on-point authority from this District. And the arguments Plaintiff does make are both meritless and irreconcilable with the Complaint.

The Motion demonstrated that *Noerr-Pennington* bars Plaintiff's claims. Plaintiff ignores the Motion's cited authority and claims that it has pled a "series" of meritless litigations. However, Plaintiff's "series" argument fails for the reasons noted in the Motion, which also apply to "series" assertions. In addition, Plaintiff's "series" argument cannot be reconciled with its own theory of this case. The entire so-called "bounty" ██████████████████████████████████████, so if it was the true motivation for Future Link's litigation, ████████████████████████ ███████. Plaintiff does not even attempt to explain this dichotomy. Plaintiff also claims that there is a "scheme" exception to *Noerr-Pennington*, but the purported "scheme" here is not separate from the litigation (like a conspiracy to fix prices or conduct a boycott), it is a purported conspiracy ***to file litigation***, which falls squarely within *Noerr-Pennington*.

The Motion further cited binding Ninth Circuit precedent that a defendant who is not a competitor in a market cannot conspire to monopolize that market under Sherman Act Section 2. Plaintiff ignores that binding Ninth Circuit precedent and instead relies on inapposite authority. Plaintiff also ignores that Plaintiff's conclusory allegations of specific intent to monopolize fail as a matter of law under Ninth Circuit and District precedent.

The Motion also demonstrated that the Complaint fails to plead any injury to competition, such as higher prices, reduced output, or reduced quality, despite the fact that the supposed conspiracy has been in place for over four years. Plaintiff does not dispute this failure. Instead, Plaintiff simply regurgitates the Complaint's allegations about its own litigation costs while ignoring settled law from this District rejecting the contention that such costs constitute injury to competition.

Finally, the Motion demonstrated that the state law claims fall squarely within the Anti-SLAPP statute, are barred by the litigation privilege, and fail to state claims under the Unfair Competition Law and for tortious interference. Indeed, Plaintiff fails to address nearly all of the

1  authority cited in the Motion directed at the state law claims.

2      Future Link's Motion should be granted, and because numerous of the Complaint's fatal

3  deficiencies cannot be cured by amendment, dismissal should be with prejudice.

4  **II.    PLAINTIFF'S CLAIMS ARE BARRED BY *NOERR-PENNINGTON***

5      Like its facially deficient Complaint, Plaintiff's Opposition merely regurgitates its defenses

6  in the underlying patent litigations, coupled with the conclusory assertion that Future Link's suits

7  were "meritless." Opp. at 3-4. Future Link's Motion cited extensive authority holding that such

8  allegations are insufficient to satisfy Plaintiff's pleading burden, Mot. at 5-10, yet Plaintiff does not

9  even attempt to address most of these authorities. Instead, the Opposition flatly contradicts

10 Plaintiff's own Complaint and ignores controlling Supreme Court and Ninth Circuit authority that

11 unequivocally demonstrates that the Complaint is barred by *Noerr-Pennington*.

12     **A.    The Complaint Is Predicated On Future Link's Litigations**

13     Plaintiff concedes that, so long as allegedly anticompetitive conduct is at least "incidental"

14 to litigation, it is protected by *Noerr-Pennington.* Opp. at 6; *see Sosa v. DIRECTV, Inc.*, 437 F.3d

15 923, 934 (9th Cir. 2006) (*Noerr-Pennington* protects *both* litigation and any "conduct incidental to

16 the prosecution of the suit."). But while Plaintiff argues the alleged conduct is not incidental to

17 Future Link's litigations, Opp. at 6-7, the face of the Complaint shows otherwise. It repeatedly

18 attacks Future Link's litigations, and the purported "conspiracy" is an alleged conspiracy to file that

19 very litigation. *See* Compl. ¶¶ 4-8, 21-40, 42, 64-69, 84, 87, 89. And while Plaintiff talismanically

20 incants the word "bounty," the purported "bounty" is, by Plaintiff's own admission (and assigned

21 moniker), an alleged "Anticompetitive ***Litigation*** Bounty." Opp. at 3:9-13. So, it is not only

22 "incidental" to the litigations, the litigations are its alleged central purpose.

23     The Ninth Circuit has squarely held that an agreement to initiate litigation is quintessential

24 protected conduct. *Liberty Lake Invs. v. Magnuson,* 12 F.3d 155, 156 (9th Cir. 1993) (alleged

25 "conspir[acy] to mount a frivolous [legal] challenge" was immune under *Noerr-Pennington*).

26 Indeed, *Noerr* itself involved an alleged conspiracy to secretly finance petitioning activity to obtain

27 a monopoly. *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961)

28 ("[T]he Sherman Act does not prohibit two or more persons from associating together in an attempt

DEFENDANTS FUTURE LINK'S & IPVALUE'S REPLY ISO
THEIR MOTION TO DISMISS AND TO STRIKE
PLAINTIFF'S COMPLAINT
Case No. 5:23-cv-02774-PCP

- 2 -

to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly."). *Pennington* did as well. *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965) ("***Joint efforts*** to influence public officials do not violate the antitrust laws even though intended to eliminate competition. ***Such conduct is not illegal, either standing alone, or as part of a broader scheme itself violative of the Sherman Act.***").

