KEVIN P.B. JOHNSON, SBN 177129
kevinjohnson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

SEAN S. PAK, SBN 219032
seanpak@quinnemanuel.com
ADAM B. WOLFSON, SBN 262125
adamwolfson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

KEVIN HARDY (*pro hac vice*)
D.C. Bar No. 473941
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
kevinhardy@quinnemanuel.com

*Attorneys for Defendant MediaTek Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

|  |  |
|---|---|
| REALTEK SEMICONDUCTOR CORP., <br><br> Plaintiff, <br><br> v. <br><br> MEDIATEK INC.; IP VALUE MANAGEMENT INC.; and FUTURE LINK SYSTEMS, LLC., <br><br> Defendants. | Case No. 5:23-cv-02774-PCP <br><br> **MOTION TO DISMISS FIRST AMENDED COMPLAINT BY MEDIATEK INC.** <br><br> Judge: Hon. P. Casey Pitts <br> Date Filed: June 6, 2023 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on Thursday, November 14, 2024 at 10:00 a.m., or as soon as the matter may be heard, before the Honorable P. Casey Pitts of the United States District Court, Northern District of California at Courtroom 8 – 4th Floor, 280 South 1st Street, San Jose, California, Defendant MediaTek Inc. will and hereby does move to dismiss Plaintiff Realtek Semiconductor Corp.'s First Amended Complaint (Dkt. 129) under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. The motion is based upon this notice of motion, the supporting memorandum of points and authorities, and such evidence as may be requested or permitted by the Court.

Dated: August 19, 2024        By: */s/ Adam Wolfson*

KEVIN P.B. JOHNSON, SBN 177129
kevinjohnson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

SEAN S. PAK, SBN 219032
seanpak@quinnemanuel.com
ADAM B. WOLFSON, SBN 262125
adamwolfson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

KEVIN HARDY (pro hac vice)
D.C. Bar No. 473941
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
kevinhardy@quinnemanuel.com

*Attorneys for Defendant MediaTek Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

LEGAL STANDARD .........................................................................................................4

ARGUMENT .......................................................................................................................4

I.    *NOERR-PENNINGTON* IMMUNITY STILL BARS REALTEK'S CLAIMS..................4

    A.    Realtek Again Fails To Plausibly Allege An Actionable "Series" ...........................5

        1.    *The Patent License Agreement Does Not Incentivize A "Series"* .................5

        2.    *There Are Not Enough Lawsuits For A "Series"* ...........................................6

        3.    *Realtek Does Not Identify Any Actual "Crushing Burden"* ..........................6

        4.    *Realtek Fails To Allege That IPV Was Disinterested In Litigation Outcomes* ........................................................................................................8

    B.    Realtek's Sham Litigation Allegations Are Not Remotely Plausible ......................8

II.   REALTEK FAILS TO ALLEGE A THEORY THAT MAKES ECONOMIC SENSE...................................................................................................................................9

III.  REALTEK FAILS TO PLAUSIBLY ALLEGE ANTITRUST INJURY .........................11

    A.    Realtek Does Not Plausibly Allege Harm To Competition ....................................11

    B.    Realtek Does Not Identify MediaTek's "Misrepresentations" With Sufficient Particularity, Nor Plausibly Satisfy The Multi-Factor *Harcourt Brace* Test ..............................................................................................................12

IV.   REALTEK DOES NOT PLAUSIBLY ALLEGE ANY CAUSAL LINK BETWEEN DEFENDANTS' CONDUCT AND ITS SUPPOSED INJURY ..................14

V.    REALTEK FAILS TO STATE A SECTION 1 ANTITRUST CLAIM ...........................16

    A.    Realtek Does Not Plausibly Allege An Agreement To Bring A Series Of Lawsuits ..................................................................................................................16

    B.    Realtek Does Not Plausibly Allege An Agreement To Bring Any Single Lawsuit ...................................................................................................................17

VI.   REALTEK DOES NOT STATE A CLAIM FOR FALSE ADVERTISING ...................17

A.   Realtek Fails To Identify Any False, Misleading Statements With
Particularity ................................................................................................18

B.   The FAC Establishes Any Alleged Misstatements Were Not "Commercial
Advertising Or Promotion" ..........................................................................18

C.   Realtek Does Not Allege Any Extrinsic Evidence Establishing MediaTek
Confused Or Actually Misled Any Customers ...............................................19

VII.   REALTEK'S STATE LAW CLAIMS ALSO FAIL ..................................................19

A.   Realtek's State Claims Are Barred By The California Litigation Privilege ............19

B.   Realtek Fails To State A UCL Violation ..................................................................20

1.   *Realtek Does Not Plead A Violation Of The Antitrust Laws* .......................20

2.   *Realtek Does Not Plead An Incipient Violation Of The Antitrust
Laws* .................................................................................................21

3.   *The FTC Act And Policy Statement Provide No Substitute* ..........................21

4.   *Realtek Does Not Plead A Claim Under The Fraudulent Prong* .................22

C.   The UCL Action Is Independently Barred ................................................................22

1.   *The Patent Act Provides A Safe Harbor Under the UCL* .............................22

2.   *Realtek Cannot Show Threat Of Future Harm To Obtain Recovery* ...........23

D.   The Tortious Interference Claim Is Barred And Inadequately Plead ......................24

VIII.   FURTHER AMENDMENT WOULD BE FUTILE .................................................25

CONCLUSION ...........................................................................................................................25

MEDIATEK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:23-CV-02774-PCP

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*,
141 F.3d 947 (9th Cir. 1998) ................................................................... 9, 12

*Am. Prof. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof. Pub., Inc.*,
108 F.3d 1147 (9th Cir. 1997) ........................................................................ 13

*Anthony Cal., Inc. v. Fire Power Co., Ltd.*,
2018 WL 11352483 (C.D. Cal. Aug. 9, 2018) ................................................. 23

*In re Apple iPod iTunes Antitrust Litig.*,
796 F. Supp. 2d 1137 (N.D. Cal. 2011) .......................................................... 14

*Arthur J. Gallagher & Co. v. Lang*,
2014 WL 6816644 (N.D. Cal. Dec. 3, 2014) ............................................. 19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................... 4

*Aspex Eyewear, Inc. v. Vision Serv. Plan*,
389 F. App'x 664 (9th Cir. 2010) .................................................................... 21

*Austin v. Ford Models, Inc.*,
149 F.3d 148 (2d Cir. 1998) .............................................................................. 7

*Avery Dennison Corp. v. Acco Brands, Inc.*,
2000 WL 986995 (C.D. Cal. Feb. 22, 2000) .................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 16

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ......................................................................... 11

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ........................................................................................ 11

*Caccuri v. Sony Interactive Ent. LLC*,
2022 WL 2789554 (N.D. Cal. July 15, 2022) .................................................. 21

*Cargill Inc. v. Progressive Dairy Solutions, Inc.*,
2008 WL 2235354 (E.D. Cal. May 29, 2008) .................................................. 20

-iv-

*Cel-Tech Commn's, Inc. v. L.A. Cellular Rel. Co.*,
    20 Cal 4th 163 (1999)................................................................................................20, 22

*Chip-Mender, Inc. v. Sherwin-Williams Co.*,
    2006 WL 13058 (N.D. Cal. Jan 3, 2006) ..............................................................22

*Chodos v. West Publ'g Co.*,
    292 F.3d 992 (9th Cir. 2002)...............................................................................25

*City of San Jose v. Office of Com'r of Baseball*,
    776 F.3d 686 (9th Cir. 2015)...............................................................................21

*CKE Rest. v. Jack in the Box, Inc.*,
    494 F. Supp. 2d 1139 (C.D. Cal. 2007) ..............................................................19

*Coastal Abstract Serv. v. First Am. Title*,
    173 F.3d 725 (9th Cir. 1999)...............................................................................17

*ComputerXpress, Inc. v. Jackson*,
    93 Cal. App. 4th 993 (2001)................................................................................25

*Conso v. City of Eureka*,
    2022 WL 409958 (N.D. Cal. Feb. 10, 2022).........................................................4

*CRST Van Expedited, Inc. v. Werner Enter., Inc.*,
    479 F.3d 1099 (9th Cir. 2007).............................................................................24

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010)...............................................................................12

*Designing Health, Inc. v. Erasmus*,
    2001 WL 36239748 (C.D. Cal. Apr. 24, 2001) ..................................................20

*Dreisbach v. Murphy*,
    658 F.2d 720 (9th Cir. 1981)...........................................................................21-22

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) ......................................................21

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014)...............................................................................10

*eCash Tech., Inc. v. Guagliardo*,
    127 F. Supp. 2d 1069 (C.D. Cal. 2000)..............................................................20

*E. R.R. Pres. Conf. v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961) ..............................................................................................5

*In re Enron Corp.*,
    370 B.R. 583 (Bankr. S.D.N.Y. 2007) ...............................................................7, 8

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) ........................................................................................ 20

*F.T.C. v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) .................................................................................. 11, 12

*Facebook, Inc. v. BrandTotal Ltd.*,
  2021 WL 662168 (N.D. Cal. Feb. 19, 2021) ................................................................ 21

