KEVIN P.B. JOHNSON, SBN 177129
kevinjohnson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

SEAN S. PAK, SBN 219032
seanpak@quinnemanuel.com
ADAM B. WOLFSON, SBN 262125
adamwolfson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

KEVIN HARDY (*pro hac vice*)
D.C. Bar No. 473941
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
kevinhardy@quinnemanuel.com

*Attorneys for Defendant MediaTek Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORP., <br>                Plaintiff, <br> v. <br> MEDIATEK INC.; IP VALUE MANAGEMENT INC.; and FUTURE LINK SYSTEMS, LLC., <br>                Defendants. | Case No. 5:23-cv-02774-PCP <br><br> **DEFENDANT MEDIATEK INC'.S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** <br><br> Judge: Hon. P. Casey Pitts <br> Date Filed: June 6, 2023 |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................1

I. INTRODUCTION ........................................................................................................1

II. BACKGROUND ..........................................................................................................3

    A. Future Link's Litigation Against Realtek And Realtek's Original Complaint ..........3

    B. The Linchpin Of Realtek's Claims Against MediaTek Remains An Allegedly Baseless Litigation Campaign By Future Link............................................4

    C. After Filing The Motion To Dismiss, MediaTek And Realtek Received The Full RPX Agreement, But Realtek Refused To Withdraw Its Claims .......................5

III. COMPLIANCE WITH SAFE HARBOR ....................................................................6

IV. ARGUMENT ................................................................................................................7

    A. Legal Standard................................................................................................7

    B. Realtek Has Now Violated Rule 11 Because The RPX Agreement Conclusively Demonstrates The Litigation Against Realtek Was Never Actionable Under The Antitrust Laws ......................................................................9

V. CONCLUSION ...........................................................................................................13

**TABLE OF AUTHORITIES**

Page

**Cases**

Avedisian v. Mercedes-Benz USA, LLC,
  2014 WL 47466 (C.D. Cal. Jan. 2, 2014) ............................................................... 7

Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,
  498 U.S. 533 (1991) ............................................................................................. 7

Catch Curve, Inc. v. Venali, Inc.,
  2008 WL 11334024 (C.D. Cal. Nov. 3, 2008) ............................................... 9, 10-11

Christian v. Mattel, Inc.,
  286 F.3d 1118 (9th Cir. 2002) ............................................................................. 8

DNA Sports Performance Lab, Inc. v. Major League Baseball,
  2020 WL 6290374 (N.D. Cal. Oct. 27, 2020) ....................................................... 8

Evans Hotel, LLC v. Unite Here! Local 30,
  2021 WL 10310815 (S.D. Cal. Aug. 26, 2021) ................................................... 10

F.T.C. v. AbbVie Inc.,
  976 F.3d 327 (3d Cir. 2020) ........................................................................... 11, 12

Gov't Emps. Ins. Co. v. Hazel,
  2014 WL 4628655 (E.D.N.Y. Aug. 11, 2014) .................................................. 9, 10

Impression Prods., Inc. v. Lexmark Int'l, Inc.,
  581 U.S. 360 (2017) ............................................................................................. 3

Martinez v. City of W. Sacramento,
  2021 WL 2227830 (E.D. Cal. June 2, 2021) ....................................................... 7

New West, L.P. v. City of Joliet,
  491 F.3d 717 (7th Cir. 2007) ........................................................................... 9, 10

Nguyen v. Simpson Strong-Tie Co., Inc.,
  2020 WL 5232564 (N.D. Cal. Sept. 2, 2020) ....................................................... 8

Prime Healthcare Servs. v. Humana Ins. Co.,
  2018 WL 8131762 (C.D. Cal. Aug. 22, 2018) ..................................................... 13

SG Blocks, Inc. v. Hola Cmty. Partners,
  2021 WL 2714596 (C.D. Cal. July 1, 2021) ......................................................... 7

Shirvell v. Gordon,
  602 F. App'x 601 (6th Cir. 2015) ......................................................................... 8

*Sonus Networks, Inc. v. Inventergy, Inc.*,
    2015 WL 4539814 (N.D. Cal. July 27, 2015) ............................................................. 11, 12

