KEVIN P.B. JOHNSON, SBN 177129
kevinjohnson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

SEAN S. PAK, SBN 219032
seanpak@quinnemanuel.com
ADAM B. WOLFSON, SBN 262125
adamwolfson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

KEVIN HARDY (*pro hac vice*)
D.C. Bar No. 473941
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
kevinhardy@quinnemanuel.com

*Attorneys for Defendant MediaTek Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORP., <br><br> Plaintiff, <br><br> v. <br><br> MEDIATEK INC.; IP VALUE MANAGEMENT INC.; and FUTURE LINK SYSTEMS, LLC., <br><br> Defendants. | Case No. 5:23-cv-02774-PCP <br><br> **RESPONSE BY MEDIATEK INC. TO STATEMENT OF INTEREST OF THE UNITED STATES** <br><br> Judge: Hon. P. Casey Pitts <br> Date Filed: June 6, 2023 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.  THE UNITED STATES IGNORES THAT BINDING LAW REQUIRES THE COURT TO ASSESS PLAUSIBILITY THROUGH THE LENS OF WHAT REALTEK ALLEGES CAUSED ANTICOMPETITIVE EFFECTS .................................... 1

II. THE UNITED STATES IMPLICITLY CONCEDES REALTEK DOES NOT PLAUSIBLY ALLEGE THE "SHAM" EXCEPTION, AND THEN ASKS THIS COURT TO IGNORE BINDING LAW ON THE "SERIES" EXCEPTION ....................... 4

CONCLUSION ......................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page**

### Cases

*Atl. Richfield Co. v. USA Petroleum, Inc.*,
    495 U.S. 328 .................................................................................................................... 1

*B&G Foods N. Am., Inc. v. Embry*,
    29 F.4th 527 (9th Cir. 2002) ............................................................................................ 3-4

*Dreamstime.com, LLC v. Google LLC*,
    54 F.4th 1130 (9th Cir. 2022) .......................................................................................... 1-2

*Fed. Trade Comm'n v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ............................................................................................. 2

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) ............................................................................................. 1

*In re Late Fee & Over-Limit Fee Litigation*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007) .............................................................................. 6

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .......................................................................................... 6

*Kulkarni v. Upasani*,
    659 F. App'x 937 (9th Cir. 2016) ..................................................................................... 4

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) ........................................................................................ 5-6

*Prof. Real Est. Invs., Inc. v. Columbia Pic. Indus., Inc.*,
    508 U.S. 49 (1993) ............................................................................................................ 3

*Relevant Grp., LLC v. Nourmand*,
    2024 WL 4048894 (9th Cir. Sept. 5, 2024) ....................................................................... 4

*Rupert v. Bond*,
    771 F. App'x 777 (9th Cir. 2019) ..................................................................................... 4

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ............................................................................................. 3

*Sumotext Corp. v. Zoove, Inc.*,
    2017 WL 2774382 (N.D. Cal. Jun. 26, 2017) ................................................................... 6

*Top Rank, Inc. v. Haymon*,
    2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) ................................................................... 6

*United States v. CalPortland Constr.*,
    2018 WL 6262877 (C.D. Cal. Mar. 9, 2018) .................................................................. 6

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*,
    31 F.3d 800 (9th Cir. 1994) ........................................................................................... 3

*Yi Tai Shao v. Tsan-Kuen Wang*,
    2014 WL 12796494 (N.D. Cal. Dec. 5, 2014) ............................................................... 4

*Zendano v. Basta, Inc.*,
    804 F. App'x 803 (9th Cir. 2020) ................................................................................... 4

*Zoellner v. St. Luke's Reg'l Med. Ctr., Ltd.*,
    937 F. Supp. 2d 1261 (D. Idaho 2013) .......................................................................... 1

**INTRODUCTION**

Defendant MediaTek, Inc. ("MediaTek") respectfully submits this response to the United States' Statement of Interest dated October 4, 2024 (Dkt. 176, the "Statement"). There are several problems with the Statement, both in terms of its underlying assumptions and the arguments it advances. The Statement ultimately does little to aid the Court, and nothing the United States says entitles Realtek to the fishing expedition it has repeatedly, unsuccessfully sought. Instead, the Statement serves only to confirm the Court should use the same analytical approach it already applied in deciding Defendants' original motions to dismiss.