Plaintiff's allegation that the agreement at issue involved a ███████████████ ██████ is of no moment. In *Liberty Lake*, the Ninth Circuit held that litigation was protected under *Noerr* where it was "prompted and paid for" by a non-party who allegedly "solicited straw parties to prosecute" anticompetitive legal challenges. *Liberty Lake,* 12 F.3d at 156-58.[1] Similarly, in *Sosa* the Ninth Circuit noted that the "secret funding of a lawsuit brought against a potential competitor to maintain a monopoly" has been held to be "protected under *Noerr–Pennington*." *Sosa*, 437 F.3d at 937 (citing *Balt. Scrap Corp. v. David J. Joseph Co*., 237 F.3d 394, 397-99 (4th Cir. 2001)); *see also Noerr*, 365 U.S. at 129-30 ("[T]he publicity matter circulated in the campaign was made to appear as spontaneously expressed views of independent persons and civic groups when, in fact, it was largely prepared and produced by [a public relations firm] and paid for by the railroads.").

Plaintiff relies on the out-of-circuit decision *Waugh Chapel v. United Food & Com. Workers*, 728 F.3d 354 (4th Cir. 2013). But *Waugh Chapel* only held that, based on the record before it, the plaintiff there, unlike here, had sufficiently alleged that the litigations at issue were mere "shams." *Id.* at 365–67 (pointing to, *inter alia*, a "a one-out-of-fourteen batting average" and the "perverse nature" of the relief sought in the litigation). Plaintiff also contends that "settlement agreements" are not protected, Opp. at 7, but that is a straw man. None of the cases Plaintiff relies on involved an alleged agreement ***to bring litigation***. Instead, they involved such quintessentially non-protected activity as agreements not to compete, to engage in a boycott, or to exclude competitors from the market. *See FTC v. Actavis, Inc.,* 570 U.S. 136, 145 (2013) (drug manufacturer agreed to not "bring its generic to market"); *Toyo Tire v. Atturo Tire Corp.*, 2017 WL 1178224, *5 (N.D. Ill. Mar. 30, 2017) (settlement agreement required a "boycott" of plaintiff's products); *U.S. v. Singer Mfg*., 374

---

[1] Thus, contrary to Plaintiff's assertion, the defendant in *Liberty Lake* did not merely "reimburse[e] legal expenses," Opp. at 6-7, but actively induced other parties to sue.

DEFENDANTS FUTURE LINK'S & IPVALUE'S REPLY ISO
THEIR MOTION TO DISMISS AND TO STRIKE
PLAINTIFF'S COMPLAINT
Case No. 5:23-cv-02774-PCP

U.S. 174, 175 (1963) (conspiracy to exclude Japanese competitor from sewing machine market).

Plaintiff argues that "MediaTek's disparaging communications with Realtek's customers concerning litigation against Realtek also are not protected[,]" Opp. at 8, but the Complaint never alleges that **Future Link** communicated with or coerced any TV Chip customer or had any knowledge that MediaTek had done so (even assuming that happened). And Plaintiff's assertion that Future Link's protected conduct can still "be considered as part of Defendants' anticompetitive scheme," Opp. at 12, is flatly contrary to the Supreme Court's directive that, even if petitioning conduct is "intended to eliminate competition," it is still "not illegal, either standing alone, or as part of a broader scheme itself violative of the Sherman Act." *Pennington*, 381 U.S. at 670.

Plaintiff attempts to distract from these fundamental problems by citing inapposite authority. Plaintiff relies heavily on *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084 (N.D. Cal. 2007). But Hynix had defrauded a standard setting organization into adopting its patented technology, thereby locking in the entire industry. The *Hynix* court found that conduct, *not* litigation, to be anticompetitive. *Id.* at 1088. In contrast, here, the alleged anticompetitive conduct is, to use Plaintiff's own term, "*Anticompetitive Litigation.*" *E.g.* Opp. at 2 ("The Anticompetitive **Litigation** Bounty is the crux of this case"), 9 ("anticompetitive **litigation** campaign"), 22 ("use of its co-conspirators anticompetitive **litigation**").

### B. Plaintiff's "Series" Argument Fails As A Matter Of Law

Plaintiff next argues that a more lenient sham standard applies because the alleged conspiracy involves a "series of litigation[s]" instead of "one lawsuit." Opp. at 9.

As an initial matter, Plaintiff's "series" argument cannot be squared with the core premise of Plaintiff's own Complaint, which is that Future Link was allegedly solely motivated by ▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ so long as ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉ Plaintiff. Opp. at 1. If Future Link was truly motivated by ▉▉▉▉▉▉▉▉▉▉ rather than obtaining a "favorable outcome" on the merits, *Pro. Real Est. Invs. v. Columbia Pictures* ("*PRE*"), 508 U.S. 49, 60-61 (1993), then it would have no incentive to bring any more than one case. Any future lawsuits (*i.e.*, a "series") would be nonsensical. *See Herrera v. Cnty. of Los Angeles*, 482 F. App'x 263, 265 (9th Cir. 2012) (affirming dismissal where claim was "repeatedly

contradicted by other allegations in [the] complaint"); *Openwave Messaging v. Open-Xchange*, No. 16-CV-00253-WHO, 2016 WL 6393503, at *5 (N.D. Cal. Oct. 28, 2016) (claim "not plausible where its supporting factual allegations are contradictory").