*Fitbit, Inc. v. Laguna 2, LLC*,
  2018 WL 306724 (N.D. Cal. Jan. 5, 2018) .................................................................... 5

*Frenzel v. AliphCom*,
  76 F. Supp. 3d 999 (N.D. Cal. 2014) ............................................................................. 4

*G.U.E. Tech, LLC v. Panasonic Avionics Corp.*,
  2016 WL 6138422 (C.D. Cal. Feb. 4, 2016) ................................................................ 18

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .................................................................................... 4, 6

*Handgards, Inc. v. Ethicon, Inc.*,
  601 F.2d 986 (9th Cir. 1979) ....................................................................................... 23

*Hardley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ....................................................................... 21

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
  527 F. Supp. 2d 1084 (N.D. Cal. 2007) ................................................................... 22-23

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
  552 F.3d 1033 (9th Cir. 2009) ................................................................................... 5, 23

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ...................................................................................... 16

*Klein v. Facebook, Inc.*,
  580 F. Supp. 3d 743 (N.D. Cal. 2022) ..................................................................... 12, 13

*LAIF X SPRL v. Axtel, S.A. de C.V.*,
  390 F.3d 194 (2d Cir. 2004) ......................................................................................... 24

*Liberty Lake Invs., Inc. v. Magnuson*,
  12 F.3d 155 (9th Cir. 1993) ............................................................................................ 4

*LivePerson, Inc. v. [24]7.ai, Inc.*,
  2018 WL 5849025 (N.D. Cal. Nov. 7, 2018) ............................................................... 19

*LiveUniverse, Inc. v. MySpace, Inc.*,
  304 F. App'x 554 (9th Cir. 2008) ................................................................................. 21

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) (en banc) ............................................................. 25

*McNair v. City & Cty. of San Francisco*,
    5 Cal. App. 5th 1154 (Ct. App. 2016) .................................................................. 19

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ............................................................................ 18

*New Directions Program v. Sierra Health & Wellness Ctrs. LLC*,
    2024 WL 1533284 (E.D. Cal. Apr. 9, 2024) ...................................................... 18

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ............................................................................ 19

*In re Nexus 6P Prods. Liability Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ............................................................... 23

*Nguyen v. Encologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ............................................................................. 10

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
    838 Fed. App'x 231 (9th Cir. 2020) ................................................................... 11

*OG Int'l, Ltd. v. Ubisoft Entm't*,
    2012 WL 4809174 (N.D. Cal. Oct. 9, 2012) ........................................................ 5

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018) ............................................................................................ 11

*In re Online DVD Rental Antitrust Litig.*,
    2010 WL 2680837 (N.D. Cal. July 6, 2010) ...................................................... 15

*Oracle Int'l Corp. v. Rimini St., Inc.*,
    2023 WL 4706127 (D. Nev. July 24, 2023) ....................................................... 13

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) ....................................................................................... 24

*PetConnect Rescue, Inc. v. Salinas*,
    656 F. Supp. 3d 1131 (S.D. Cal. 2023) .............................................................. 18

*PLS.Com, LLC v. Nat'l Assoc. of Realtors*,
    32 F.4th 824 (9th Cir. 2022) .............................................................................. 11

*Prof. Real Est. Invs., Inc. v. Columbia Pic. Indus., Inc.*,
    508 U.S. 49 (1993) ................................................................................................ 8

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004) .................................................................... 22, 23

MEDIATEK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:23-CV-02774-PCP

*Reddy v. Litton Indus., Inc.*,
　　912 F.2d 291 (9th Cir. 1990) ........................................................................ 7, 8

*Reilly v. Apple Inc.*,
　　578 F. Supp. 3d 1098 (N.D. Cal. 2022) ........................................................ 11, 21

*Ritz Camera & Image, LLC v. SanDisk Corp.*,
　　700 F.3d 503 (Fed. Cir. 2012) ............................................................................ 23

*Rubin v. Green*,
　　4 Cal. 4th 1187 (1993) ........................................................................................ 19

*Schmitt v. SN Serv. Corp.*,
　　2021 WL 5279822 (N.D. Cal. Nov. 12, 2021) .................................................... 22

*Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*,
　　652 F.2d 852 (9th Cir. 1981) .............................................................................. 24

*Silberg v. Anderson*,
　　50 Cal. 3d 205 (1990) .................................................................................... 19, 20

*Sliding Door Co. v. KLS Doors, LLC*,
　　2013 WL 2090298 (C.D. Cal. May 1, 2013) ........................................................ 5

*Sosa v. DIRECTV, Inc.*,
　　437 F.3d 923 (9th Cir. 2006) ................................................................................ 5

*Southland Sod Farms v. Stover Seed Co.*,
　　108 F.3d 1134 (9th Cir. 1997) ............................................................................ 17

*Taser Int'l, Inc. v. Bestex Co.*,
　　2007 WL 2947564 (C.D. Cal. Feb. 9, 2007) ...................................................... 19

*Tate v. Pac. Gas & Elec. Co.*,
　　230 F. Supp. 2d 1072 (N.D. Cal. 2002) ........................................................ 13, 14

*Theme Promotions, Inc. v. News Am. Mktg, FSI*,
　　546 F.3d 991 (9th Cir. 2008) ...................................................................... 5, 7, 11

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
　　709 F. Supp. 2d 821 (C.D. Cal. 2010) ................................................................ 14

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
　　420 F. Supp. 3d 966 (N.D. Cal. 2019) .................................................................. 9

*Universal Grading Serv. v. eBay, Inc.*,
　　2011 WL 846060 (N.D. Cal. Mar. 8, 2011) .......................................................... 9

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*,
　　31 F.3d 800 (9th Cir. 1994) .................................................................................. 6

MEDIATEK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:23-CV-02774-PCP

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................................... 13, 22

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ............................................................................ 5

*Zhang v. Sup. Ct.*,
    57 Cal. 4th 364, 376 (2013) ............................................................................. 21

## **Rules/Statutes**

15 U.S.C. § 45 ............................................................................................... 20, 21, 22

15 U.S.C. § 1125(a)(1)(B) ................................................................................... 17

35 U.S.C. § 271 ................................................................................................... 22

Cal Bus. & Prof. Code § 17200 ......................................................................... 20

Federal Rule of Civil Procedure 9(b) ................................................ 4, 12, 17, 18, 22

## INTRODUCTION

The fundamental facts of this case have not changed. By its plain terms, the "Bounty" agreement that is the centerpiece of Realtek's claims did not require IPV[1] to file a lawsuit (let alone a meritless one), never specified the subject matter of any lawsuit, could be satisfied through a license without litigation, did not mention (let alone require) any series of lawsuits, and could be satisfied just by "institut[ing]" a single lawsuit. *See* ¶103.[2] Moreover, the "Bounty" applied if IPV did any of this with respect to Realtek *or* Amlogic. *Id.*

In its First Amended Complaint ("FAC"), Realtek nevertheless attributes a "barrage of objectively baseless patent suits" (¶113) to the license agreement as well as to unspecified "multiple agreements either express or implied" (¶119). But that "barrage" is the same limited number of actions previously alleged in the original complaint: two suits in the Western District of Texas, one before the International Trade Commission ("ITC"), and another in Japan. The FAC now conclusorily alleges a "litigation campaign" against Amlogic, but does not allege Amlogic lost any customers or otherwise suffered injury, and does not allege any substantive reason any lawsuit against Amlogic was objectively baseless or subjectively improper.

With respect to this purported "barrage," the Court has already taken judicial notice of the facts that: (i) Future Link sued more than ten separate entities, including companies outside the alleged TV Chip market, such as Qualcomm, based on their common use of an ARM processor; (ii) these litigations ended not with defense verdicts, but with third-parties receiving licenses to Future Link's patents; (iii) the other courts *denied* Realtek's motions for sanctions, rejecting the argument that IPV's lawsuits were baseless, objectively unreasonable, insufficiently investigated, or (in the case of the ITC) motivated by the license agreement. Order at 6-7.[3] The FAC does not address these judicially noticed facts.

---

[1]  Defendants IPValue Management Inc. ("IPValue"), and Future Link Systems, LLC ("Future Link") are referred to herein together as "IPV."

[2]  All paragraph ("¶") citations are to the FAC unless specified otherwise. All internal citations and quotation marks are omitted unless otherwise noted.

[3]  "Order" refers to the Court's May 3, 2024 Order Granting Motions to Dismiss and to Stay, Granting Motion to Seal in Part, and Denying Motion to Strike (Dkt. 95).

---

Also notable is that, although the FAC ostensibly adds more words on competitive harm than the original complaint, it never explains: (i) how a small number of short-lived lawsuits, all of which were allegedly obviously baseless, could plausibly exert market-wide effects; (ii) how Realtek, let alone all of MediaTek's TV Chip competitors, had to raise prices or reduce quality due to the IPV lawsuits; (iii) how the number or overall quality of TV Chips has gone down due to the alleged conduct; or (iv) that any competitor refrained from entering or competing as vigorously in the market as a result. *See generally* ¶¶247-67. Furthermore, the earliest harm Realtek identifies to itself occurred in the second half of 2022, months *after* the Western District of Texas stayed IPV's case and stated it planned to dismiss, and months *after* the ITC indicated it likely would do the same. *Id.* ¶¶127, 137, 229.