*Sosinavage v. Thomson*,
    2019 WL 494824 (D.N.J. Feb. 8, 2019) ............................................................................ 8

*STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*,
    2011 WL 1362163 (N.D. Cal. Apr. 11, 2011) ................................................................. 10

*Strougo v. Barclays PLC*,
    105 F. Supp. 3d 330 (S.D.N.Y. 2015) .............................................................................. 8

*Theme Promo., Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ................................................................................. 2, 9, 10

*USS-POSCO Indus. v. Contra Costa Cty. Build. & Constr. Trades Council, AFL-CIO*,
    31 F.3d 800 (9th Cir. 1994) ............................................................................................. 9

**Other Authorities**

Fed. R. Civ. P. 11(b) ................................................................................. 1, 2, 7, 8, 12

Fed. R. Civ. P. 11(c) .................................................................................... 2, 6, 8, 13

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on Thursday, December 12, 2024, at 10:00 a.m., or as soon as the matter may be heard, before the Honorable P. Casey Pitts of the United States District Court, Northern District of California at Courtroom 8 – 4th Floor, 280 South 1st Street, San Jose, California, Defendant MediaTek Inc. ("MediaTek") will and hereby does move this Court for an order sanctioning Plaintiff Realtek Semiconductor Corp. ("Realtek") for failing to withdraw its First Amended Complaint ("FAC") after learning of information that renders its FAC objectively baseless and inconsistent with the obligations imposed by Federal Rule of Civil Procedure 11(b). The motion is based upon this notice of motion, the supporting memorandum of points and authorities, and such evidence as may be requested or permitted by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On August 19, 2024, Defendants IPValue Management Inc. ("IPValue") and Future Link Systems, LLC ("Future Link," together "IPV") filed a Patent License Agreement between Future Link and RPX Corporation ("RPX," and the "RPX Agreement") (Dkt. 140-15) in support of their motion to dismiss Realtek's FAC. The RPX Agreement, a document to which neither MediaTek nor Realtek previously had full access, is extraordinary evidence that transforms the FAC from what was already a meritless pleading into a patently frivolous one.

Realtek's case against MediaTek hinges on the theory that "Future Link sued Realtek in a series of baseless, sham patent infringement cases, and MediaTek spread lies about those cases." FAC ¶247. According to Realtek, Future Link brought these supposedly-baseless cases at the behest of MediaTek or pursuant to alleged agreements between the two entities. *E.g.*, FAC ¶¶40, 270. As the Court has recognized throughout, the fundamental premise behind these claims is that Future Link and its parent, IPV, did not care about the results of the lawsuits and that a license was not their goal. *See* Dkt. 95 (Order Granting Motions to Dismiss) at 12-13 ("To evade *Noerr-Pennington*, Realtek must identify the specific ways in which the defendants used the litigation itself—rather than the relief

sought therein—as an 'anticompetitive weapon,' but Realtek has not done so in the existing Complaint.").

When MediaTek received the unredacted copy of the RPX Agreement, however, it confirmed what MediaTek had long suspected; *i.e.*, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. This means that the IPV lawsuits are not actionable under the antitrust laws, because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (and had nothing to do with Realtek or the supposed TV Chips market it defines in this case), and the lawsuits against Realtek have been found objectively reasonable. *See, e.g., Theme Promo., Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008).

After MediaTek (and Realtek) received the unredacted RPX Agreement, MediaTek reached out to Realtek about withdrawing its claims. Realtek understandably could not have known the full extent of the RPX Agreement's terms when it filed this case, and therefore could claim some form of good faith belief (however weak and unsupported) that the RPX Agreement did not completely undercut its claims. However, now knowing the Agreement's full contents, MediaTek hoped that Realtek would abide by its Rule 11 obligations and acknowledge that what has always been a weak lawsuit is in fact completely meritless. Realtek refused and then filed its signed opposition to MediaTek's motion to dismiss. *See* Dkt. 172.