**ARGUMENT**

**I. THE UNITED STATES IGNORES THAT BINDING LAW REQUIRES THE COURT TO ASSESS PLAUSIBILITY THROUGH THE LENS OF WHAT REALTEK ALLEGES CAUSED ANTICOMPETITIVE EFFECTS**

Because the Statement is disconnected from both the actual allegations of the FAC and binding law applicable to a private antitrust plaintiff, it is helpful to reiterate two core legal precepts that inform how the Court must analyze MediaTek's pending motion to dismiss (and how it analyzed the previous motions to dismiss).

First, unlike the United States, private plaintiffs bringing Sherman Act claims must plausibly establish antirust standing. *See, e.g., Zoellner v. St. Luke's Reg'l Med. Ctr., Ltd.*, 937 F. Supp. 2d 1261, 1266 (D. Idaho 2013) ("Unlike the federal government, which can sue anyone who violates the antitrust laws, private plaintiffs must 'meet the requirements for antitrust standing . . . and to acquire antitrust standing, a plaintiff must adequately allege and eventually prove antitrust injury.'") (quoting *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 371 (9th Cir. 2003)). In the context of a complaint alleging antitrust violations stemming from an agreement between two or more entities, a plaintiff must therefore connect the agreement to a competitive harm and then plausibly allege personal harm flowing therefrom. *See Atl. Richfield Co. v. USA Petroleum, Inc.*, 495 U.S. 328, 334 (antitrust injury requires that a plaintiff prove that its alleged loss flows from the anticompetitive aspect or effect of defendants' challenged conduct).

Second, because the plaintiff is the master of its complaint, a court must assess the theory of competitive harm the plaintiff actually alleges. *See, e.g., Dreamstime.com, LLC v. Google LLC*, 54

1  F.4th 1130, 1140-1143 (9th Cir. 2022) (affirming dismissal with prejudice of antitrust claim on the
2  basis that the complaint alleged conduct that only plausibly had effects in a market where plaintiff
3  did not compete); *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) ("in
4  assessing alleged antitrust injuries, courts must focus on anticompetitive effects in the market where
5  competition is allegedly being restrained") (internal quotation marks omitted). This is because "[t]he
6  responsibility for framing the case lies with the parties." *Dreamstime.com*, 54 F.4th at 1140.

7        For these reasons, when assessing antitrust claims, a court must look at whether the specific
8  acts a plaintiff alleges plausibly harmed competition in the relevant market the plaintiff defines. If
9  a plaintiff does not, dismissal is appropriate. *Id.* at 1143 ("Dreamstime expressly tied its Section 2
10 claim to the online search advertising market. It did not identify any actions by Google that tended
11 to harm competition in that market. We conclude that the district court properly dismissed its Section
12 2 claim."); *see also Qualcomm*, 969 F.3d at 992 (error for district court to consider alleged economic
13 harms to Qualcomm's OEM customers, even if it "result[ed] in higher prices to consumers," because
14 such harms were not in the relevant market the FTC alleged, nor to competition or competitors in
15 that market).

16       The United States argues that agreements like the "Bounty" agreement *can* have
17 anticompetitive effects. *See* Statement at 6 ("a bounty provision like the one alleged . . . *can* be used
18 to raise a rival's costs") (emphasis added). It is conceivably possible that the license with IPV *could*
19 be subject to antitrust scrutiny *if* Realtek alleged the agreement itself generated anticompetitive
20 effects. *See* Dkt. 48 (MediaTek MTD original Complaint) at 11. The Court similarly recognized that
21 hypothetical possibility. *See* Dkt. 95 (Order Granting Motions to Dismiss) at 10.