In any event, Plaintiff's "series" assertion is insufficiently pled. The "series" exception applies where the defendant has filed voluminous baseless lawsuits intended to "inflict a crushing burden on a business." *Kaiser Found. v. Abbott Lab'ys*, 552 F.3d 1033, 1046 (9th Cir. 2009) (quoting *USS–POSCO Indus. v. Contra Costa Cnty.*, 31 F.3d 800, 810-11 (9th Cir.1994)). Plaintiff has not alleged that Future Link filed a "whole series" of litigations designed to cripple Plaintiff's business. *Kaiser*, 552 F.3d at 1046. At best, Plaintiff alleges that Future Link filed just "three . . . patent infringement actions against Realtek," Compl. ¶ 7 (one was an ITC proceeding on the same patents as one of the litigations), all of which were promptly dismissed after Future Link obtained a favorable settlement ███████████████. But "three lawsuits" (really two given one was a parallel ITC proceeding) "do not constitute a 'series.'" *Toyo Tire v. CIA Wheel Grp*., 2015 WL 4545187, at *3 (C.D. Cal. July 8, 2015); *see also ERBE Elektromedizin v. Canady Tech.*, 629 F.3d 1278, 1292 (Fed. Cir. 2010) ("[T]hree relevant lawsuits" do not constitute 'a whole series of legal proceedings.'"); *Coca-Cola Co. v. Omni Pac. Co.,* No. C 98-0784 S1, 1998 U.S. Dist. LEXIS 23277, at *24 (N.D. Cal. Dec. 9, 1998) ("[F]our lawsuits constitutes a small number, rather than a series.").[2]

Recognizing this, Plaintiff tries to fudge the numbers. It points to two actions that Future Link filed against **another company**, Amlogic (mentioned in just two paragraphs of the Complaint). Opp. at 10 n.6; Compl. ¶¶ 35, 39. But Plaintiff never explains how Future Link suing **Amlogic** could "inflict a crushing burden," *Kaiser*, 552 F.3d at 1046, on **Plaintiff**. It obviously would not, as suing its competitor would be more likely to help, not hurt, Plaintiff. *See Twin City Bakery v. Astra Aktiebolag,* 207 F. Supp. 2d 221, 224 n.2 (S.D.N.Y. 2002) (suits against other companies do not constitute a "series" of suits). Plaintiff also points to an alleged suit brought against it in Japan

---

**2** Plaintiff's proffered authority does not help it. In *Relevant Grp., LLC v. Nourmand*, 2022 WL 2916860 (C.D. Cal. July 25, 2022) the court found that the defendant had filed more than three suits and emphasized the "complex 'three-tiered' nature" of the CEQA suits at issue there. *Id.* at *14. In *Hanover 3201 Realty v. Village Supermarkets,* 806 F.3d 162, 181(3rd Cir. 2015), the defendant filed the maximum number of petitions it could (four), and this prevented the plaintiff from "obtaining all necessary government approvals" it needed to compete.

(mentioned in one paragraph of the Complaint), not by Future Link, but by another entity. Opp. at 10 n.6. That entity, however, is not a party to this case, nor has Plaintiff pled alter ego.[3]

In addition, Plaintiff's own authority holds that it "must demonstrate objective baselessness" under either the sham (*PRE*) or series (*USS-POSCO* ) approaches. *Catch Curve, Inc. v. Venali, Inc.*, 2008 WL 11334024, at *6 (C.D. Cal. Nov. 3, 2008); *see also Kaiser*, 552 F.3d at 1046 (series exception not met where defendant had a "plausible argument on which it could have prevailed"); *Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (alleged "series of baseless appeals" was insufficient where plaintiff "failed to plead with particularity" that defendant "knew its position was baseless"). Indeed, "[a]lthough baseless, repetitive and sham claims may be an abuse, multiplicity, by itself, does not vitiate the *Noerr-Pennington* protections." *Ad Visor, Inc. v. Pac. Tel. & Tel. Co.*, 640 F.2d 1107, 1109 (9th Cir. 1981) (*Noerr-Pennington* immunized 63 state court lawsuits regardless of whether they were "brought in furtherance of an anticompetitive scheme," because they were not shown to be shams). Plaintiff has failed to allege that any of Future Link's suits were objectively baseless, let alone that all, most, or even a majority were. Nor can it given that Future Link prevailed. According to the WDTX Order on which the Complaint relies, Future Link voluntarily dismissed the suits because it had obtained a favorable settlement from ███████████████████████████████████ thus resolving Future Link's claims against Plaintiff. Ex. 7 at 13; Mot. at 8. Contrary to Plaintiff's assertion, this holding was not "dicta." Opp. at 11. The WDTX relied on this favorable settlement in denying Plaintiff's sanctions and fees motions. Ex. 7 at 13. The fact that Future Link was "largely successful . . . cannot be reconciled with the theory that Defendants were threatening to sue and suing without regard to success*." B&G Foods v. Embry*, 29 F.4th 527, 539 (9th Cir. 2022). Indeed, Plaintiff's own proffered authority acknowledges that "ordinarily, settlement on terms favorable to a plaintiff suggests a suit is not objectively baseless." *FTC v. AbbVie Inc*, 976 F.3d 327, 367 (3d Cir. 2020).