Although the FAC is three times the length of the original complaint, that merely confirms the fact that quantity does not equal quality. Realtek still fails to plausibly state a single valid claim, for a multitude of reasons.

*First*, Realtek's core argument remains that it was the target of baseless litigation. But now, instead of just alleging a "series"-based antitrust claim, Realtek also alleges that *each* lawsuit was a sham. What Realtek does not do, however, is grapple with (or even acknowledge) the holdings of the ITC and Western District of Texas that IPV brought its lawsuits in good faith. Nor does Realtek remedy the fact that the limited number of lawsuits against it did not constitute an actionable "series" of lawsuits. The FAC's extended digression about patent trolls (¶¶187-218) likewise fails to say *anything* about how the specific, short-lived litigation by IPV actually imposed the necessary "crushing burden" on Realtek. Stripped of its overheated rhetoric, the FAC challenges conduct that, as a matter of law for *all* of the asserted claims, is immune under the *Noerr-Pennington* doctrine.

*Second*, Realtek's zeal to add more words also actively *undermines* the plausibility of the purported scheme, because the scheme alleged makes no economic sense and is belied by the plain terms of the so-called "Bounty" agreement. Realtek now alleges the so-called "Bounty" provision was "carefully-lawyered" (¶¶40, 119). But as the Court already held, "[b]y the agreement's own terms, … MediaTek owed Future Link the full amount of the incentive upon the filing of a *single* initial lawsuit against Realtek." Order at 11 (emphasis in original). The "carefully-lawyered"

agreement did not require a "barrage" of lawsuits; made no mention of any specific patents IPV should assert; and contained no incentives for IPV to do anything but the bare minimum to obtain its extra royalty money. Yet Realtek clings to it as the core evidence demonstrating a broad scheme to harm competition, ignoring the fact that if the goal was to harm MediaTek's "closest" competitor (*e.g.*, ¶¶73, 117), it would be an odd choice to make the "Bounty" payable on a license *or* lawsuit against Realtek *or* Amlogic, a "more distant" competitor (¶116). That is exactly what Realtek concedes happened before IPV ever sued Realtek. *See* ¶¶103-08. It makes no sense.

*Third*, Realtek continues to pretend that harm to itself is harm to competition without substantiating that assertion. While Realtek baldly asserts that Defendants' actions caused prices of Smart TVs incorporating TV Chips to go up and therefore hurt end consumers, it never explains why or how those price increases stemmed from the supposedly-baseless IPV lawsuits rather than— as Realtek's own allegations highlight—a well-publicized global supply chain disruption affecting prices for every component of electronics, including (again, according to Realtek's citations in the FAC) the most expensive part of smart TVs: LCD screens.

*Fourth*, Realtek's causation allegations also fail. The FAC asserts lost business due to purported sham litigation and MediaTek's "misrepresentations" about IPV's litigation, but alleges those all occurred *at the earliest* several months *after* the Western District of Texas publicly stated the claims would be dismissed. *See* ¶¶127, 229. Realtek does not explain how any potential customers would have reasonably feared losing access to Realtek chips from patent infringement lawsuits when public information showed those lawsuits would end. Nor does Realtek plausibly allege that any of its supposed losses stemmed from *MediaTek's* conduct or the IPV lawsuits, and it fails to plausibly allege that MediaTek's supposed misrepresentations satisfied the binding *Harcourt Brace* factors.

*Fifth*, Realtek's threadbare assertion that it "unearthed a broader scheme and series of agreements" (¶40) cannot support a claim, under Section 1 of the Sherman Act or otherwise. *See also* ¶119 (vaguely asserting "there were multiple agreements either express or implied"). The FAC never identifies these other, non-"Bounty" agreements, their terms, or their scope—it just baldly asserts they exist. That is not enough under the plausibility standard, and, indeed, are the exact sort

of bare allegations *Twombly* explicitly rejected.

*Finally*, Realtek's remaining claims fare no better, whether on plausibility or substance. The Lanham Act claim—which is governed by Rule 9(b)—fails to identify any false statement, does not plead the required "commercial" speech, and also lacks the required sufficient dissemination of such false commercial speech. The UCL claim fails because the FAC does not adequately allege any conduct that is unlawful, unfair, or fraudulent. The tortious interference claim is barred by California's litigation privilege and fails to adequately allege any customers or economic injury.

For these reasons, the Court should dismiss the FAC with prejudice.

## LEGAL STANDARD

A plaintiff must plead enough "factual content" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This must be more than "sheer possibility that a defendant has acted unlawfully." *Id.* On a motion to dismiss, the court assumes the allegations' truth and "construe[s] them in the light most favorable to plaintiffs," but does not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court also need not accept "allegations that contradict matters properly subject to judicial notice or by exhibit." *Id*. For plausibility, a court should also "draw on its judicial experience and common sense." *Conso v. City of Eureka*, 2022 WL 409958, at \*5 (N.D. Cal. Feb. 10, 2022). It is proper "to reject, as implausible, allegations that are too speculative to warrant further factual development." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1005 (N.D. Cal. 2014).

## ARGUMENT

### I. *NOERR-PENNINGTON* IMMUNITY STILL BARS REALTEK'S CLAIMS

Like the original complaint, the FAC centers on the allegation that MediaTek supposedly promoted third-party litigation against Realtek. Even if true, such conduct is within the scope of *Noerr-Pennington* immunity. *See Liberty Lake Invs., Inc. v. Magnuson*, 12 F.3d 155, 157-59 (9th Cir. 1993); Order at 8 (agreeing *Liberty Lake* applies to these facts). *Noerr-Pennington* also applies to Realtek's allegation that MediaTek sought to convince customers not to use Realtek's products based on its involvement in litigation. In *Noerr* itself, immunity applied "not only to the railroad's

direct communications with legislators but also to its public relations campaign" regarding those government petitions. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006) (discussing *E. R.R. Pres. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140-43 (1961)).

*Noerr-Pennington* immunity is not limited to Realtek's antitrust claims; it also applies to each of the other claims Realtek asserts. *See, e.g.*, *Theme Promotions, Inc. v. News Am. Mktg, FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (tortious interference claims); *OG Int'l, Ltd. v. Ubisoft Entm't*, 2012 WL 4809174, at *3 (N.D. Cal. Oct. 9, 2012) (unfair competition and tortious interference claims); *Sliding Door Co. v. KLS Doors, LLC*, 2013 WL 2090298, at *6 (C.D. Cal. May 1, 2013) (applying *Noerr* to Lanham Act federal false advertising claim); *see also White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) ("While the *Noerr-Pennington* doctrine originally arose in the antitrust context, it is based on and implements the First Amendment right to petition" and thus "applies equally in all contexts," including to state law claims).

Recognizing the immunity issue, Realtek alleges that its claims fall within one or both of two exceptions to *Noerr-Pennington* immunity: (1) sham litigation, and (2) the so-called "series" exception. *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1045 (9th Cir. 2009). But *Noerr-Pennington* exceptions are subject to a "heightened pleading requirement" to avoid "chill[ing] the exercise of First Amendment rights," and Realtek cannot meet that pleading standard. *See Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018). The Court previously held that the series exception does not apply, and the FAC does not contain any allegations that could plausibly change this conclusion. Realtek's belated effort to plead the sham exception similarly fails.

A.    **Realtek Again Fails To Plausibly Allege An Actionable "Series"**

The FAC conspicuously fails to cure any of the numerous defects the Court previously identified for why Realtek cannot satisfy the "series" exception.

1.    *The Patent License Agreement Does Not Incentivize A "Series"*

Although the FAC insinuates there were "multiple" agreements (¶119) that motivated multiple lawsuits, the only agreement Realtek actually identifies is the "Bounty" agreement. Because Realtek fails to identify even the most basic information about other "agreements," the

MEDIATEK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:23-CV-02774-PCP

1   Court may disregard those entirely. *See Gilead*, 536 F.3d at 1055; *see also*, *e.g.*, ¶40 (alleging a

2   "series of agreements" without identifying any but the "Bounty" agreement); *infra* at 16-17.

3       As the Court noted, and Realtek **concedes** (¶119), the "Bounty" agreement triggers payment

4   on a single license *or* lawsuit with either Realtek *or* Amlogic. Order at 11. The FAC also makes

5   clear that IPV ██████████████████████████████████████ ¶119 (quoting IPV).

6   With no plausible allegations of any agreement requiring a series of lawsuits—let alone against

7   Realtek, instead of Amlogic, or vice versa—Realtek still fails to allege the series exception.

8              *2.    There Are Not Enough Lawsuits For A "Series"*

9       Citing binding authority, the Court previously noted it was "doubtful" that the Texas, ITC,

10  and Japanese litigation—even taken together—would be "sufficient to constitute a 'series' for

11  purposes of the sham exception." Order at 11. Yet, the FAC alleges the same lawsuits as the original

12  complaint, ignoring that, although there were technically four proceedings, "the underlying claims

13  arise from only three patents, two of which were asserted side-by-side." Order at 12.