By filing that opposition brief and failing to withdraw the FAC upon receiving the RPX Agreement, Realtek has now violated Federal Rules of Civil Procedure 11(b)(2) & (3). Specifically, Realtek has violated Rule 11 by continuing to "advocat[e]" for a pleading that has been exposed to be baseless and which can no longer be said to have "evidentiary support." Fed. R. Civ. P. 11(b). It may be difficult to admit that one's suspicions were wrong, but it is an obligation—one that Realtek failed, even when given the chance.

Accordingly, MediaTek now reluctantly moves for sanctions under Rule 11(c). MediaTek requests that the Court strike all claims against MediaTek from the FAC and award MediaTek its attorneys' fees and costs associated with both moving to dismiss the FAC and bringing this motion, in amounts to be determined by future evidentiary submissions.

## II. BACKGROUND

### A. Future Link's Litigation Against Realtek And Realtek's Original Complaint

In 2021, Future Link commenced numerous lawsuits in the Western District of Texas and before the International Trade Commission alleging infringement of its intellectual property rights—specifically, U.S. Patent No. 7,917,680; U.S. Patent No. 7,685,439; and U.S. Patent No. 8,099,614. Dkt. 49 at 3 (¶¶1-2). Realtek was among those entities that Future Link asserted had infringed its patents. Other defendant entities included Advanced Micro Devices, Inc.; Apple Inc.; ARM Limited; and Qualcomm Incorporated and Qualcomm Technologies, Inc. *Id.*

Future Link resolved numerous of its then-pending patent infringement lawsuits in March 2022 by entering into the RPX Agreement. Dkt. 163 at 3. The terms of the RPX Agreement included ████████████████████████████████████████. *See* Dkt. 142-3 (RPX Agreement), at §1.1. Realtek's supplier (ARM) was among the entities that were express beneficiaries under the RPX Agreement. Dkt. 163 at 3. To the extent Future Link's claims against third parties, including Realtek, were based on components provided by ARM, the RPX Agreement exhausted Future Link's then-pending claims. *See generally Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 581 U.S. 360 (2017) (discussing exhaustion doctrine). Future Link thus dismissed its pending litigations against Realtek in the Western District of Texas ("WDTX") and the International Trade Commission ("ITC"). Dkt. 163 at 3.

Both before and after the conclusion of Future Link's actions against Realtek, Realtek made repeated motions for various sanctions against Future Link. Each time, the court presiding over those cases—WDTX and the ITC—rejected Realtek's arguments about the sham or otherwise improper nature of Future Link's litigation. *See* Dkt. 49 at 5-7 (¶¶8-13). Realtek's effort to seek reconsideration of its failure to obtain sanctions was also denied. *Id.* at 7 (¶¶14-15). Realtek's efforts to appeal these denials were unsuccessful. *Id.* at 7-8 (¶¶16-19). As a factual matter, this meant Realtek knew when filing its original Complaint and then filing the FAC that multiple Courts found Future Link's lawsuits objectively reasonable.

Unable to obtain the revenge it wanted in either of the courts presiding over the relevant underlying actions, in June 2023, Realtek commenced this action. Realtek's original Complaint

alleged that the patent infringement cases Future Link brought against it (and many other defendants) were somehow baseless, and moreover had allegedly been undertaken pursuant to a secret "bounty" agreement with MediaTek. *See generally* Dkt. 1.

MediaTek moved to dismiss Realtek's highly-flawed Complaint on numerous bases. Dkt. 48. Following a hearing, the Court dismissed Realtek's Complaint because it was barred by the *Noerr-Pennington* doctrine. Dkt. 95. The Court also noted that *several* other fatal deficiencies raised by Defendants' motions to dismiss "appeared compelling," although the Court had no need to reach them at that time. *Id.* at 7 n.3. Following the dismissal of its Complaint, Realtek sought sweeping discovery in hopes of unearthing *something* that would allow it to in good faith state a plausible claim (Dkt. 112), but the Court largely rejected Realtek's efforts (Dkt. 124). Realtek was permitted access to previous discovery produced in earlier actions.