22       But that is not the theory Realtek's FAC alleges. Whatever theoretical concern the United
23 States may have, *Realtek* does not allege the agreement itself had anticompetitive effects. Instead,
24 Realtek alleges anticompetitive effects arose from *actions* the "Bounty" agreement supposedly
25 incentivized. Specifically, Realtek alleges that it and competition suffered when Defendants
26 IPValue and Future Link (collectively, "IPV") instituted and then pursued lawsuits against Realtek
27 that supposedly created the perception of supply chain risk. Dkt. 129 (First Amended Complaint
28 ("FAC")) ¶¶10, 12, 67, 227.

Under binding precedent, *see supra*, the Court must (and did) analyze whether Realtek plausibly alleged antitrust claims based on the IPV lawsuits. Critically, Realtek does not allege any competitive or personal harm *apart* from harm allegedly caused by the lawsuits or communications about those lawsuits. Accordingly, its claims are subject to the *Noerr-Pennington* doctrine, absent some recognized exception. *See Prof. Real Est. Invs., Inc. v. Columbia Pic. Indus., Inc.*, 508 U.S. 49, 56 (1993) (individual sham lawsuits); *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 810 (9th Cir. 1994) (anticompetitive "series"); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (litigation threats for purposes of obtaining licenses). The United States implicitly concedes this point. *See* Statement at 11.

It is for this reason that the Statement's many pages of argument about the "bounty provision" itself, as well as its argument against the application of *Liberty Lake* to this case, are ultimately beside the point. *See* Statement at 11-17. Realtek must plausibly establish *its* basis for antitrust standing, and the Court must assess only what Realtek alleges caused anticompetitive effects. Since *Noerr-Pennington* circumscribes when litigation or threats of litigation can be actionable, the Court must assess Realtek's claims under that standard, as it did before. The United States notably does not identify a single case where the *only* anticompetitive effects a plaintiff alleged stemmed from acts subject to *Noerr-Pennington*[1] and a court nevertheless assessed the claims without reference to that doctrine. To do so would be error.

The United States also asserts that *Noerr-Pennington* immunity is "rarely" granted on the pleadings, and does so based on a single Central District of California ruling. Statement at 4, 9. This attempt to elevate language from a non-binding outlier decision to a statement of settled law is unfounded. Indeed, the Ninth Circuit has repeatedly affirmed dismissal on the pleadings under *Noerr-Pennington* where the plaintiff (like here) failed to plausibly allege an exception to *Noerr-Pennington* immunity under that doctrine's demanding requirements. *See, e.g., B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2002) (affirming dismissal under Rule 12(b)(6) under

---

[1] The United States asserts that the FAC "plausibly pleads exclusionary, anticompetitive effects." Statement at 6. However, the only effects the Statement references are routine litigation costs and lost customers from the IPV lawsuits—*i.e.*, supposed effects from government petitioning.

-3-

*Noerr-Pennington* doctrine), *cert. denied*, 143 S. Ct. 212; *Zendano v. Basta, Inc.*, 804 F. App'x 803, 804 (9th Cir. 2020) (affirming judgment on the pleadings based on *Noerr-Pennington*); *Rupert v. Bond*, 771 F. App'x 777, 778 (9th Cir. 2019) (affirming dismissal under *Noerr-Pennington*); *Kulkarni v. Upasani*, 659 F. App'x 937, 941 (9th Cir. 2016) (same). *See also Yi Tai Shao v. Tsan-Kuen Wang,* 2014 WL 12796494, at *10 (N.D. Cal. Dec. 5, 2014) ("The Ninth Circuit has consistently upheld dismissal of claims on a motion to dismiss for lack of subject matter jurisdiction pursuant to *Noerr-Pennington*.").