Finally, Plaintiff has not alleged facts showing that Future Link's suits were filed solely "for the purpose of injuring a market rival." *USS-POSCO*, 31 F.3d at 811. Nor can it. Plaintiff never

---

[3] Even if this case could be considered, it is a pending case, and plaintiff has alleged no details about it. It would also just bring the total to at most four, so it still would not be a series.

addresses the WDTX's finding that the conditional payment provision was "not the but-for cause" of Future Link's suits. Ex. 7 at 12. The Complaint also concedes that Future Link's "business objective[]" is "monetizing patents through serial licensing and litigation." Compl. ¶ 16. It further alleges that Future Link sought "injunctions and an exclusion order . . . that shut Realtek out of the TV Chip market." Mot. at 10 (quoting Compl. ¶¶ 65, 67). This admission precludes any allegation that Future Link was filing suits without regard for their merits, because Future Link could not obtain an injunction unless it prevailed. *Or. Nat.*, 944 F.2d at 535 (affirming dismissal because "[plaintiff] concedes that [defendant] wanted the injunctive relief it requested in the underlying suit."). Plaintiff ignores this argument (and *Or. Nat.*) and thus concedes it. *Flower v. Wachovia Mortg.*, No. C 09-343 JF HRL, 2009 WL 975811, at *5 (N.D. Cal. Apr. 10, 2009).

### C. Plaintiff Is Precluded From Arguing Sham Litigation

The WDTX, which presided over two of the three lawsuits in the alleged "series," rejected the same conclusory allegations as appear in the Complaint in the very order on which the Complaint is largely based. Mot. at 10; RJN at 2-3.[4] Plaintiff does not (and cannot) dispute this, nor does Plaintiff provide any coherent explanation for why, regardless of preclusion, this Court should reject the finding of the very tribunals that oversaw the cases that Plaintiff now attacks as baseless.

As the Motion demonstrated, the standards for Rule 11 and objective baselessness are virtually identical, as shown by *PRE*'s reliance on Rule 11. Mot. at 11. Plaintiff does not dispute that *PRE* relied on Rule 11 for this purpose. And Plaintiff's cite to *Ni-Q, LLC v. Prolacta Bioscience*, 2019 WL 637703 (D. Or. Feb. 14, 2019) is misplaced. There the court concluded that a Rule 11 denial was not preclusive only because the order did "not state precisely what factors [the judge] relied on." *Id.* at *9. In contrast, the WDTX expressly considered and rejected the same allegations of baselessness that reappear in the Complaint. Plaintiff's argument that it did not have the opportunity to litigate in WDTX also fails. The WDTX considered numerous motions and exhibits on this question, and Plaintiff had the benefit of discovery (it is how Plaintiff obtained the MediaTek License, Opp. 4:28-5:1). Nor does Plaintiff ever explain what else it could or would have proffered

---

[4] In the third suit, the ITC also rejected Plaintiff's request for sanctions that made many of the same arguments recast in the Complaint. Mot. at 10-12; RJN at 3.

to obtain a different result, particularly given that once a plaintiff fails to plead objective baselessness, motive is irrelevant. *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1306 (Fed. Cir. 2004). In addition, the Ninth Circuit has expressly held that "[w]here a claim involves the right to petition governmental bodies under *Noerr-Pennington* . . . we apply a heightened pleading standard . . . [which] is necessary to avoid a chilling effect on the exercise of this fundamental First Amendment right." *Or. Nat.*, 944 F.2d at 533.[5] Plaintiff must satisfy this heightened pleading standard *before* it can obtain discovery. *See Whitaker v. Tesla Motors*, 985 F.3d 1173, 1177 (9th Cir. 2021) ("[P]leadings must assert well-pleaded factual allegations to advance to discovery.").

## III.    PLAINTIFF'S SHERMAN ACT § 2 CLAIM FAILS AS A MATTER OF LAW

Future Link's Motion sets forth additional reasons why Plaintiff's Section 2 conspiracy claim fails as a matter of law. Plaintiff does nothing to refute any of them, much less all of them.

### A.    Realtek Does Not And Cannot Allege Future Link Is A Competitor

The Motion demonstrated that: (i) the Complaint does not (and cannot) allege that Future Link is a competitor in the TV Chips market; and (ii) binding Ninth Circuit precedent and District precedent holds that an entity cannot conspire to monopolize a market in which it does not compete. *See* Mot. at 13 (citing *Mercy-Peninsula Ambulance v. San Mateo Cnty.*, 791 F.2d 755, 759 (9th Cir. 1986), and *Rheumatology Diagnostics v. Aetna, Inc.*, 2013 WL 5694452, at *16 (N.D. Cal. Oct. 18, 2013)). Realtek's opposition does not dispute that Future Link is not a competitor in the TV Chips market, and it does not even discuss *Mercy* (which is controlling) or *Rheumatology*.