14      Realtek tries to get around this problem by implying that IPV's license negotiations and

15  separate lawsuits against Amlogic could be part of the actionable "series." But that "litigation

16  campaign," ¶15, consisted of just two cases, one of which lasted barely a year and the other less

17  than that. ¶¶149, 158. Moreover, Realtek tried to make this same argument before, *see* Dkt. 63 at

18  10-11, and the Court rejected this attempt by focusing on the lawsuits against Realtek. Order at 12.

19  Moreover, and in any event, the FAC does not explain how IPV's short-lived litigation against

20  Amlogic could have plausibly been undertaken to injure Realtek, as required under the "series"

21  exception case law. *See USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council,*

22  *AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994).

23             *3.    Realtek Does Not Identify Any Actual "Crushing Burden"*

24      The series exception to *Noerr-Pennington* is intended to guard against the kind of improper

25  uses of litigation that impose a "crushing burden" on the targets of the series of lawsuits. *Id.* The

26  FAC uses the phrase "crushing burden" and alleges that imposing "crushing burdens" is what patent

27  trolls "do best," but it does not allege with any specificity that *Realtek* suffered or would have

28  suffered such burdens here, beyond a general reference to "time, money, and capacity" spent

-6-

defending lawsuits and unspecified loss of "customer goodwill and sales opportunities." ¶188. For the reasons explained below, *see* Sections II-IV, such allegations lack necessary factual content and are implausible.

The only other allegation along these lines is the assertion that "Defendants are imposing on Realtek [] the crushing burden" of having to choose "between paying illegitimate royalties that sap resources from competition and innovation, or facing a practically limitless thicket of meritless patent claims[.]" ¶196. But Realtek does not explain why paying for a patent license—exactly like MediaTek did—would be "crushing," and it noticeably deleted its prior admission that the only reason it expended any significant litigation costs at all is due to Realtek's own policy of fighting non-practicing entities to the end. This deletion, in and of itself, shows the implausibility of the current allegations. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990) (an "amended complaint may only allege other facts consistent with" a prior pleading). Indeed, amendment is improper "where, by omitting allegations from the previously filed complaint, the plaintiff seeks to 'erase' admissions that are contained in it." *In re Enron Corp.*, 370 B.R. 583, 597 (Bankr. S.D.N.Y. 2007).[4]

In any event, the fact that IPV's litigation against Realtek's co-defendants resulted in a license and settlement indicates there was objective merit to the lawsuits, rendering the "series" exception inapplicable. *Theme Promotions*, 546 F.3d at 1008 (settlement "suggests that the original suit was not objectively baseless"). The FAC's exaggeration of the small number of short-lived and purportedly obviously meritless claims into a "limitless thicket" of litigation is simply rhetoric without any basis in fact or, more important, plausibility.[5] As noted above, it is illogical that lawsuits against Amlogic could have plausibly been undertaken to injure Realtek, and it makes even less

---

[4] *See also Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) ("The district court denied Austin's motion for leave to file a second amended complaint, which omitted the admissions in the first amended complaint, on the basis that Austin could not by these omissions 'erase' the admissions in her first amended complaint. We agree.").

[5] The FAC also engages in a highly creative effort to transform evidence of the absence of significant litigation costs into a crushing burden—for example, portraying the *dismissal* of a lawsuit as evidence of "crushing burden" because the dismissal was without prejudice. ¶172.

1    sense to suggest that such lawsuits would impose a "crushing burden" on Realtek.

2              4.      *Realtek Fails To Allege That IPV Was Disinterested In Litigation Outcomes*

3          The Court previously recognized that "Realtek's allegations suggest, however, that the

4    defendants genuinely desired the relief sought in the four proceedings." Order at 12 (citing Compl.

5    ¶65). The FAC conveniently excised the allegations that disproved improper subjective intent, but,

6    as noted above, tactical amendment inconsistent with previous allegations is not permitted. *See*

7    *Reddy*, 912 F.2d at 297; *Enron*, 370 B.R. at 597. More fundamentally, the allegation to which the

8    Court previously referred—concerning the relief sought by IPV—remains true and subject to

9    judicial notice, notwithstanding Realtek's attempt to sweep it under the rug.[6]

10         The FAC also alleges that NPEs' *entire purpose* is to extract licensing payments. *See*, *e.g.*,

11   ¶120, and attributes this strategy to IPV. *See* ¶32 (IPV allegedly operates by "acquir[ing] patents,

12   and us[ing] its patent portfolio to extract licensing payments from manufacturers"). That renders

13   implausible the idea that IPV undertook litigation as an "anticompetitive weapon" to influence an

14   entire market, rather than to obtain licensing payments *for IPV*.

15   **B.      Realtek's Sham Litigation Allegations Are Not Remotely Plausible**

16         To establish the sham exception, Realtek must plausibly allege IPV's lawsuits were both

17   "objectively baseless" and subjectively motivated to harm competition. *See Prof. Real Est. Invs.,*

18   *Inc. v. Columbia Pic. Indus., Inc.*, 508 U.S. 49, 60 (1993). Without objective baselessness, however,

19   it is unnecessary—indeed, irrelevant—for the Court to even consider subjective motivation. *Id.*

20         Realtek's allegations cannot plausibly establish objective baselessness. Multiple courts have

21   *rejected* its assertions that no reasonable lawyer would have ever brought IPV's lawsuits. The Court

22   has already taken judicial notice of these rulings, and it is telling (and dispositive) that Realtek

23   ignores them.

24         In rejecting Realtek's arguments, the ITC stated that "Realtek's allegations regarding a

25   defective Complaint are not substantiated." Dkt. 49 at 6; Dkt. 49-6 at 1. Likewise, the Western

26

27   _____

     [6] The FAC also conveniently revises upward its allegations of MediaTek's market share.
28   *Compare* Dkt. 1 (Original Complaint) ¶48 ("MediaTek has roughly a 60 percent share of the global
     market for TV Chips.") *with* FAC ¶4 (alleging one year later that MediaTek has 70% market share).

District of Texas held that IPV "met [its]Rule 11 obligations by doing a pre-suit investigation," and IPV "reasonably believed that the accused products might infringe" the relevant patents. That Court also expressly rejected the claim that IPV's patent suit was "frivolous" or "meritless." Dkt. 49 at 7; Dkt. 49-7 at 11-12. The ITC also held that Realtek failed to identify any authority justifying sanctions under the circumstances, and that "there is evidence that the license provision played **no role** in Future Link's decision to file the present Complaint." Dkt. 49-6 at 3 (emphasis added).

Where "past proceedings or judicially noticeable facts make it clear that the sham litigation exception does not apply," dismissal on *Noerr-Pennington* grounds is appropriate. *See UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 981 (N.D. Cal. 2019). So it is here.

Moving to Monterey's Japanese lawsuit against Realtek, the FAC devotes five perfunctory paragraphs (¶¶159-63) to that dispute, but does not explain how that lawsuit is objectively baseless under Japanese law. Instead, Realtek just asserts that the plaintiff has not yet identified sales of the accused products in Japan. What the FAC does *not* allege, however, is that the Japanese plaintiff, Monterey, lacked a good faith basis to believe such sales exist, or believed/knew the relevant patents are invalid. Instead, the FAC asks rhetorical questions (¶161) and engages in rank speculation about the existence of "another incentive"; *i.e.*, speculates about subjective motivation without first establishing objective baselessness. This is plainly inadequate under the law.

## II.    REALTEK FAILS TO ALLEGE A THEORY THAT MAKES ECONOMIC SENSE

"Antitrust claims must make economic sense." *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998). Realtek's alleged scheme does not, meaning dismissal follows. *See*, *e.g.*, *Universal Grading Serv. v. eBay, Inc.*, 2011 WL 846060, at *6 (N.D. Cal. Mar. 8, 2011) (dismissing because "plaintiffs have failed to establish a plausible claim of harm to competition that makes 'economic sense'").

To this point, Realtek alleges a scheme that is supposedly meant to harm competition by creating the risk of supply disruptions. *See* ¶12 ("Supply is the name of the game in the electronics ecosystem. … A meritless lawsuit threatening an importation ban against Realtek and potentially later against customers is that perfect weapon."). But Realtek repeatedly alleges facts inconsistent with such a scheme. For example, Realtek alleges that IPV had extensive pre-lawsuit negotiations

with Amlogic, indicating a desire to *avoid* public litigation and any attendant concerns over Amlogic's supply capabilities. ¶¶150-57. Furthermore, the FAC concedes the "carefully-lawyered Bounty" provision (¶119) is triggered by *either* a single license *or* a single lawsuit. That also undermines the economic sense of a conspiracy designed to spawn a barrage of litigation and leverage the consequences. The FAC never explains what IPV stands to gain from filing more than one lawsuit under either the "Bounty" or the other agreements that are vaguely alluded to, or simply obtaining a license without litigation at all.