### B. The Linchpin Of Realtek's Claims Against MediaTek Remains An Allegedly Baseless Litigation Campaign By Future Link

Realtek's access to the earlier discovery record appears to have revealed nothing to remedy the numerous fatal flaws in its original Complaint, let alone any hoped-for smoking gun. Realtek filed its FAC in July 2024. Dkt. 129. The FAC largely re-asserts the same flawed claims based on the same inadequate and conclusory allegations that the Court already rejected.

Just as with the original Complaint, Realtek's entire case is built around the theory that Future Link engaged in an "infringement campaign" consisting of "objectively baseless lawsuits." FAC ¶¶191, 1. The supposed sham nature of Future Link's litigation against Realtek is fundamental not only to Realtek's claims against Future Link, but also to its allegations about MediaTek. The crux of Realtek's case against MediaTek involves allegations that MediaTek "hire[d] trolls to file meritless suits against their competitors" (*id.* ¶3) and made supposedly "false and misleading statements to [Realtek's] customers about baseless patent litigation" (*id.* ¶12).

Indeed, each and every claim asserted in the FAC against MediaTek[1] revolves around the allegedly sham litigation. *See id.* ¶270 (asserting in Count I an antitrust claim arising out of an alleged

---

[1] Realtek has withdrawn the FAC's breach of contract claim as to MediaTek.

conspiracy that consisted of "assert[ing] serial objectively baseless (*i.e.* sham) patent infringement claims"); *id.* ¶280 (asserting in Count II an antitrust claim arising out of an alleged conspiracy that consisted of "carrying out an objectively baseless sham patent infringement suit"); *id.* ¶287 (asserting in Count III an antitrust claim arising out of an alleged conspiracy that consisted of "carrying out an objectively baseless sham patent infringement suit"); *id.* ¶294 (asserting in Count IV an antitrust claim arising out of an alleged conspiracy that consisted of "carrying out an objectively baseless sham patent infringement suit"); *id.* ¶302 (relying in Count V on an alleged "series of objectively baseless sham lawsuits" as a basis for a conspiracy to monopolize claim); *id.* ¶310 (relying in Count VI on supposedly actionable "statements about the sham patent suits" in monopolization or attempted monopolization claim); *id.* ¶324 (asserting in Count VII unfair competition based on supposed "sham litigation" or other previous counts that incorporate the same assertions); *id.* ¶328 (asserting in Count VIII tortious interference based on supposed "false and/or misleading statements" about "sham litigation against Realtek"); *id.* ¶333 (asserting false advertising claim in Count IX premised on supposedly actionable "false and misleading statements" concerning Realtek "with regard to claims of infringement").

Without the sham nature of Future Link's so-called "barrage of objectively baseless patent suits" (FAC ¶113) against Realtek, the entire FAC crumbles. At no point does Realtek argue that its claims against MediaTek would be viable even if Future Link's underlying lawsuits against Realtek had objective merit. Thus, if Future Link's lawsuits are not actionable as a matter of law, Realtek's entire case collapses.

For these reasons, MediaTek filed a motion to dismiss the FAC in August 2024. *See* Dkts. 138, 177. That motion points out the numerous reasons why Realtek's claims are still fundamentally implausible.

### C. After Filing The Motion To Dismiss, MediaTek And Realtek Received The Full RPX Agreement, But Realtek Refused To Withdraw Its Claims

One notable change from the original Complaint to the FAC was the addition of a breach of contract claim concerning the RPX Agreement between Future Link and RPX. *See* Dkt. 129 at ¶¶340-47 (asserting breach of contract claim "against all defendants"). The FAC oddly asserted this claim

against MediaTek despite MediaTek not being a party to the contract. When pressed, Realtek withdrew this claim as to MediaTek. *See* Dkt. 138 at 25 n.10. However, as a result of this new breach of contract claim and Future Link's need to defend itself against it, the RPX Agreement was for the first time disclosed in full to counsel for the parties on an attorneys' eyes-only basis.