## II.    THE UNITED STATES IMPLICITLY CONCEDES REALTEK DOES NOT PLAUSIBLY ALLEGE THE "SHAM" EXCEPTION, AND THEN ASKS THIS COURT TO IGNORE BINDING LAW ON THE "SERIES" EXCEPTION

Reading the Statement closely, a crucial concession stands out: the United States does not contend Realtek plausibly alleges the "sham" exception to the *Noerr-Pennington* doctrine. Instead, the United States "does not take a position" on that argument (Statement at 10 n.1), and only argues that Realtek plausibly alleges the "series" exception to *Noerr-Pennington*. *Id.* at 5, 9-11. It is telling that the United States cannot even tacitly support Realtek's "sham" allegations, given each of the courts overseeing these cases found IPV's lawsuits objectively reasonable and Realtek has not explained how or why those courts were wrong to do so. *See* MTD at 8-9; Reply at 3-5.

In arguing that Realtek plausibly alleged an anticompetitive "series," the United States not only asks this Court to ignore binding law, but it also provides arguments on an incomplete record. Regarding the former, at issue in this case are, at best, four lawsuits against Realtek. Statement at 3.[2] As MediaTek pointed out in its motion dismiss briefing, the Ninth Circuit recently reaffirmed that four lawsuits is too few to constitute an anticompetitive series. *See* Reply at 6-7 (citing *Relevant Grp., LLC v. Nourmand*, 2024 WL 4048894, at *9 (9th Cir. Sept. 5, 2024)). The United States fails to grapple with the Court's well-reasoned holdings as to why Realtek fails to satisfy the "series" exception (Order at 11-13), nor the binding law on which these holdings relied.

Just as importantly, the United States concedes that the *purpose* of an anticompetitive series

---

[2] The United States correctly notes that IPV also initiated two lawsuits against Amlogic. *Id.* However, Realtek does not allege anywhere that the IPV lawsuits impaired Amlogic's competitive position. *See generally* FAC. *See also* MTD at 1, 3, 6-7; Reply at 6.

-4-

1  of lawsuits must be to impose the costs of the suits themselves, rather than obtain a favorable result.
2  Statement at 9. But here, the parties and Court know that IPV cared quite a lot about the result of
3  the Realtek cases, because it obtained ███████████████████████████████
4  ████████████████████████████████████████████████████████████████████
5  ███████████████████████████. *See* Dkt. 140-15 (redacted, public RPX Agreement); 142-3
6  (unredacted, under-seal RPX Agreement). The United States chose to weigh in despite lacking
7  crucial knowledge of critical facts. Most conspicuously, the United States does not have access to
8  the full terms of the RPX Agreement, which the Statement neglects to discuss whatsoever. For the
9  reasons stated in MediaTek's reply brief and MediaTek's October 18, 2024 Motion for Rule 11
10 Sanctions (Dkt. 184), the RPX Agreement is fatal to Realtek's attempted application of the "series"
11 exception. *See* Reply at 4-5; Sanctions Motion at 4-6, 9-13.

12      Finally, the United States concedes that "the specific bounty provision at issue related only
13 to a single suit," but asserts that "the FAC plausibly alleges that there were multiple agreements to
14 file suits in multiple jurisdictions." Statement at 10 n.2. For this legal conclusion, the Statement cites
15 only Paragraph 119 of the FAC. A look at Paragraph 119, however, completely undermines any
16 such inference. There, Realtek alleges that MediaTek and Future Link ████████████████
17 ████████████████████████████████████████████████████████████████████
18 ████████████████████████. It also makes clear that Future Link sought ███████████
19 ████████████████████████████████████████████████████████████████████,
20 which the Court already noted facially incentivizes, at most, a single lawsuit. Paragraph 119 thus
21 provides no basis upon which this Court could find Realtek plausibly pleaded "multiple
22 agreements," as further evidenced by the exceedingly vague way the allegations even reference such
23 speculative agreements: "multiple agreements either express or implied." The FAC offers zero
24 factual information about when MediaTek and IPV supposedly reached such "express or implied"
25 agreements, or what their terms were.