Instead, Realtek obfuscates. It blatantly mischaracterizes *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995), Opp. at 16—the cited portion has nothing to do with whether a non-competitor can conspire to monopolize. Indeed, *Rebel Oil* concerned allegations of predatory pricing brought by a seller against, unlike here, a ***competitor*** in the market at issue. *Id.* at 1430. Realtek cites

---

[5] Plaintiff cites one case saying that "[c]ourts rarely award *Noerr-Pennington* immunity" on a motion to dismiss. Opp. at 2 (citing *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 555 F. Supp. 3d 829, 877 (N.D. Cal. 2021), which in turn cites two cases for that proposition. Yet Future Link cited seven cases from the Ninth Circuit and the districts within it granting or affirming motions to dismiss for failure to properly plead sham, nearly all of which the Opposition failed to address. And this District has recognized that the Ninth Circuit imposes a "heightened pleading burden" for complaint asserting sham litigation. *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-CV-00079-EMC, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018) (granting motion to dismiss).

*United Food v. Teikoku USA*, 74 F. Supp. 3d 1052 (N.D. Cal. 2014). However, while purporting to quote the court, Realtek quotes party argument. *Id.* at 1077. Moreover, in *United Food*, the court ***dismissed*** the case because neither of the purported conspirators was alleged to be a monopolist or to have conspired to monopolize. *Id.*at 1076 (plaintiffs "do not allege that either Endo or Teikoku individually possessed, threatened to possess, or conspired to possess monopoly power"). The court was not asked to ***sustain*** a claim against a defendant sued for conspiring to monopolize a market in which it does not compete—so the opinion is irrelevant and could not overrule *Mercy* in any event. Finally, Realtek cites *Curtin Maritime v. Santa Catalina Island Co*., 786 F. App'x 675 (9th Cir. 2019). That case is unreported and thus, not precedent at all, let alone precedent that could possibly overrule *Mercy*. Nor did *Curtin* address whether a party can "conspire to monopolize" a market in which it does not compete. The same is true for *In re NFL's Sunday Ticket*, 933 F.3d 1136 (9th Cir. 2019), and "cases are not precedential for propositions not considered" (much less decided). *U.S. v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022).

## B. Realtek's Conspiracy To Monopolize Allegations Fail

The Motion cited Ninth Circuit and District precedent holding that the Complaint's intent to monopolize allegations are deficient as a matter of law. *See* Mot. at 14. Plaintiff does not address this authority. Instead, like the Complaint, it relies entirely on the ████████████████████████ .

Plaintiff does not dispute that it would be against Future Link's interest to help MediaTek obtain a monopoly, as there would be no one else left in the market for Future Link to license. *See* Mot. at 16. Plaintiff counters that the ████████████████████ promised Future Link an ██████████████████████ Opp. at 18. But the Complaint alleges no facts regarding how this ██ ██████████ compares to the licensing revenue that Future Link could have obtained in a competitive market. Regardless, this most shows that Future Link had the intent to obtain ██ ██████████████, a result which Plaintiff acknowledges Future Link could have achieved by filing a single suit and then "voluntarily dismiss[ing]" it the next day. Opp. at 1. It does not show that Future Link had the specific intent to help MediaTek acquire a *monopoly*. Indeed, Plaintiff's conspiracy theory makes no sense. According to Plaintiff, the conspiracy required Future Link to bring "*multiple* meritless" litigations to harm Plaintiff's business. Opp. at 16. But if a single suit

would be sufficient to obtain ██ ████████████ , then every subsequent litigation simply dilutes the ████████████ . Thus, if Future Link were motivated by ████████████████████ , it would have a *disincentive* to bring "multiple" suits against Plaintiff. *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co*., 141 F.3d 947, 952 (9th Cir. 1998) ("Antitrust claims must make economic sense."). The Motion also demonstrated that ████████████████████ is similar to provisions in other contracts requiring licensors to sue infringers, which the Ninth Circuit held were not anticompetitive. Mot. at 15-16. Plaintiff's only response is that those cases involved exclusive licenses. But like an exclusive license, a non-exclusive license is of less value to the licensee if competitors are allowed to freely infringe. And the only authority Plaintiff cites involves class action counsel fees (Opp. at 7 n.3), which has absolutely nothing to do with the issue at hand.