Public documents of which the Court has taken notice (Order at 6-7) also show that IPV sued numerous other entities—including companies that have nothing to do with TV Chips. Doing so makes no economic sense if IPV's lawsuits were actually sham cases designed to harm TV Chip competition specifically. Indeed, in the ITC case, Realtek was one of a *dozen* defendants. *See In re Certain integrated Circuit Products and Devices Containing the Same*, Inv. No. 337-TA-1295 (I.T.C. 2021). If the central goal of the litigation was to strategically burden Realtek, litigating against it alongside so many other defendants is certainly an odd way of doing so, given co-defendants regularly engage in significant cost savings through joint defense agreements and by splitting tasks.

Moving to the supposed goals of the "scheme," the FAC alleges that MediaTek intended to monopolize the TV Chip market. But Defendants tried to accomplish this, according to the FAC, through a license agreement that covers multiple different types of patents other than TV Chips, and that contains a "Bounty" provision that does not mention TV Chips, does not require IPV to assert patents related to TV Chips, and would pay the same royalty even if IPV litigated patents related to *other* types of chips. Realtek also presumes that patent litigation by NPEs—ubiquitous across chip markets—could impose such costs or create such uncertainties as to hand MediaTek a monopoly over all competitors. These unrealistic leaps show that Realtek's allegations fall short of the specific intent required to state its Section 2 claims, which should be dismissed for requiring "implausible" inferences. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014); *cf. Nguyen v. Encologix, Inc.*, 962 F.3d 405, 408, 415 (9th Cir. 2020) (affirming dismissal of a claim that "does not make a whole lot of sense").

**III.   REALTEK FAILS TO PLAUSIBLY ALLEGE ANTITRUST INJURY**

    **A.   Realtek Does Not Plausibly Allege Harm To Competition**

"The purpose of the Sherman Act is the promotion of consumer welfare." *PLS.Com, LLC v. Nat'l Assoc. of Realtors*, 32 F.4th 824, 832 (9th Cir. 2022). Allegedly dominant firms are free to compete using even "hypercompetitive" tactics, so long as they do not harm consumers by seeking to "destroy competition itself." *F.T.C. v. Qualcomm Inc.*, 969 F.3d 974, 1005 (9th Cir. 2020). Absent effects on consumers stemming from harm to competition, even acts of "malice" among competitors do not state an antitrust claim. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993). Consumer harm can take the form of supracompetitive prices, reduced market wide output, or decreased market wide quality. *Ohio v. Am. Express Co.*, 585 U.S. 529, 542 (2018).

Because the Sherman Act protects competition, not competitors, Realtek must plausibly allege "antitrust injury," defined as "an injury to competition beyond the impact on the plaintiffs," from which its own injury "flows." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198, 1200 (9th Cir. 2012). The essential element of "causal antitrust injury" requires that "injuries flow from an anticompetitive aspect or effect of the defendant's behavior." *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 Fed. App'x 231, 235 (9th Cir. 2020). *See also Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1110 (N.D. Cal. 2022) (plaintiff must allege more than "the defendant is engaged in some anticompetitive conduct" and "some injury is occurring"). The requirement that the injury to competition "flows from" the anticompetitive act means that "antitrust injury and proximate cause are closely related concepts." *Theme Promotions*, 546 F.3d at 1001.

Realtek states that "MediaTek successfully stifled competition to the harm of customers" (¶15) and that the alleged "scheme has caused prices to increase for both Smart TVs and the TV Chips they depend upon" (¶26), but offers no factual allegations to support this legal conclusion. The FAC alleges that "[s]ince the Defendants' baseless lawsuits against Realtek began in 2021, the prices of the TV Chips, in which MediaTek and Realtek compete, have increased" (¶248), but neglects to identify any causal connection between these increases and the alleged scheme.

In fact, the information the FAC cites renders *implausible* any such causal link. Realtek cites an October 4, 2021 article (¶249) for the proposition that prices went up after the alleged scheme

started. But this very article attributes the rise in electronics prices to numerous factors *other than* the IPV lawsuits, including the rise in raw silicon prices ("up well over 100% in 2021"), a shortage in LCD panels (which "can often account for over two-third of a TV's manufacturing cost"), and labor and shipping availability and cost increases. In fact, the article notes that MediaTek is the third-largest customer of TSMC (Taiwan Semiconductor Manufacturing Company Limited), the world's largest semiconductor manufacturer, which "expected to increase costs." So the very article Realtek cites for supposed competitive injury neither indicates that these higher prices are supracompetitive nor attributes the rise in prices to MediaTek in any way. In fact, it expressly attributes the increases to *other* causes. This contradicts the FAC's allegations and thus renders Realtek's competitive harm allegations entirely implausible. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (proper to consider content of website directly referenced by complaint when evaluating a motion to dismiss).

The failure to allege harm to competition sufficient to satisfy antitrust injury is a result of Realtek's theory of its own case—an alleged scheme in which IPV attempts to impose the same royalty on Realtek that it already imposed on MediaTek. Specifically, the "Bounty" agreement is one in which MediaTek itself agreed to pay a license to IPV. Were IPV to successfully obtain a similar agreement from Realtek, that would mean Realtek paid royalties to IPV *alongside* MediaTek. It is not anticompetitive to pay the same costs as a rival, as there is no negative effect on competition; whether the cost is "reasonable or unreasonable is an issue that sounds in patent law, not antitrust law." *Qualcomm*, 969 F.3d at 1002. And even if Realtek had plausibly alleged harm to competition (as opposed to just injury to itself), it must also show that such harm was "more-than-temporary" and "of significant magnitude." *See Adaptive Power*, 141 F.3d at 952. The FAC contains no such allegations.

**B.**     **Realtek Does Not Identify MediaTek's "Misrepresentations" With Sufficient Particularity, Nor Plausibly Satisfy The Multi-Factor *Harcourt Brace* Test**

Where antitrust claims are based on supposed misstatements to a competitor's customers, the plaintiff must identify the alleged misrepresentations with sufficient particularity under Rule 9(b). *See*, *e.g.*, *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 785 (N.D. Cal. 2022) ("Because fraud

-12-

is an 'essential element' of a Sherman Act claim based on misrepresentations to buyers, a plaintiff that brings such a claim must satisfy the heightened pleading standard set forth by Federal Rule of Civil Procedure 9(b).") (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). Realtek does not come close to satisfying that standard, which is basis alone to dismiss these claims.

Regardless, however, there is a "presumption" that alleged misstatements to customers do not have a significant effect on competition (and therefore cannot cause antitrust injury), even when they "impair the opportunities of a rival." *Am. Prof. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof. Pub., Inc.*, 108 F.3d 1147, 1151-52 (9th Cir. 1997). For this reason, the Ninth Circuit states that a plaintiff may only overcome this presumption when make a showing of six separate factors: "that the representations were [1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals." *Id.* at 1152. *See also Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1079-80 (N.D. Cal. 2002) (dismissing claims for failure to make showing). Realtek fails to plausibly allege the vast majority of these factors.

Clearly false. Despite its repeated use of the labels "false and misleading," Realtek has not identified ***any*** clearly false statement. The FAC repeatedly alleges unspecified "statements to customers about baseless patent litigation." *E.g.*, ¶12. But, to assess the truth or falsity of these statements in order to satisfy *Harcourt Brace*, their content must be alleged. *Compare, e.g.*, *Oracle Int'l Corp. v. Rimini St., Inc.*, 2023 WL 4706127, at *90 (D. Nev. July 24, 2023) (statements about how using plaintiff for support services "exposes customers to legal and security risk" was not "clearly false" because they were, *inter alia*, competitive puffery and collecting authority) *with Klein*, 580 F. Supp. 3d at 795 (where plaintiffs alleged "the 'who, what, when, where, and how'" of specific factual representations, "clearly false" statements had been adequately pleaded).

Clearly likely to induce reasonable reliance/Made to buyers without knowledge of the subject matter. Realtek alleges its customers are among the most sophisticated companies in the world. ¶245. Yet, Realtek never alleges why those ultra-sophisticated companies would simply take MediaTek's alleged word that Realtek was subject to supply issues from patent litigation, *especially*

-13-

when the FAC alleges that, by the time customers decided not to award its business, the Western District of Texas had *already* stayed IPV's lawsuit and said it would dismiss at least a portion. *See supra* at 3. This is a complete failure to plausibly allege customers' reasonable reliance and lack of subject matter knowledge.

Prolonged period. Realtek also fails to allege that any "false and misleading" statements occurred over the requisite "prolonged period." The FAC instead alleges generally that MediaTek made "false and misleading statements," without specifying—let alone with 9(b) particularity—the scope or time period over which they were made. This is insufficient. *Cf. TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 837 (C.D. Cal. 2010) (no antitrust liability because statements "spaced by nearly a year are not the sort of sustained, systematic false advertising that would have more than a de minimis effect on competition"); *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1146 (N.D. Cal. 2011) (one public statement not a "prolonged period").