When Future Link produced the unredacted RPX Agreement, MediaTek and Realtek each learned for the first time that █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

After learning these facts, MediaTek promptly contacted counsel for Realtek and indicated that this new information meant Realtek's lawsuit could not be continued in good faith consistent with Rule 11. Each Court overseeing Future Link's lawsuits against Realtek found they were objectively reasonable, and the RPX Agreement showed that ████████████████████ (which, under Ninth Circuit precedent in *Theme Promo.*, 546 F.3d at 1008, means the lawsuits are presumptively reasonable). MediaTek therefore asked Realtek to confirm it would withdraw the FAC. Realtek declined to change course or alter its position in any way despite these game-changing newly-disclosed facts, and filed its opposition to MediaTek's motion to dismiss on September 23, 2024, in full knowledge of the RPX Agreement's contents. *See* Dkt. 172.

### III.   COMPLIANCE WITH SAFE HARBOR

"A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). "The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after

service or within another time the court sets." *Id.* MediaTek complied with this safe harbor provision by serving Realtek's counsel with a copy of this motion on September 26, 2024.

## IV. ARGUMENT

### A. Legal Standard

Under Rule 11 of the Federal Rules of Civil Procedure, any party filing a complaint, written motion, or other paper must certify through their counsel that, after an inquiry reasonable under the circumstances, "the claims, defenses, and other legal contentions are warranted by existing law," Fed. R. Civ. P. 11(b)(2), and the factual contentions "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). To satisfy the affirmative duty imposed by Rule 11, counsel must conduct a reasonable inquiry before filing papers with the court. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991). A party certifies Rule 11 compliance "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, *or later advocating it*." (emphasis added). Fed. R. Civ. P. 11(b). Because a party must comply with Rule 11 when advocating in connection with any previous filing, newly-discovered facts can inform an attorney's duty with respect to pending filings, irrespective of whether the filing complied with Rule 11 at the time it was signed or submitted.

Courts recognize that a party's duty to confirm its claims and arguments are consistent with a reasonable understanding of and inquiry into the facts is ongoing. *See SG Blocks, Inc. v. Hola Cmty. Partners*, 2021 WL 2714596, at *2 (C.D. Cal. July 1, 2021) ("it is clear that Rule 11 does impose a continuing duty"); *Martinez v. City of W. Sacramento*, 2021 WL 2227830, at *3, 15 (E.D. Cal. June 2, 2021) (imposing monetary sanctions to deter plaintiffs' counsel from "insisting upon a position after it is no longer tenable"); *Avedisian v. Mercedes-Benz USA, LLC*, 2014 WL 47466, at *4 (C.D. Cal. Jan. 2, 2014) ("Rule 11 also subjects litigants to sanctions for insisting upon a position after it is no longer tenable.").[2]

---

[2] The advisory committee note to the 1993 amendment to Rule 11 states that the revised Rule "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a

Learning new information that renders an operative filing non-compliant with the requirements of Rule 11 mandates the withdraw or revision of such a filing. *See Nguyen v. Simpson Strong-Tie Co., Inc.*, 2020 WL 5232564, at *5 (N.D. Cal. Sept. 2, 2020) ("Plaintiffs' refusal to withdraw or meaningfully amend these allegations, which were core to its FAC, was a violation of Rule 11."); *Sosinavage v. Thomson*, 2019 WL 494824, at *3 (D.N.J. Feb. 8, 2019) ("Rule 11 establishes an ongoing duty to cease litigation of claims that are no longer tenable"); *Shirvell v. Gordon*, 602 F. App'x 601, 605 (6th Cir. 2015) (despite a good-faith belief that an attorney "expected to uncover further details" to support his claims later, he "violated his ongoing Rule 11 duty" by "fail[ing] to materially amend his complaint and continued to advocate his position, even as further evidence indicated that his claims [] were baseless").³ The obligation to not advocate for a position that is no longer viable derives from the rule that "[a]n attorney's signature on a complaint is tantamount to a warranty that the complaint" is, for the full period it remains operative, "well grounded in fact [and] not filed for an improper purpose." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).

When "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Sanctions do not require a finding of bad faith, but under Rule 11(c)(4) they are limited to what is sufficient to deter repetition of the sanctioned conduct." *DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 6290374, at *5 (N.D. Cal. Oct. 27, 2020). Realtek and MediaTek received the full RPX Agreement for the first time on August 19, 2024. Since then, Realtek has failed to satisfy its ongoing duty to comply with Rule 11.