26      The Statement thus adds little to the discussion, and shows through its paucity of citations
27 that Realtek does not, in fact, plausibly allege multiple agreements. Under well-settled Ninth Circuit
28 law, Realtek's allegations are insufficient to plausibly allege an agreement. *See Name.Space, Inc. v.*

*Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015) ("A complaint asserting a §1 claim must allege facts plausibly suggesting (not merely consistent with) a conspiracy. It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible.") (internal citations and quotations omitted); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (a plaintiff must plead "not just ultimate facts (such as a conspiracy), but evidentiary facts" of, *inter alia*, "a contract, combination or conspiracy").

When presented with conclusory allegations of agreement of the kind contained in the FAC, courts routinely reject them as a basis for a Section 1 claim at the pleadings stage. For example, *In re Late Fee & Over-Limit Fee Litigation* granted a motion to dismiss Sherman and Cartwright Act claims where the complaint made "several conclusory allegations that the defendants agreed" to take certain coordinated conduct, "but it provide[d] no details as to when, where, or by whom this alleged agreement was reached" and the complaint provided "an alternative explanation" for the challenged conduct. *See* 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014). The FAC alleges such an alternative explanation, too—that IPV desired valuable licensing fees. *E.g.*, ¶¶165-66.[3]

Here, the United States announces that "MediaTek had entered into one or more bounty provisions," and then refers to the Bounty agreement as an "example" (Statement at 3) without reference to any other actual agreements. This claim conspicuously ignores that the FAC is provides literally no details about these supposed other agreements, and nothing but rank speculation as to

---

[3] *See also, e.g.*, *United States v. CalPortland Constr.*, 2018 WL 6262877, at *3-4 (C.D. Cal. Mar. 9, 2018) (dismissing Section 1 claim that relied on "labels" and a handful of "anecdotes" to describe defendants' conduct because it failed to identify "who entered into agreements, state when, where, and how those individuals met to discuss and enforce agreements, and does not identify specific products, prices, and regions that were agreed upon"), *aff'd sub nom. Kraft v. CalPortland Constr.*, 801 F. App'x 547 (9th Cir. 2020); *Sumotext Corp. v. Zoove, Inc.*, 2017 WL 2774382, *5-6 (N.D. Cal. Jun. 26, 2017) (dismissing antitrust claims based on "bare bones" allegations that asserted "ultimate facts" and did not support a plausible inference of conspiracy); *Top Rank, Inc. v. Haymon*, 2015 WL 9948936, *14 & n.12 (C.D. Cal. Oct. 16, 2015) (noting that plaintiff's complaint, like the FAC, contained "conclusory statements and hyperbole" and dismissing antitrust claims because such "statements coupled with legal conclusions [] cannot support the existence of an agreement to restrain trade in violation of Section 1").

their existence. *See* MTD at 3, 16-17; Reply at 6.

## CONCLUSION

MediaTek appreciates that the United States believes it must monitor developments in antitrust law and provide its position, when it believes necessary to do so. However, this is not a case presenting a close question of law, nor a difficult decision under the facts, as alleged. Realtek alleges harm from acts that the Supreme Court and Ninth Circuit hold this Court must assess under the *Noerr-Pennington* doctrine. Because Realtek fails to plausibly allege an exception to the *Noerr-Pennington* doctrine or plausibly allege multiple other portions of its antitrust claims, they fail. *See generally* MTD at 4-8; Reply at 2-8. The Statement does not identify any reason for the Court to believe otherwise, nor to apply any other approach to assessing the claims than it did with the original motions to dismiss.

Dated: October 25, 2024

By: */s/ Adam Wolfson*

KEVIN P.B. JOHNSON, SBN 177129
kevinjohnson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

SEAN S. PAK, SBN 219032
seanpak@quinnemanuel.com
ADAM B. WOLFSON, SBN 262125
adamwolfson@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

KEVIN HARDY (pro hac vice)
D.C. Bar No. 473941
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
kevinhardy@quinnemanuel.com

*Attorneys for Defendant MediaTek Inc.*