Unable to plead facts showing a specific intent to monopolize on Future Link's part or even a coherent theory, Plaintiff raises irrelevancies. It claims that "PAE Defendants' litigation also targeted 'technology, components, and functions . . . essential for providing smart TV functionality.'" Opp. at 17. But according to the Complaint, the litigations were all meritless and had no chance of success, Compl. ¶¶ 26-35, so it is irrelevant whether or not they target purportedly "essential" components. Plaintiff also argues that "PAE Defendants' insistence on pursuing meritless patent claims was driven by *MediaTek's* commercial imperative—to harm its Chip rivals." Opp. at 17:3-4. But Plaintiff never addresses the authority Future Link cited, including from this District, holding that "[i]f a plaintiff brings a conspiracy claim against multiple defendants, it must plead that each such defendant had a specific intent to monopolize," which Plaintiff has not done as to Future Link. Mot. at 16 (quoting *NorthBay Healthcare v. Kaiser Found.*, No. 17-CV-05005, 2017 WL 6059299, at *8 (N.D. Cal. Dec. 7, 2017)).

Nor does Plaintiff's proffered authority help it. *Oxbow Carbon v. Union Pac. R.R.*, 81 F. Supp. 3d 1, 14 (D.D.C. 2015), which is out-of-circuit, involved railroads who conspired to divide markets, raise prices, and not compete in each other's markets. *Id.* at 11-12. Thus, by pleading facts showing the existence of this agreement among the railroads, the complaint by definition pleaded a conspiracy to monopolize. Similarly, *Confederated Tribes v. Weyerhaeuser Co.* involved a sawmill that intentionally overpaid for its own inputs (tree logs) to drive out competitors, a classic "predatory

bidding" scheme that serves only to obtain a monopoly. 411 F.3d 1030, 1037-43 (9th Cir. 2005).

Here, Future Link simply negotiated the best license fee it could, which was economically rational regardless of MediaTek's market share. *See Kendall v. Visa*, 518 F.3d 1042, 1049 (9th Cir. 2008) ("[F]acts that could just as easily suggest rational, legal business behavior . . . as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws."); Compl. ¶ 16 (Future Link's "business objectives [are to] monetiz[e] patents through serial licensing and litigation.").

**C.    Plaintiff Has Not Alleged Cognizable Antitrust Injury**

Future Link's Motion demonstrated that Plaintiff has failed to plead facts showing harm to ***competition,*** a required element of antitrust injury. Mot. at § IV.C. Plaintiff fails to even mention, much less address, ***any*** of the authority Future Link cited. Plaintiff also never disputes that: (1) to plead injury to competition, a plaintiff must plead facts showing increased prices, decreased quantity, or decreased quality; and (2) the Complaint pleads none of this. This compels dismissal.

Having alleged no facts of actual harm to competition, Plaintiff claims that "Defendants' sham litigation" allegedly "increas[ed] Realtek's costs." Opp. at 19. However, Future Link's Motion cited three directly-on-point cases from this District holding that litigation costs are solely an injury to Plaintiff, not competition. Mot. at 18 (citing *Chip-Mender, Inc. v. Sherwin-Williams Co.*, *Huawei Techs. v. Samsung Elecs.*, and *Girafa.com, Inc. v. Alexa Internet, Inc.*). Plaintiff does not address any of them, nor does it cite any authority to the contrary.

Instead, Plaintiff relies on *Arista* and *Funai*, Opp. at 18, but both of those cases involved exclusionary conduct *other* than filing litigation. *See Funai Elec. v. LSI Corp.*, No. 16-CV-01210-BLF, 2017 WL 1133513 at *6 (N.D. Cal. Mar. 27, 2017) ("Funai adequately has alleged that non-petitioning aspects of Defendants' alleged scheme . . . independently have caused Funai anticompetitive harm"); *Arista Network v. Cisco Sys.*, No. 16-cv-00923-BLF, 2018 WL 11230167, at *14 (N.D. Cal. May 21, 2018) (Defendant "engaged in anticompetitive behavior separate from the CLI litigation."). Both cases also involved classic harm to competition. *Arista* involved an alleged "open early, closed late" scheme whereby a company induces others to adopt its technology by making it openly available, and then reverses course to exclude rivals. *Id.* at *20. The court concluded that the plaintiff had pled adequate facts that this exclusionary conduct reduced output

by "restrict[ing] the customers from making free choices between different products," *id*.[6] Similarly, in *Funai,* the alleged exclusionary conduct consisted of deceiving a standard setting organization into adopting the defendant's technology as the industrywide standard, and then refusing to license its patents to competitors. *Funai*, 2017 WL 1133513, at *1. The court held that the plaintiff had adequately alleged facts showing that this conduct had "brought about . . . injury for downstream price, quality and innovation" as defendants were able to demand inflated and "improper royalties." *Id.* at *7.

Unlike *Funai* and *Arista*, the Complaint here does not allege that Future Link engaged in any exclusionary conduct independent from litigation, nor does it allege any facts showing increased prices, decreased quantity, or decreased quality. And while Plaintiff references the supposed "threat" of harm to competition in the future, it pleads no facts showing any basis for that "threat," nor does it plead any facts explaining why any such threat has failed to materialize given the alleged "conspiracy" has been in place for four years. Plaintiff's only allegation of harm is that the litigation "increas[ed] Realtek's costs.'" Opp. at 19 (quoting Compl. ¶ 84). But that is true of every litigation, as all litigation increases each side's "costs." If this allegation were sufficient, then any time a company sued its competitor it would constitute harm to competition. The law, however, is exactly to the contrary, as the Motion demonstrated (Mot. 18) and the Opposition simply ignores.