Not susceptible to neutralization. The FAC attempts to satisfy this element by alleging that Realtek could not neutralize misstatements because it did not learn of them and the "Bounty" agreement was "hidden" until recently. ¶226. But these claims contradict other allegations. As discussed multiple times now, the FAC concedes the Western District of Texas indicated it would dismiss the cases well in advance of any injury to Realtek, and Realtek also alleges the IPV cases had "numerous and obvious" deficiencies. ¶¶127-37. It is implausible that Realtek was unable to neutralize questions or concerns related to a lawsuit that the court publicly indicated would be dismissed, and which Realtek argues was obviously a sham. *See Tate*, 230 F. Supp. 2d at 1080 (refusing to credit allegations where customers were "sufficiently sophisticated so as not to be fooled easily by [] misinformation" and "[p]laintiffs were capable of defending their product and winning over customers based on the merits").

## IV.    REALTEK DOES NOT PLAUSIBLY ALLEGE ANY CAUSAL LINK BETWEEN DEFENDANTS' CONDUCT AND ITS SUPPOSED INJURY

Apart from the normal litigation expenses involved in defending against a limited number of relatively short-lived suits, Realtek alleges lost business resulting from "misleading the customer that these were meritorious suits"—what the FAC describes as the "[k]ey to the scheme." ¶12. But

the FAC fails to connect the dots between supposedly "false and misleading statements to customers" and lost business. This lack of plausible causation dooms every one of Realtek's claims.

As an initial matter, the Court previously noted that Realtek's attempt to plead tortious interference failed to "identify any specific prospective customer whose business relationship with Realtek was harmed by defendants' purported interference." Order at 10 n.5. Even with this guidance, the FAC still fails to do so. Realtek tries to hide this problem by naming a few customers, but still does not allege that the business relationship with these customers was harmed *as a result* of Defendants' conduct. Indeed, Realtek studiously avoids any such allegation, instead relying on implausible suggestions, vague generalizations, and innuendo.

The FAC alleges, for example, that "MediaTek contacted TV ODMs and OEMs to sow doubts about Realtek's reliability and warned them to reduce their use of Realtek TV Chips" (¶219) and that "MediaTek approached TCL and told TCL false and misleading information about Realtek TV Chips" (¶220). Later, the FAC vaguely alleges that Realtek lost business from TCL, but does not explicitly tie that to MediaTek's supposed statements or any explanation from TCL that the reason it did not order as many Realtek chips was the IPV lawsuits. ¶¶219-32. Realtek must link the two, or face dismissal for no plausible causal link. *See In re Online DVD Rental Antitrust Litig.*, 2010 WL 2680837, at *4 (N.D. Cal. July 6, 2010) (dismissing claims for "lack of any direct causal link between plaintiffs' injuries and defendants' conduct").

More problematic, however, is that Realtek affirmatively undercuts any plausible link between the IPV lawsuits or MediaTek's statements, and Realtek's alleged injury. Why? Because the FAC alleges that "[a]fter the [sic] MediaTek executed the bounty agreement and disparaged Realtek to customers, Realtek experienced significant declines in its monthly revenues ***during the second half of 2022 and in 2023***." ¶325 (emphasis added).[7] Yet, as discussed now multiple times, the FAC alleges that, the Western District of Texas publicly indicated by *March 2022* that it would grant Realtek's motion to dismiss (¶127) in light of what Realtek says were "numerous and obvious"

---

[7] *See also* ¶229 ("After MediaTek weaponized the baseless suits [], Realtek lost large bidding opportunities for TV Chips ***during 2022, 2023, and 2024***, respectively. . . . Realtek experienced significant declines in its monthly revenues ***during the second half of 2022 and in 2023***.") (emphases added).

-15-

1  deficiencies. According to the FAC itself, this brought a swift end to the Texas lawsuits. ¶¶136-37.

2  Similarly, the FAC alleges the ITC made public statements by *May 2022* indicating there were

3  serious problems with IPV's investigation. ¶¶146-47. It is implausible that months after two courts

4  publicly indicated they would either dismiss or found serious problems with a limited number of

5  short-lived cases, that Realtek suffered competitive harm from them.

## V.    REALTEK FAILS TO STATE A SECTION 1 ANTITRUST CLAIM

7      The above issues all apply with equal for to Realtek's newly-asserted Section 1 claims.

8  However, those claims also suffer from independent flaws.

### A.    Realtek Does Not Plausibly Allege An Agreement To Bring A Series Of Lawsuits

10      To state a Section 1 claim, a plaintiff "must plead not just ultimate facts (such as a

11  conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or

12  conspiracy among two or more persons or distinct business entities; (2) by which the persons or

13  entities intended to harm or restrain trade or commerce among the several States, or with foreign

14  nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047

15  (9th Cir. 2008). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (a Section 1 "claim

16  requires … enough factual matter (taken as true) to suggest that an agreement was made").

17      Count I asserts a "conspiracy" to "assert serial objectively baseless (*i.e.* sham) patent

18  infringement claims." ¶270. This Count fails because there is ***no*** plausible allegation that any

19  agreement, contract, or conspiracy existed in which Defendants agreed they would file a series of

20  lawsuits. As noted above, the Court observed that the "Bounty" is payable either on a *single* license

21  or a *single* lawsuit. Order at 11 (the provision "did not provide [] any reason to pursue a series of

22  additional lawsuits against Realtek, and Realtek has not alleged other facts plausibly explaining why

23  or how MediaTek caused Realtek to initiate the subsequent lawsuits."). The FAC's vague mention

24  of other agreements "express or implied"—with zero details about how or when any such agreement

25  was reached, or how or why IPV would agree to participate (there is no allegation of any further

26  payment)—is speculative, and the plausibility of such an assertion is contradicted by numerous

27  judicially noticed facts, such as IPV's lawsuits against other entities over the same patents. Count I

28  fails for lack of any plausibly-alleged agreement.

**B.      Realtek Does Not Plausibly Allege An Agreement To Bring Any Single Lawsuit**

Counts II-IV each assert an "illegal agreement" to pursue, respectively, the 363 Case, the 1353 Case, and the ITC Case. ¶¶281, 288, 295. Counts III and IV clearly fail because the only plausibly-pleaded agreement (the "Bounty") relates to a single lawsuit (or license), and the lawsuits that are the subject of Counts III and IV both post-dated the lawsuit that is the subject of Count II by eight months. ¶14. Thus, the "Bounty" could not possibly have motivated or incentivized any of the subsequent lawsuits. Although Count II does not suffer from this glaring flaw, it also does not state a plausible claim. Even for the first lawsuit, there was no agreement to file a claim. Instead, the supposedly "carefully-lawyered" patent license agreement offered an *optional* incentive to *either* obtain a license *or* file a lawsuit, but did not require either action. There can be no plausible agreement to file a lawsuit if a party could just as easily receive payment for a license.

## VI.    REALTEK DOES NOT STATE A CLAIM FOR FALSE ADVERTISING

The substantive elements of a Lanham Act false advertising claim are: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). In addition, a false advertising claim only applies to "commercial advertising or promotion," 15 U.S.C. § 1125(a)(1)(B), which is "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services[; and (4)] disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Coastal Abstract Serv. v. First Am. Title*, 173 F.3d 725, 735 (9th Cir. 1999)). The first and fourth factors are dispositive here.

Realtek's false advertising claims fails as to MediaTek because it: does not identify any MediaTek misrepresentations with particularity under Rule 9(b); states only that MediaTek told customers about the IPV lawsuits, which by law is not an "commercial advertising or promotion";

and does not allege in anything but conclusory fashion that any customers were misled or confused.

### A.    Realtek Fails To Identify Any False, Misleading Statements With Particularity

A plaintiff alleging false advertising must satisfy Rule 9(b). *See New Directions Program v. Sierra Health & Wellness Ctrs. LLC*, 2024 WL 1533284, at *3 (E.D. Cal. Apr. 9, 2024) (allegations of "misleading and false representations in violation of the Lanham Act" where defendants' conduct was intentional "sound in fraud and must meet the heightened pleading requirements of Rule 9(b).") (collecting authority). To do so, a complaint "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020). Because the FAC does not provide any specific information about a single MediaTek misrepresentation, the false advertising claim fails as to MediaTek.

### B.    The FAC Establishes Any Alleged Misstatements Were Not "Commercial Advertising Or Promotion"

According to the FAC itself, MediaTek's communications merely noted the existence of patent litigation against Realtek. *E.g.*, ¶¶11, 222. As a matter of law, this is not "commercial advertising or promotion." *See Avery Dennison Corp. v. Acco Brands, Inc.*, 2000 WL 986995, at *8 (C.D. Cal. Feb. 22, 2000) (letter did "not constitute an advertisement as a matter of law" where there was no "evidence that the [letters] were used as a sales and marketing tool to discourage customers and prospective customers from buying a competitor's product" but instead "asked the recipients not to use [an] allegedly infringing" products). *See also id.* ("On their face, the Letters seek only to inform the customers of the allegations of the lawsuit[.]")

Furthermore, in order to be "sufficiently disseminated" (and therefore subject to the Lanham Act), MediaTek's communications "must be part of an organized campaign to penetrate the relevant market, which typically involves widespread dissemination within the relevant industry." *PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1168 (S.D. Cal. 2023). The FAC does not allege any such widespread dissemination; instead, it at best identifies a handful of one-off statements. *See G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, 2016 WL 6138422, at *6 (C.D. Cal. Feb. 4, 2016) (private statements to several customers did not satisfy requirement that statements be

1  "disseminated sufficiently to the relevant purchasing public"); *compare Newcal Indus., Inc. v. Ikon*

2  *Office Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008) (statements were sufficiently disseminated because

3  they were made in literature distributed to "thousands" of sales accounts).