---

position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention." Fed. R. Civ. P. 11(b)-(c) advisory committee's note to 1993 amendment.

³ *See also Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015) ("[P]laintiffs have an ongoing obligation under Rule 11. Plaintiffs should amend the Complaint to eliminate any allegations that are false or inaccurate.").

### B. Realtek Has Now Violated Rule 11 Because The RPX Agreement Conclusively Demonstrates The Litigation Against Realtek Was Never Actionable Under The Antitrust Laws

The settlement of the underlying Future Link litigation indicates these lawsuit were "not objectively baseless" and therefore not subject to the sham exception to the *Noerr-Pennington* doctrine. *See, e.g.*, *Theme Promotions*, 546 F.3d at 1008. The principle that settlement means litigation was presumptively reasonable (and therefore not objectively baseless) is widely-recognized and well-established. *See, e.g.*, *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) (settlement showed lawsuit "cannot have been a sham" and therefore could not be the basis for the sham litigation exception); *Gov't Emps. Ins. Co. v. Hazel*, 2014 WL 4628655, at *24 (E.D.N.Y. Aug. 11, 2014), *adopted*, 2014 WL 4628661 (E.D.N.Y. Sept. 15, 2014) (settlement means "the underlying litigation, as a matter of law, was not objectively baseless" and noting that because "GEICO brought this action and achieved a substantial success with its settlement" the litigation was "was brought to achieve a valid goal" under *Noerr-Pennington*).

Where a party asserts the "series" exception to the *Noerr-Pennington* doctrine, the key to such an allegation (as this Court previously noted) is that the party bringing the lawsuits did so without regard to their result. Dkt. 95 at 12-13. Evidence that a party settled many cases from the alleged "series" (and did not bring any further lawsuits following that settlement) indicates, as a matter of law, that the lawsuits are not actionable, because a fundamental requirement of an allegedly anticompetitive "series" is that the party bringing those lawsuits was unsuccessful in well over half of them (at least). *See, e.g.*, *USS-POSCO Indus. v. Contra Costa Cty. Build. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994); *see also Catch Curve, Inc. v. Venali, Inc.*, 2008 WL 11334024, at *8 (C.D. Cal. Nov. 3, 2008) (dismissing "series"-based antitrust claim because settled cases "[made] up the entirety of the alleged pattern of sham litigation," and a party cannot "'cannot sustain its burden of showing that [the defendant's] conduct falls within the sham exception to the *Noerr-Pennington* doctrine'" because a record of settlements "'cannot be reconciled with the

charge that [the defendant was] filing lawsuits . . . willy-nilly without regard to success.'") (quoting *USS-POSCO*, 31 F.3d at 811).[4]

Given this law, the RPX Agreement renders Realtek's sham and series allegations completely meritless—definitively so. Each Court overseeing Future Link's lawsuit found them objectively reasonable. Therefore, the only tenuous hook Realtek had left was the idea that the RPX Agreement somehow showed the lawsuits were a sham. In light of ███████████████, the patent litigation that resulted in the RPX Agreement cannot be understood as objectively baseless, nor could it have been designed to harass or use litigation as purely as an anticompetitive tactic. To the contrary, the supposedly "meritless campaign" of litigation—of which the cases against Realtek were but a small part—███████████████████████████████████████████████ indicates there was objective merit and purpose to the lawsuits, rendering the "series" exception inapplicable and illustrating the merit to Future Link's lawsuits against Realtek.

The ███████████████ are also *consistent with the fact that, as Realtek has known since bringing this lawsuit, MediaTek itself paid royalties* for the same intellectual property. *See* Dkt. 106 (Patent License Agreement between Future Link and MediaTek) at 13 (licensing the '614 Patent), 20 (licensing the '439 Patent), 28 (licensing the '680 Patent). The RPX Agreement confirms in black and white that Future Link's litigation was a success, and thus as a matter of law cannot be regarded as a sham. *Theme Promotions*, 546 F.3d at 1008; *New West*, 491 at 722; *Hazel*, 2014 WL 4628655, at *24.