Plaintiff further relies on its conclusory assertion that "MediaTek coerced at least one TV Chip customer not to incorporate Realtek TV Chips into its products." Compl. ¶ 42. But the "Complaint fails to plausibly allege any output reduction or price increase . . . followed" from this alleged loss of a single unidentified prospective customer. *Unlockd Media v. Google*, No. 21-CV-07250-HSG, 2023 WL 6226379, at *5 (N.D. Cal. Sept. 22, 2023) (granting dismissal). Future Link's Motion cited numerous cases holding that an alleged loss of sales constitutes an injury to a ***competitor***, not ***competition***, Mot. at 19, and again, the Opposition does not address any of them. Instead, Plaintiff cites *Amarel v. Connell*, 102 F.3d 1494 (9th Cir. 1996) for the proposition that "[a]ntitrust injury can occur where even a single '[competitor] was either driven out of business or

---

[6] Plaintiff also cites *Glen Holly Ent., Inc. v. Tektronix, Inc*., but that case also involved allegations of fact showing restricted output. 352 F.3d 367, 374 (9th Cir. 2003).

suffered reduced profits.'" Opp. at 18. But the "where even a single" language is Plaintiff's, not the court's, and the portion of the opinion that Plaintiff quotes dealt with whether the plaintiff had "standing," not whether the alleged anticompetitive conduct injured the market for purposes of antitrust injury. *Id.* at 1509. Putting aside the fact that Plaintiff has not alleged that anyone (including Plaintiff) has been driven out of the market, the Ninth Circuit has made clear that even the "removal of one or a few competitors need not equate with injury to competition" absent evidence that this removal affected market wide factors such as "price" and "output." *Les Shockley v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989). None of that is present in Plaintiff's Complaint.

## IV.    PLAINTIFF'S STATE LAW CLAIMS SHOULD BE STRICKEN OR DISMISSED

The Motion demonstrated multiple grounds for striking Plaintiff's state law claims. Aside from a cursory discussion of two cases in a footnote, Plaintiff fails to address ***any*** of the authority Future Link cited, *compare* Mot. at 19-25, *with* Opp. at 20-25, and the arguments the Opposition does raise all fail as a matter of law.

### A.    Plaintiff's State Law Claims Arise From Protected Conduct

As the Motion demonstrated, step one of the anti-SLAPP analysis (*i.e.*, that the complaint arises from protected activity) is satisfied as a matter of law when a complaint either (1) alleges harm caused by defendant's lawsuits or (2) seeks to enjoin defendant's lawsuits. Mot. at 20 (citing *Minichino v. First Cal. Realty* and *Equilon Enters. v. Consumer Cause, Inc.*). The Complaint does both. Compl. ¶¶ 38, 65, 68. Plaintiff does not contend otherwise or even attempt to address Future Link's authority. This alone compels a finding that step one is satisfied.

Plaintiff argues that its attacks on protected activity merely "provide context," but the Complaint shows otherwise. *See, e.g.,* Compl. ¶¶ 4-8, 21-40, 42, 65-69, 79, 84, 87, 89. Plaintiff also argues that conduct is not protected where it constitutes a "sham," Opp. at 21 (citing out-of-district, non-binding authority), but as shown above, Plaintiff has not properly pleaded sham litigation.

### B.    Plaintiff's State Law Claims Are Barred By The Litigation Privilege

At step two of the anti-SLAPP analysis, all of Plaintiff's state-law claims fail because they are barred by the litigation privilege. Mot. at 21. Plaintiff argues that its claims under the UCL "unlawful" prong are not barred because "California's litigation privilege is inapplicable to

Realtek's federal antitrust claims." Opp. at 21. First, this does nothing to save Plaintiff's tortious interference claim. Second, Plaintiff's assertion is incorrect. Under binding California Supreme Court precedent, the litigation privilege is absolute and bars ***all*** state law claims other than malicious prosecution. *Silberg v. Anderson*, 50 Cal. 3d 205, 216 (1990). And while California's litigation privilege cannot bar a federal cause of action, it does bar a state UCL claim predicated on a violation of federal law. *Kane v. DeLong*, No. C-12-5437 EMC, 2013 WL 1149801, at *11 (N.D. Cal. Mar. 19, 2013) (litigation privilege barred UCL claim based on alleged "incipient violation of an antitrust law" and violation of the "policy or spirit" of such laws). Plaintiff relies on the Central District's *Nat. Immunogenics Corp. v. Newport Trial Grp*., 2016 WL 11520711 (C.D. Cal. Aug. 1, 2016), but there the plaintiff had brought a malicious prosecution claim, which is the sole exception to the litigation privilege. *Id.* at *14. And the Central District has expressly rejected as "unpersuasive" the argument that the "privilege does not apply" to a UCL action predicated on federal law. *Macy's Inc. v. Initiative Legal,* 2015 WL 12655379, at *1 (C.D. Cal. May 12, 2015).