4  And, as explained above, Realtek fails to allege any causal injury to itself, and this failure to

5  allege injury as a result of any false statement independently dooms the false advertising claim.

6  **C.    Realtek Does Not Allege Any Extrinsic Evidence Establishing MediaTek**

7  **Confused Or Actually Misled Any Customers**

8  Whether a false advertising claim is premised upon an implied falsehood or a literal

9  falsehood, "a plaintiff must demonstrate, ***by extrinsic evidence***, that the challenged [statements] tend

10  to mislead or confuse consumers." *CKE Rest. v. Jack in the Box, Inc.*, 494 F. Supp. 2d 1139, 1143-

11  44 (C.D. Cal. 2007) (requiring extrinsic evidence of materiality in implied falsity case) (emphasis

12  added); *LivePerson, Inc. v. [24]7.ai, Inc.*, 2018 WL 5849025, at *6 (N.D. Cal. Nov. 7, 2018)

13  (requiring extrinsic evidence of materiality in literal falsity case); *Taser Int'l, Inc. v. Bestex Co.*,

14  2007 WL 2947564, at *5 (C.D. Cal. Feb. 9, 2007), *aff'd*, 314 Fed. App'x 46 (9th Cir. 2008) (plaintiff

15  must show the implied false statements were misleading). Here, the FAC is simply devoid of non-

16  conclusory allegations that anyone was misled or confused by any MediaTek statement.

17  **VII.    REALTEK'S STATE LAW CLAIMS ALSO FAIL**

18  **A.    Realtek's State Claims Are Barred By The California Litigation Privilege**

19  This Court previously recognized that "Realtek's state law claims may be barred by

20  California's litigation privilege." Order at 9-10 n.5. Indeed, they are. Under California's litigation

21  privilege, "communications made in or related to judicial proceedings cannot give rise to tort

22  liability." *Arthur J. Gallagher & Co. v. Lang*, 2014 WL 6816644, at *2 (N.D. Cal. Dec. 3, 2014).

23  The privilege confers absolute immunity on communications with even "some relation to judicial

24  proceedings." *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94, 1203-04 (1993). The privilege is "applied

25  broadly, and doubts are resolved in favor of the privilege." *McNair v. City & Cty. of San Francisco*,

26  5 Cal. App. 5th 1154, 1162 (Ct. App. 2016). California's litigation privilege squarely applies here

27  because the statements that Realtek alleges were made by MediaTek all concern litigation against

28  Realtek, and thus indisputably bear "some connection or logical relation to the action[s]." *Silberg v.*

1  *Anderson*, 50 Cal. 3d 205, 212 (1990).

2      The privilege unquestionably applies where MediaTek informs third parties of litigation and

3  the allegations therein. *Cargill Inc. v. Progressive Dairy Solutions, Inc.*, 2008 WL 2235354, at *5-

4  6 (E.D. Cal. May 29, 2008) (dismissing claim based on news release announcing litigation); *eCash*

5  *Tech., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1077, 1082 (C.D. Cal. 2000) (dismissing claim

6  based on letter to third party announcing lawsuit and summarizing claims); *Designing Health, Inc.*

7  *v. Erasmus*, 2001 WL 36239748, at *4 (C.D. Cal. Apr. 24, 2001) (same). The privilege thus bars

8  Realtek's state law claims, which fundamentally rely on purported communications about litigation.

9  *See Gallagher*, 2014 WL 6816644, at *2 (dismissing interference with prospective economic

10  advantage claims that were "communicative" in nature under California litigation privilege).

11      **B.      Realtek Fails To State A UCL Violation**

12      The UCL prohibits any "unlawful, unfair, or fraudulent" business practice. Cal Bus. & Prof.

13  Code § 17200. The "unlawful" prong requires a predicate violation of another law, while the

14  "unfair" prong may prohibit a practice "even if not specifically proscribed by some other law." *Cel-*

15  *Tech Commn's, Inc. v. L.A. Cellular Rel. Co.*, 20 Cal 4th 163, 180 (1999). Under the "unfair" prong,

16  courts consider "whether the defendant's conduct threatens an incipient violation of an antitrust law,

17  or violates the policy or spirit of one of those laws because its effects are comparable to or the same

18  as a violation of the law, or otherwise significantly threatens or harms competition." *Epic Games,*

19  *Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023).

20      Here, Realtek alleges that defendants' conduct (1) violates the "unlawful" prong based on

21  "federal antitrust law;" (2) threatens an incipient violation of antitrust law, or violates the policy or

22  spirit of one of those laws; (3) violates the "unlawful" and "unfair" prongs under Section 5 of the

23  Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"); and (4) violates the "fraudulent"

24  because prong based on MediaTek's "false and/or misleading statements about Realtek." ¶¶317-26.

25  These claims have multiple fatal defects, and are separately barred because the Patent Act provides

26  a "safe harbor" under the UCL and Realtek has not alleged inadequate legal remedies.

27      *1.      Realtek Does Not Plead A Violation Of The Antitrust Laws*

28      As explained above, Realtek fails to plead a violation of the antitrust laws. Its claims under

1  the "unlawful" prong premised on the same antitrust laws thus necessarily fail. *See Hardley v.*

2  *Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (where "a plaintiff cannot state a

3  claim under the predicate law," the UCL claim "also fails" under the unlawful prong); *Ebeid v.*

4  *Facebook, Inc.*, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (similar).

5                    *2.*     *Realtek Does Not Plead An Incipient Violation Of The Antitrust Laws*

6        Although the UCL may sweep broader than an actual antitrust violation, a plaintiff must still

7  allege "at a minimum" that the actions were anticompetitive or have a comparable effect to an

8  antitrust violation. *Reilly*, 578 F. Supp. 3d at 1110-12; *see also Aspex Eyewear, Inc. v. Vision Serv.*

9  *Plan*, 389 F. App'x 664, 666 (9th Cir. 2010) (an "incipient" antitrust violation still requires "proof

10  of some actual or threatened impact on competition"). "If the same conduct is alleged to be both an

11  antitrust violation and an 'unfair' business act or practice," then the "determination that the conduct

12  is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward

13  consumers." *City of San Jose v. Office of Com'r of Baseball*, 776 F.3d 686, 691 (9th Cir. 2015);

14  *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557-58 (9th Cir. 2008) (same).

15        Thus, the UCL claim must be dismissed for the same reasons as the antitrust claims. *See*

16  *Facebook, Inc. v. BrandTotal Ltd.*, 2021 WL 662168, at *10 (N.D. Cal. Feb. 19, 2021) (dismissing

17  UCL claim where plaintiff fail to satisfy elements of Sherman Act claim or otherwise allege injury

18  to competition); *Caccuri v. Sony Interactive Ent. LLC*, 2022 WL 2789554, at *5 (N.D. Cal. July 15,

19  2022) (similar).

20                    *3.*     *The FTC Act And Policy Statement Provide No Substitute*

21        The law regarding whether the FTC Act can supply a predicate violation is unsettled. In

22  *Zhang v. Sup. Ct.*, the California Supreme Court held that a plaintiff may not "plead around an

23  absolute bar to relief"—like lack of a private right of action—"simply by recasting the cause of

24  action as one for unfair competition." 57 Cal. 4th 364, 377 (2013). As in *Zhang*, because the FTC

25  Act rests remedial power "solely in the Federal Trade Commission," *Dreisbach v. Murphy*, 658 F.2d

26

27

28

1    720, 730 (9th Cir. 1981), it cannot supply a predicate UCL violation.[8]

2              *4.     Realtek Does Not Plead A Claim Under The Fraudulent Prong*

3         Realtek halfheartedly alleges that the conduct at issue was fraudulent because of MediaTek's

4    "false and/or misleading statements about Realtek." ¶324. This claim fails for Realtek's failure to

5    plead fraud with particularity under Rule 9(b). Nowhere does the FAC allege the required the "who,

6    what, when, where, and how" of the alleged misrepresentations. *Vess*, 317 F.3d at 1106. Instead,

7    Realtek merely repeats that MediaTek made false and misleading statements, and vaguely asserts

8    certain entities to whom these statements were allegedly made, without specifying what was said.

9        **C.**    **The UCL Action Is Independently Barred**

10          *1.     The Patent Act Provides A Safe Harbor Under the UCL*

11        Even if Realtek had managed to allege a UCL claim, it would still be barred because it falls

12   under the "safe harbor" for lawful conduct. "Acts that the Legislature has determined to be lawful

13   may not form a basis for an action under the unfair competition law." *Cel-Tech*, 20 Cal. 4th at 183.

14   Here, the Patent Act expressly grants patent owners like IPV a limited monopoly and statutory right

15   to enforce that monopoly against infringers. 35 U.S.C. § 271. The circumstances in which these

16   statutory rights may yield to antitrust prohibitions have been carefully delineated to avoid

17   impermissibly hindering the Patent Act, which otherwise provides a "safe harbor." *See Q-Pharma,*

18   *Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1304-05 (Fed. Cir. 2004).