That resolution by settlement amounts to a successful outcome makes very good sense in the patent context. As one court has noted, "[i]n litigating a patent infringement suit, a patent owner will

---

[4] *See also Evans Hotel, LLC v. Unite Here! Local 30*, 2021 WL 10310815, at *10 (S.D. Cal. Aug. 26, 2021) (plaintiffs failed to demonstrate either single or serial sham exceptions to *Noerr-Pennington* in light of underlying lawsuits having settled); *STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*, 2011 WL 1362163, at *2 (N.D. Cal. Apr. 11, 2011) ("In determining whether particular litigation is a sham, courts often look to settlements and rulings on dispositive motions as evidence of the merits of the case.").

typically seek an injunction excluding the defendant from continued infringement, damages or a license fee for use of the invention, or both. Because [plaintiff] secured license fees through its settlements, these prior cases reflect litigation success." *Catch Curve*, 2008 WL 11334024, at *8.

Realtek has tellingly offered *no authority* for its argument that litigation could be objectively baseless when the overseeing courts found that litigation objectively reasonable and it resulted in a settlement. *See* Dkt. 172 at 18-19; *see also* Dkts. 147 at 2-5, 170 at 8-9 (arguing—without a single case or other authority—that because the RPX Agreement did not expressly "ascribe any value to the three patents at issue," Dkt. 147 at 5, the license somehow should not be considered a successful settlement resolution). Moreover, Realtek has similarly not cited a single case holding that a litigation is sham because it resulted in a portfolio license that included more patents than just the ones asserted in the lawsuit(s).

The best Realtek has done is to cite one case, *F.T.C. v. AbbVie Inc.*, 976 F.3d 327 (3d Cir. 2020), where the Court did not find a settlement dispositive of the objective baselessness issue, and badly misdescribe the holding of another, *Sonus Networks, Inc. v. Inventergy, Inc.*, 2015 WL 4539814 (N.D. Cal. July 27, 2015). Dkt. 172 at 18-19. As to the former, Realtek misses the point by ignoring that the Rule 11 problem is it has made allegations knowing full well they are incorrect and meritless. As to the latter, it confirms why Rule 11 sanctions are appropriate.

In *AbbVie*, the F.T.C. alleged that certain brand name pharmaceutical companies brought sham litigation against a generic rival, and then entered into an anticompetitive reverse-payment agreement with that rival. 976 F.3d at 338. The District Court found the original litigation was a sham and found for the F.T.C. on that basis. *Id.* The defendants appealed and, in affirming that portion of the District Court's ruling, the Third Circuit cited a variety of evidence indicating the brand name defendants never could have reasonably expected any sort of success on the merits. *Id.* at 367-68. It was for this reason that the settlements the brand name defendants reached on their patent litigation did not show that the litigation had objective merit. *Id.* Moreover, the settlement itself was an allegedly anticompetitive agreement, as noted above.

*AbbVie* has absolutely no bearing here because multiple courts have held that Future Link's litigations against Realtek *did* have objective merit. Realtek's desperate hope was that the RPX

Agreement somehow demonstrated the cases did not. When Realtek learned that the RPX Agreement ███████████████████████████████████████████████████████████████████, that definitively showed there is not a shred of evidence supporting the idea that the Future Link lawsuits were a sham. *AbbVie*'s focus on the evidence surrounding a patent infringement lawsuit settlement *confirms* that, when Realtek learned about the final nail in its claims' coffin (the unredacted RPX Agreement), it should have voluntarily dismissed its claims in accordance with its Rule 11 obligations.