Plaintiff cites *Hynix* for the proposition that Future Link's alleged "meritless litigation campaign can . . . 'be introduced as evidence of an overall course of anti-competitive conduct.'" Opp. at 21 (quoting *Hynix Semiconductor Inc. v. Rambus, Inc*., No. CV-00-20905 RMW, 2006 WL 1883353, at *2 (N.D. Cal. July 7, 2006)). But Plaintiff has not alleged that Future Link engaged in any "overall course of anticompetitive conduct" other than the litigation itself, and *Hynix* made clear that, where, as here, the alleged state law violation is predicated on the filing of a "lawsuit . . . California Civil Code section 47(b) bars such claims." *Id.* at *2. Moreover, Plaintiff does not dispute that its alleged damages stem from Future Link's patent suits. Thus, its state law claims are, as a matter of law, barred by the litigation privilege. *hiQ Labs, Inc. v. LinkedIn Corp*., 639 F. Supp. 3d 944, 967 (N.D. Cal. 2022) (claim barred where "the facts show that hiQ's alleged damages hinge entirely on" protected conduct).

### C.    Plaintiff's UCL And Tortious Interference Allegations Fail To State A Claim

Even beyond Noerr-Pennington and the litigation privilege, the Motion demonstrated multiple, independent failings of the state law claims, none of which Plaintiff even attempts to rebut.

**UCL Claim:**  Plaintiff admits that its UCL claim is predicated on alleged violations of

federal antitrust law. Opp. at 21. Because the federal claim fails, the UCL claim fails as well. Mot. at 22. In addition, because Plaintiff is not seeking cognizable UCL relief, Mot. at 23, the UCL claim fails for that reason as well. Plaintiff does not argue otherwise.

**Tortious Interference Claim:** The Motion demonstrated that, where an interference claim is based on the allegation that a "defendant induced another to undertake litigation," the plaintiff "must allege that the litigation was brought without probable cause." *Id*. at 23 (quoting *Pac. Gas & Elec. v. Bear Stearns*, 50 Cal. 3d 1118, 1137 (1990). Plaintiff does not argue otherwise, and as demonstrated above, the Complaint does not plead facts showing lack of probable cause. Plaintiff also does not dispute that the Complaint fails to identify any "specific ongoing business relationship" that Future Link's litigation has allegedly disrupted. Mot. at 23 (quoting *DocMagic, Inc. v. Ellie Mae, Inc*., 745 F. Supp. 2d 1119, 1154 (N.D. Cal. 2010)). Instead, Plaintiff argues that it "is not required to name specific customers in the Complaint." Opp. at 24. But Plaintiff has failed to allege ***any facts at all*** about this unidentified customer, including Future Link's knowledge of any alleged disruption. *Compare with Oracle Am. v. CedarCrestone, Inc.*, No. 12-CV-04626 NC, 2013 WL 3243885, at *3 (N.D. Cal. June 26, 2013) (identifying existing "Oracle software licensees" who had switched their business to the defendant); *Monex Deposit v. Gilliam*, 680 F. Supp. 2d 1148, 1162-64 (C.D. Cal. 2010) (defendant was plaintiff's former customer and had published false statements about the plaintiff on its website that were specifically addressed to the plaintiff's other customers). Plaintiff also argues that "as MediaTek's co-conspirators, PAE Defendants would still be liable even if they did not individually have the requisite knowledge." Opp. at 25. But Plaintiff cites no authority holding that a co-conspirator can be held liable without the requisite knowledge. Indeed, the elements of civil conspiracy require not only "knowledge" but also the "intent" to aid the allegedly unlawful conduct. *J. B. v. G6 Hosp*., No. 19-CV-07848-HSG, 2020 WL 4901196, at *11 (N.D. Cal. Aug. 20, 2020). The Complaint alleges no facts demonstrating that Future Link knew that MediaTek had supposedly "coerced" any Realtek customer, let alone that Future Link intended this result.

For all of these reasons, the state law claims against Future Link should be stricken.

Dated: October 12, 2023

Respectfully submitted,

IRELL & MANELLA LLP

By: */s/ A. Matthew Ashley*
A. Matthew Ashley
*Counsel for Defendants*
IPVALUE MANAGEMENT, INC., and
FUTURE LINK SYSTEMS, LLC

DEFENDANTS FUTURE LINK'S & IPVALUE'S REPLY ISO
THEIR MOTION TO DISMISS AND TO STRIKE
PLAINTIFF'S COMPLAINT
Case No. 5:23-cv-02774-PCP

- 16 -

## ECF ATTESTATION

I, Lucas S. Oxenford, am the ECF user whose ID and password are being used to file DEFENDANTS FUTURE LINK SYSTEMS, LLC'S AND IPVALUE MANAGEMENT, INC.'S REPLY ISO THEIR MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S COMPLAINT. I hereby attest that I received authorization to insert the signature indicated by a conformed signature (/s/) within this e-filed document.

By: */s/ Lucas S. Oxenford*

- 17 -

DEFENDANTS FUTURE LINK'S & IPVALUE'S REPLY ISO
THEIR MOTION TO DISMISS AND TO STRIKE
PLAINTIFF'S COMPLAINT
Case No. 5:23-cv-02774-PCP