19        An antitrust case may rest on patent assertion where (1) "the patent was procured by fraud

20   on the Patent Office," or (2) "the patent holder is enforcing the patent in bad faith." *Chip-Mender,*

21   *Inc. v. Sherwin-Williams Co.*, 2006 WL 13058, at *4 (N.D. Cal. Jan 3, 2006).[9] Outside of these

---

[8]  The minority of decisions that come out the other way do not consider *Zhang* or whether the FTC Act provides a basis under the UCL *independent* of the antitrust laws to which it is tethered. *See, e.g.*, *Schmitt v. SN Serv. Corp.*, 2021 WL 5279822, at *5 (N.D. Cal. Nov. 12, 2021). Under *Zhang*, the FTC Act cannot supply a predicate law independent of the antitrust laws.

[9]  Some courts have held that patent assertion may be actionable as part of a larger "scheme," if that scheme involves separate acts that independently cause anticompetitive harm. *See Hynix*

1  categories, the "proper course" is to "erect such barriers to antitrust suits as are necessary to provide

2  reasonable protection for the honest patentee" and "prevent frustration of patent law by the long

3  reach of antitrust law." *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979); *cf. Q-*

4  *Pharma*, 360 F.3d at 1304 ("A patent owner who brings a suit for infringement, without more, is

5  generally exempt from the antitrust laws for that action.").

6      The FAC does not satisfy these exceptions. Realtek cannot show that IPV procured its

7  patents by "fraud on the Patent Office." *Kaiser*, 552 F.3d at 1047. The FAC alleges that "where

8  PAE Defendants' asserted patents faced validity challenges at the Patent Office, they either were

9  found invalid or were likewise withdrawn to avoid a final determination" (¶129), but this is not

10 tantamount to fraud on the Patent Office. *See Ritz Camera & Image, LLC v. SanDisk Corp.*, 700

11 F.3d 503, 506 (Fed. Cir. 2012) (explaining requirements for alleging fraud on the USPTO). Nor

12 does the FAC plausibly allege bad faith enforcement. *See supra* I.A-B.

13              2.      *Realtek Cannot Show Threat Of Future Harm To Obtain Recovery*

14      Even if Realtek had pled a violation, it has no remedy under the UCL because its claims

15 concern past conduct. The UCL permits recovery of only "injunctive relief and restitution." *See*

16 *Anthony Cal., Inc. v. Fire Power Co., Ltd.*, 2018 WL 11352483, at *2 (C.D. Cal. Aug. 9, 2018). "To

17 support an award for an injunctive relief under the UCL, there must be a threat that the wrongful

18 conduct will continue." *Id*. Here, there is no such threat: the license agreement, on its face, requires

19 licensing or litigation against Realtek to take place "prior to January 2022." Realtek alleges that it

20 is subject to ongoing harm because "MediaTek has not indicated that it will refrain from further

21 disparagement of Realtek." ¶326. But this is pure speculation, as there is no reason for MediaTek to

22 re-license patents it has already licensed. Nor is there room for restitution because Realtek does not

23 allege that MediaTek possesses money or property "trace[able]" to Realtek. *See In re Nexus 6P*

24 *Prods. Liability Litig.*, 293 F. Supp. 3d 888, 952-53 (N.D. Cal. 2018).

25  ─────────────────

26 *Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1091-97 (N.D. Cal. 2007). But as the
   Court noted, even if "such a theory actually provides an exception to *Noerr-Pennington*," the theory
27 applies only where "litigation is simply a means of furthering that core conduct. Here, the core of
   the alleged scheme is the litigation itself not some entirely distinct conduct[.]" Order at 13 n.7. The
28 FAC alleges the same "core" conduct.

MEDIATEK'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 5:23-CV-02774-PCP

Realtek also alleges that its "burdens continue to accrue with no end in sight, as PAE Defendants continue to execute on their policy of merits-agnostic harassment through their subsidiary, Monterey" (¶188) and vaguely seeks "an injunction against Defendants to end the ongoing violations alleged herein" (¶278). But the Japanese case cannot serve as a legitimate basis for Realtek's equitable relief. The issuance of an anti-suit injunction against a foreign action requires that "the parties are the same in both matters" and "resolution of the case before the enjoining court is dispositive of the action to be enjoined." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 199 (2d Cir. 2004). *See also Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981). Here, neither precondition is satisfied.

### D.     The Tortious Interference Claim Is Barred And Inadequately Plead

Tortious interference claims based on inducing third-party litigation are strictly circumscribed under settled California law. *See Pacific Gas and Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990). Even where a firm encouraged a California agency to sue PG&E and paid for "legal, engineering, and marketing studies" and retained counsel to help the agency litigate, the California Supreme Court held that a tortious interference claim would impermissible, as it would "threaten free access to the courts." *Id*. at 1124, 1137. Thus, a plaintiff "seeking to state a claim for intentional interference with contract or prospective economic advantage because defendant induced another to undertake litigation, must allege that the litigation was brought without probable cause and … concluded in plaintiff's favor." *Id*. at 1137.

Realtek cannot satisfy either of these elements. Both the Western District of Texas and the ITC rejected its claims for sanctions on the merits. And even if Realtek could allege lack of probable cause, it cannot show that the IPV litigations concluded in its favor. Furthermore, to state a claim for tortious interference with prospective economic advantage, a plaintiff must "allege an act that is wrongful independent of the interference itself." *CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). Inducing IPV to bring litigation is immunized, for the reasons explained above. *Pacific Gas & Elec.*, 50 Cal. 3d at 1137. But, even if it were not, Realtek alleges that MediaTek "went to large customers … and dishonestly used the existence of litigation … to sow fear, uncertainty and doubt." (¶11) To the extent this general allegation can be credited,

identifying a litigation is facially **true** and therefore cannot be wrongful. *See ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1014 (2001) ("A person cannot incur liability for interfering with contractual or economic relations by giving truthful information to a third party.").

Finally, at its most specific, the FAC alleges that MediaTek "approached TCL and told TCL false and misleading information about Realtek TV Chips" (¶220) and that "[b]efore the Defendants' campaign of baseless patent suits and spreading lies to OEMs, Realtek's sales to OEM ███ were estimated to be roughly 15% of Sony's TV Chip needs. After the Defendants' conspiracy took hold and, as a result of it, Realtek's TV Chip sales to ███ fell precipitously to an estimated 4% of ███ TV Chip needs." ¶262. This is insufficient, as Realtek fails to specify other than in the most general terms possible what false or misleading statements were made, and does not explain how any statements actual caused of any economic harm.

## VIII.    FURTHER AMENDMENT WOULD BE FUTILE

Leave to amend may be denied where a plaintiff has already been afforded an opportunity to amend and failed to assert a viable claim. *See Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (district court has broad discretion to deny leave to amend when it has afforded plaintiff an opportunity to amend). Where, as here, a plaintiff has reasserted the same flawed theory more than once and there is no reason to believe the theory can be salvaged, dismissal with prejudice is appropriate. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (explaining that leave to amend can be denied if amendment would be futile). For the reasons provided above, *Noerr-Pennington* immunity fully bars Realtek's claims, which suffer from independent bases for dismissal even after an opportunity to amend. Dismissal with prejudice is appropriate.

## CONCLUSION

For the foregoing reasons, MediaTek respectfully requests dismissal of the FAC in full.[10]

---

[10]  Counsel for Realtek confirmed in writing on August 1, 2024 that Count X—breach of contract—"is only directed to the PAE Defendants." Accordingly, this claim is not asserted against MediaTek and no action by the Court is necessary to resolve that claim.

1    Dated: August 19, 2024              By: /s/ Adam Wolfson

2

3                                       KEVIN P.B. JOHNSON, SBN 177129
                                        kevinjohnson@quinnemanuel.com
                                        Quinn Emanuel Urquhart & Sullivan, LLP
4                                       555 Twin Dolphin Drive, 5th Floor
                                        Redwood Shores, CA 94065
5                                       Telephone: (650) 801-5000
                                        Facsimile: (650) 801-5100

6
                                        SEAN S. PAK, SBN 219032
7                                       seanpak@quinnemanuel.com
                                        ADAM B. WOLFSON, SBN 262125
8                                       adamwolfson@quinnemanuel.com
                                        Quinn Emanuel Urquhart & Sullivan, LLP
9                                       50 California Street, 22nd Floor
                                        San Francisco, CA 94111
10                                      Telephone: (415) 875-6600
                                        Facsimile: (415) 875-6700

11
                                        KEVIN HARDY (pro hac vice)
12                                      D.C. Bar No. 473941
                                        Quinn Emanuel Urquhart & Sullivan, LLP
13                                      1300 I Street, N.W., Suite 900
                                        Washington, DC 20005
14                                      Telephone: (202) 538-8000
                                        Facsimile: (202) 538-8100
                                        kevinhardy@quinnemanuel.com
15

16                                      *Attorneys for Defendant MediaTek Inc.*

17

18

19

20

21

22

23

24

25

26

27

28