Next, Realtek argued in its motion to dismiss opposition that *Sonus* is a case where a court denied a *Noerr-Pennington*-based motion to dismiss "despite allegations of a settlement" and that the court supposedly ruled this way because "Sonus may well have simply taken an (allegedly) unnecessary license to avoid the expense of further negotiations and eventual litigation." Dkt. 172 at 18-19. This is a bad-faith description of *Sonus*. What *Sonus* actually held is that the plaintiff plausibly alleged the defendant's pre-suit infringement allegations were objectively meritless. Here, however, Realtek made those exact arguments to multiple different courts and each found the opposite. Next, Realtek's quotation is from the *Sonus* Court's discussion of a *breach of contract* claim, wherein the plaintiff alleged the defendant breached by not offering a patent license on reasonable and nondiscriminatory ("RAND") terms. *See* 2015 WL 4539814, at *2. *Sonus* found the plaintiff's acceptance of an allegedly non-RAND license did not defeat that type of alleged contract breach, because there are a number of reasons it might have accepted that license. *Id.*

As Realtek concedes, *see* Dkt. 172 at 19, the Ninth Circuit held in *Theme Promotions* that, if the *facts* show a litigation resulted in settlement, it is presumptively reasonable absent some other evidence it was not. Here, the *facts* Realtek is aware of not only show a settlement of the Future Link litigations, but also that Courts have repeatedly found Future Link's litigation against Realtek *actually*—not just presumptively—reasonable. In this way, Realtek's opposition to the motion to dismiss, as well as its recent motion for sanctions against Future Link, advocate a position without basis in law and seemingly without any "nonfrivolous argument for extending, modifying, or reversing existing law," Fed. R. Civ. P. 11(b)(2). The RPX Agreement on its face ██████

1 ███████████████████████████████—a successful outcome by any definition.
2 That the Agreement also contains *other* rights and obligations is irrelevant.
3     Accordingly, there is simply no reasonable or good faith way that Realtek can establish an exception to *Noerr-Pennington* for any of Future Link's patent litigations. That Realtek refuses to acknowledge this unavoidable conclusion and has even filed an opposition to the motion to dismiss on these issues flouts Rule 11.
    The Rule 11 determination "is made under an objective reasonableness standard and does not require a finding of subjective bad faith." *Prime Healthcare Servs. v. Humana Ins. Co.*, 2018 WL 8131762, at *6 (C.D. Cal. Aug. 22, 2018). Realtek's lawsuit has been misguided litigation in search of a claim from its very beginning, but it has now crossed into knowingly-meritless territory. The disclosure of the RPX Agreement transformed what was already a deeply flawed lawsuit into a frivolous one. Realtek's persistence in the face of this damning evidence flouts its obligations under Rule 11, and warrants sanctions.

## V.    **CONCLUSION**

    MediaTek respectfully requests that the Court grant MediaTek's motion for sanctions pursuant to Rule 11(c) of the Federal Rules of Civil Procedure. Because they all fundamentally rely on underlying sham litigation, MediaTek requests that the Court strike all claims asserted against MediaTek and order Realtek to pay MediaTek's attorneys' fees and costs incurred in bringing its motion to dismiss the FAC and this motion, and set forth a process by which MediaTek can make evidentiary submissions documenting its relevant fees and costs.

| | | |
|---|---|---|
| Dated: October 18, 2024 | By: | /s/ Adam B. Wolfson |

        KEVIN P.B. JOHNSON, SBN 177129
        kevinjohnson@quinnemanuel.com
        Quinn Emanuel Urquhart & Sullivan, LLP
        555 Twin Dolphin Drive, 5th Floor
        Redwood Shores, CA 94065
        Telephone: (650) 801-5000
        Facsimile: (650) 801-5100

        SEAN S. PAK, SBN 219032
        seanpak@quinnemanuel.com
        ADAM B. WOLFSON, SBN 262125
        adamwolfson@quinnemanuel.com
        Quinn Emanuel Urquhart & Sullivan, LLP
        50 California Street, 22nd Floor
        San Francisco, CA 94111
        Telephone: (415) 875-6600
        Facsimile: (415) 875-6700

        KEVIN HARDY (pro hac vice)
        D.C. Bar No. 473941
        Quinn Emanuel Urquhart & Sullivan, LLP
        1300 I Street, N.W., Suite 900
        Washington, DC 20005
        Telephone: (202) 538-8000
        Facsimile: (202) 538-8100
        kevinhardy@quinnemanuel.com

        *Attorneys for Defendant MediaTek Inc.*