RUDY Y. KIM (SB# 199426)
rudykim@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304-1106
Tel: (650) 320-1800
Fax: (650) 320-1900

MICHAEL F. MURRAY (*pro hac vice*)
michaelmurray@paulhastings.com
JAMES W. BROWN (*pro hac vice forthcoming*)
jamesbrown@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 551-1700
Fax: (202) 551-0460

JAMES M. PEARL (SB# 198481)
jamespearl@paulhastings.com
EMMA FARROW (SB# 347126)
emmafarrow@paulhastings.com
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Tel: (310) 620-5700
Fax: (310) 620-5899

NOAH B. PINEGAR (*pro hac vice*)
noahpinegar@paulhastings.com
ERIC W. LIN (*pro hac vice*)
ericlin@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 318-6000
Fax: (212) 319-4090

*Attorneys for Plaintiff Realtek Semiconductor Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORP., <br><br> Plaintiff, <br><br> vs. <br><br> MEDIATEK INC.; IPVALUE MANAGEMENT, INC.; AND FUTURE LINK SYSTEMS, LLC, <br><br> Defendant. | CASE NO. 5:23-cv-02774-PCP <br><br> **PLAINTIFF REALTEK SEMICONDUCTOR CORP.'S RESPONSE TO DEFENDANTS' RESPONSES TO THE STATEMENT OF INTEREST OF THE UNITED STATES** <br><br> Judge: Honorable P. Casey Pitts |

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

I. The DOJ is Correct that Courts Rarely Find *Noerr-Pennington* Immunity at the Pleading Stage, and For Good Reason ................................................................................ 3

II. The DOJ is Correct that Realtek "Sufficiently Alleges" Exceptions to *Noerr-Pennington* . 5

III. The DOJ is Correct that *Liberty Lake* Does Not Control the Outcome of Defendants' Motions to Dismiss .................................................................................................... 8

CONCLUSION ........................................................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*,
  691 F. Supp. 3d 1132 (N.D. Cal. 2023) ................................................................................ 6

*B&G Foods N. Am., Inc. v. Embry*,
  29 F.4th 527 (9th Cir. 2022) ................................................................................................. 6

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
  237 F.3d 394 (4th Cir. 2001) .............................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 4

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982) ......................................................................................... 3, 5

*Kulkarni v. Upasani*,
  659 F. App'x 937 (9th Cir. 2016) ........................................................................................ 6

*M.R. v. Dreyfus*,
  697 F.3d 706 (9th Cir. 2012) ............................................................................................... 4

*Move, Inc. v. Real Est. All. Ltd.*,
  No. CV 07-2185-GHK, 2008 WL 11338568 (C.D. Cal. Dec. 22, 2008) ............................. 9

*In re Outlaw Lab'y, LP Litig.*,
  No. 3:18-cv-840-GPC-BGS, 2019 WL 1205004 (S.D. Cal. Mar. 14, 2019) ....................... 5

*Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*,
  642 F. App'x 665 (9th Cir. 2016) ........................................................................................ 8

*Relevant Grp., LLC v. Nourmand*,
  116 F.4th 917 (9th Cir. 2024) .......................................................................................... 3, 7

*Rupert v. Bond*,
  771 F. App'x 777 (9th Cir. 2019) ........................................................................................ 6

*Sonus Networks, Inc. v. Inventergy, Inc.*,
  No. C-15-0322 EMC, 2015 WL 4539814 (N.D. Cal. July 27, 2015) .................................. 5

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.*,
  No. CV-18-02980-PHX-DWL, 2020 WL 6395442 (D. Ariz. Nov. 2, 2020) ...................... 9

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*,
  31 F.3d 800 (9th Cir. 1994) .................................................................................................. 3

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
  555 F. Supp. 3d 829 (N.D. Cal. 2021) ............................................................................. 5, 8

*Zendano v. Basta, Inc.*,
  804 F. App'x 803 (9th Cir. 2020) ........................................................................................ 6

**Other Authorities**

Statements of Interest, DOJ Antitrust Division,
  https://www.justice.gov/atr/statements-interest (last visited October 28, 2024) ...................... 4

Plaintiff Realtek Semiconductor Corporation ("Realtek") respectfully submits this combined response to the Responses filed by (i) Defendant MediaTek, Inc. ("MediaTek"); and (ii) Defendants IPValue Management Inc. and Future Link Systems, LLC (together, the "PAE Defendants"), to the Statement of Interest (the "Statement") (ECF No. 176) filed by the United States Department of Justice ("DOJ").[1]

## INTRODUCTION

As the DOJ describes it, Realtek's First Amended Complaint ("FAC") plausibly pleads "an agreement [by the PAE Defendants] with an already-powerful firm," *i.e.*, MediaTek, "targeted to weaken rivals by imposing licensing or litigation costs upon them – all in violation of Sections 1 and 2 of the Sherman Act." Statement at 4. The DOJ then argues that these allegations are, "at minimum . . . sufficient for discovery." *Id.* at 5. Defendants' Responses – which are more aptly termed sur-replies in support of their respective motions to dismiss – do not suffice to undermine the DOJ's key conclusion: Realtek states plausible antitrust claims which the Court should ***not*** dismiss under the *Noerr-Pennington* doctrine (or based on Defendants' arguments regarding antitrust injury or economic plausibility).

*First*, Defendants fail to meaningfully dispute the DOJ's argument that awarding *Noerr-Pennington* immunity at the pleading stage is rarely appropriate and that, here, the action should proceed to discovery before any decision on the application of that doctrine. Statement at 4-5. MediaTek's argument that disfavoring dismissal on *Noerr-Pennington* grounds is an "outlier" view (MTR at 3) is belied by the numerous cases that Realtek cited in its opposition to the motions to dismiss, including the Ninth Circuit's holding in *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1253 (9th Cir. 1982) that the question of whether litigations are actionable shams is a *question of fact*. ECF No. 172 at 8.

*Second*, Defendants do not provide a basis to discount the DOJ's favorable evaluation of Realtek's pleading of the *Noerr-Pennington* series exception. Statement at 10 ("Realtek's

---

[1] MediaTek's Response (ECF No. 193) is cited herein as "MTR" and the PAE Defendants' Response (ECF No. 195) is cited herein as "PR."

complaint plausibly alleges . . . a series of lawsuits [brought] 'pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival.'") (quoting *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994)). Both Responses point to the Ninth Circuit's decision in *Relevant Group* as somehow foreclosing the series exception here (MTR at 4; PR at 3), but the *Relevant Group* case did not set a numerical brightline for the minimum of cases required to plead a series and likewise acknowledged that the Ninth Circuit has "never defined what number constitutes a 'series' of lawsuits" for *Noerr-Pennington* purposes. *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 929 (9th Cir. 2024). And, *Relevant Group* considered only four litigations, as opposed to the six alleged here.[2] *Id.*; Statement at 3 ("Realtek alleges that . . . the PAEs filed six baseless patent infringement suits"). MediaTek's further contention that the DOJ has somehow "implicitly conceded" that Realtek has not sufficiently alleged the "sham" exception (as opposed to the "series" exception) to *Noer-Pennington* is similarly meritless. MTR at 4-5. DOJ did not take a position one way or the other, which is not surprising in light of the precedent that holds that determining whether a litigation is a sham is fact intensive and the significant (and often sealed) factual record in this case.

*Third*, the DOJ persuasively distinguishes the *Liberty Lake* case, by noting that placing an unconditional bounty to file sham litigation is distinct from financing it.

*Finally*, both Responses note that this Court is not bound to follow the DOJ's recommendation that the pending motions to dismiss be denied. MTR at 7; PR at 10, n.5. That is, of course, true. Nevertheless, in this Circuit, the DOJ's views as expressed in a Statement of Interest are entitled to "considerable respect." *M.R. v. Dreyfus*, 697 F.3d 706, 735 (9th Cir. 2012) (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 583 (1999)). And here, consistent with that "considerable respect," the fact that the DOJ opted to submit an exceedingly rare[3] Statement of

---

[2] Moreover, subsequent to the filing of the FAC, PAE Defendants have also dismissed their Japan proceeding with prejudice, leaving a clean sweep of entire unsuccessful sham proceedings brought by defendants.

[3] Out of the hundreds of antitrust cases being litigated across the United States, DOJ has filed a Statement of Interest in only eight cases in 2024. *See* Statements of Interest, DOJ Antitrust Division, https://www.justice.gov/atr/statements-interest (last visited October 28, 2024).

Interest in this case is powerful evidence that, indeed, the FAC has at the very least "nudged" Realtek's antitrust claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**ARGUMENT**

**I.    The DOJ is Correct that Courts Rarely Find *Noerr-Pennington* Immunity at the Pleading Stage, and For Good Reason**

A chief concern imbued throughout the Statement is that, if the Court grants Defendants' motion to dismiss, powerful firms that use baseless litigation as an anticompetitive weapon will be immunized from antitrust *liability*; and, worse, they will be immunized from civil *discovery* altogether. Statement at 10 ("If defendants' arguments are accepted, *Noerr-Pennington* would be improperly applied to protect well-pleaded serial petitioning activity from discovery[.]"). This would have the inequitable effect of robbing victims of anticompetitive litigation campaigns (like Realtek) of the opportunity to *prove*, through discovery, that the lawsuits against them were actionable shams (whether individually or as a series).

Accordingly, as the DOJ argues, a sizable body of law has developed counseling courts against awarding *Noerr-Pennington* immunity at the pleading stage. Statement at 4; *see, e.g.*, *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 555 F. Supp. 3d 829, 877 (N.D. Cal. 2021) (noting that "courts rarely award *Noerr-Pennington* immunity at the motion to dismiss stage" and denying motion to dismiss antitrust claims); *Sonus Networks, Inc. v. Inventergy, Inc.*, No. C-15-0322 EMC, 2015 WL 4539814, at *2 (N.D. Cal. July 27, 2015) (similar, RICO claims); *In re Outlaw Lab'y, LP Litig.*, No. 3:18-cv-840-GPC-BGS, 2019 WL 1205004, at *5 (S.D. Cal. Mar. 14, 2019) (similar, RICO claims). And each of these cases so-instructs based on the Ninth Circuit's clear holding in *Clipper Exxpress* that "[w]hether something is a genuine effort to influence governmental action, or a mere sham, is a **question of fact**." *Clipper Exxpress*, 690 F.2d at 1253 (emphasis added). Therefore, without the benefit of discovery into the details of challenged litigation activity and the motivations of the defendant-litigants, courts generally cannot fairly assess allegations that litigations are shams. That is why it is generally inappropriate to dismiss an antitrust claim on *Noerr-Pennington* grounds prior to discovery.

The PAE Defendants, wisely, do not contest this point of settled law. MediaTek, by contrast, hotly contests it (MTR at 3-4), but its response is misleading to a fault. Strikingly, MediaTek asserts that the policy of rarely dismissing on *Noerr-Pennington* grounds is based on cherry-picked language from a single "non-binding outlier decision" and is not "settled law." *Id.* at 3:19-22. But MediaTek knows that this is not true. In its opposition to the Motion to Dismiss, Realtek cited *all* of the decisions above (including the Ninth Circuit's holding in *Clipper Exxpress*) for the premise that dismissal on *Noerr-Pennington* grounds is rarely appropriate. ECF No. 172 at 8. MediaTek's choice to pretend, in this context, that these authorities do not exist reflects that it has no answer to this authority.

MediaTek's claim that "the Ninth Circuit has repeatedly affirmed dismissal on the pleadings under *Noerr-Pennington*" is also misleading. MTR. at 3:22-24. While MediaTek has identified a few such decisions, it fails to note that in each case, the alleged sham litigation was a small-scale private matter such as a landlord-tenant dispute, a dispute over a family estate, or even a Prop. 65 case against a seller of "Cookie Cakes."[4] The cases were thus nothing like those at issue here, where the Court faced: (1) complex issues of patent invalidity and infringement; (2) acknowledgment of the invalidity of the patents; (3) sanctions against a party bringing the action; (4) condemnations that the pleadings were against public policy; and last but not least (5) no successful advancement of the merits of the claims in the litigation. These distinctions are highly material, as a court can much more easily evaluate on the pleadings whether a simple private landlord tenant litigation is a

---

[4] *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 532 (9th Cir. 2022) (holding, at the pleading stage, that a private citizen's lawsuit against a seller of Cookie Cakes under **Prop. 65** is protected petitioning conduct); *Zendano v. Basta, Inc.*, 804 F. App'x 803, 804 (9th Cir. 2020) (affirming *Zendano v. BASTA*, No. 2:18-cv-05154-RGK-SS, 2019 WL 3000657 (C.D. Cal. Feb. 21, 2019), which held, at the pleading stage, that a private **landlord tenant litigation** for back-rent and attorneys' fees was protected petitioning conduct); *Rupert v. Bond*, 771 F. App'x 777 (9th Cir. 2019) (affirming *Rupert v. Bond*, 68 F. Supp. 3d 1142 (N.D. Cal. 2014), which held that litigation filings in a **private dispute over a family estate** were protected petitioning conduct); *Kulkarni v. Upasani*, 659 F. App'x 937, 939 (9th Cir. 2016) ("participation in California civil and criminal cases stemming from [Appellant's] **son's abduction**" was protected petitioning conduct) (emphasis added).

sham than whether a series of unanimously unsuccessful complex litigations were brought for an anticompetitive purpose.

In the end, just as the DOJ argues, the law is clear that – especially in antitrust cases where "the proof lies largely in the hands of the defendants,'" (*Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*, 691 F. Supp. 3d 1132, 1145 (N.D. Cal. 2023) (citing *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 834 (9th Cir. 1980))) – dismissal on the pleadings on *Noerr-Pennington* grounds is almost never appropriate.

**II.    The DOJ is Correct that Realtek "Sufficiently Alleges" Exceptions to *Noerr-Pennington***

While both Responses engage heavily with the DOJ's arguments on other subjects, each is noticeably light in its response to the crux of the issue most pressingly before the Court:  the sufficiency of Realtek's pleading.  On that front, the Responses offer only the conclusory assertions that "binding" law requires that Realtek's claim be dismissed (MTR at 4; PR at 1), or that the Statement is really just the DOJ's "say-so" (PR at 8) as evidenced by its "paucity of citations." MTR at 5-6.  These claims either mischaracterize the law, misrepresent the Statement, or both. Even less persuasive is MediaTek's insistence that the DOJ has "implicitly conceded" Realtek's defeat on the "sham" exception to *Noerr-Pennington* and its argument that – essentially – the Court should forgo discovery and just accept MediaTek's flawed interpretation of a licensing agreement (the "RPX Agreement") as dispositive.  MTR at 4-5.

To start, both Responses highlight the Ninth Circuit's recent decision in *Relevant Group* – a case affirming *summary judgment*, not a motion to dismiss – and argue that, with that decision, the Ninth Circuit foreclosed application of the series exception to cases involving four or fewer litigations.  MTR at 4; PR at 3.  As a first matter, Realtek alleges a series of *six* litigations here, not just the four at issue in *Relevant Group*.  Statement at 10; *Relevant Group,* 116 F.4th at 929 ("Defendants challenged four of Relevant's projects").  That fact alone is sufficient to differentiate *Relevant Group* from the instant case.

But *Relevant Group* is also inapposite in a more fundamental way:  the main question in that case was *what* counts as a "proceeding" for purposes of the series exception, not *how many*

1. proceedings makes a series. *See Relevant Group* 116 F.4th at 930 ("Relevant argues . . . that we should count 'comment letters,' 'objections' and 'appeals' as discrete 'proceedings' . . . We are not persuaded."). It was only *after* exhaustively analyzing the case law and determining that only independent lawsuits are "proceedings," that the Ninth Circuit merely ruled that the method of counting litigations and determining whether they evince a series was "not unreasonable." *Id.* at 931. The statement that the PAE Defendants emphasize – that the "rarity" of the series exception "is a feature rather than a bug" (PR at 3) – is similarly just observational dicta. Suffice to say, *Relevant Group* is a far cry from the start-and-end of Realtek's series allegations, as Defendants seek to portray it.

   Nor do Defendants' attempts to paint the Statement as inadequately supported – or just the DOJ's "own naked say-so" (MTR at 5-6; PR at 8) – fare any better. There is no authority requiring the DOJ to cite each and every paragraph of a complaint in its Statement of Interest; such a requirement would be imprudent and needlessly burdensome. And the specific areas of the Statement that Defendants challenge have plenty of support in the FAC in any event. MediaTek, for example, takes issue with the Statement's finding that "the FAC plausibly alleges that there were multiple agreements to file suits in multiple jurisdictions" and argues that this finding was based only on a single, insufficient FAC paragraph. MTR at 5 (citing Statement at 10 n.2). But there is ample support for that allegation in the FAC (beyond just the paragraph the DOJ cites) – as noted in Realtek's opposition to the motions to dismiss, the FAC alleges that the PAE Defendants sought payment pursuant to a bounty agreement for multiple lawsuits, that they discussed multiple lawsuits in the context of bounty agreement negotiations, and even that they considered explicitly including incentives for multiple lawsuits in the bounty agreement. *See* ECF No. 172 at 13, n.10 (collecting FAC citations). These types of allegations, and others in the FAC, easily push the claim of multiple agreements into the realm of plausibility.

   The same is true of the PAE Defendants' complaint that the Statement's argument that Realtek adequately pleads antitrust injury are sufficient. Statement at 6 ("The complaint plausibly pleads exclusionary, anticompetitive effects"). Even leaving aside that "causation [in the antitrust

1  injury context] is an ***intensely*** factual question that should typically be resolved by a jury" *In re Xyrem*, 555 F. Supp. 3d at 872 (emphasis added), the DOJ supports its position on Realtek's pleading with thorough citations to the FAC, including to allegations of specific and actual price increases. Statement at 6.  The one authority that the PAE Defendants cite here – *Prime Healthcare Services v. SEIU* – is entirely inapposite.  There, the Ninth Circuit affirmed an order dismissing a complaint for failure to plead antitrust injury where the complaint failed to allege that "Defendants' actions actually caused health care consumers to face higher prices or a reduction in quality of care." *Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, 642 F. App'x 665, 667 (9th Cir. 2016). Here, though, Realtek sets forth detailed allegations of higher prices for consumers and decreased innovation; *i.e.*, Realtek provides exactly what was missing from the complaint in the *Prime Healthcare* case.  *See* ECF No. 172 at 25-28.[5]

Finally, MediaTek's claim that the DOJ has supposedly implicitly conceded Realtek's defeat on its sham exception allegations lacks any reasoned basis.  It makes absolutely no sense that where the DOJ says it "takes no position" on a particular issue, that means the DOJ thinks Realtek *loses* on that issue.  Nor is there any authority to that effect.  In fact the FAC sets forth voluminous allegations demonstrating that each of the challenged suits was objectively baseless and brought for an improper purpose, including that none of the litigations achieved any merits success, that prior to an agreement to pay the PAE Defendants to sue Realtek none had any plan to do, and the fact that a judge in the Western District of Texas *sanctioned* the PAE Defendants in connection with one of the litigations (albeit not monetarily).  *See* ECF No. 172 at 1-2.

Perhaps most significantly though, Realtek alleges that the PAE Defendants *actually knew* that the patents underlying their suits were invalid and not infringed, because MediaTek told them

---

[5] The PAE Defendants' reference to a different Statement of Interest filed in a different case in which the DOJ argued that antitrust injury was inadequately pled is way off base.  *See* PR at 9 (citing Ex. A to PR).  In that other case, the plaintiffs and defendants were *not alleged to be competitors*, so baseless suits brought by defendants would not harm a "rival" and thus would not harm competition. *See* Ex. A to PR at 15 ("Nor have Plaintiffs alleged that they compete with Defendants such that these increased costs [from defending baseless litigation] would impair a rival firm.").  That is completely different from this case, where there is no dispute that MediaTek – the firm responsible for all the sham litigation – is Realtek's competitor.

1  so. *Id.* at 1 (citing FAC ¶¶ 97, 112).  This type of allegation has been repeatedly held sufficient to
2  plead an actionable sham, notwithstanding any purported "implicit concession."  *See ThermoLife*
3  *Int'l LLC v. NeoGenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2020 WL 6395442, at *6 (D. Ariz.
4  Nov. 2, 2020) ("The bottom line is that HumanN's allegations, taken as true, plausibly allege
5  objective baselessness—HumanN alleges that ThermoLife knew Neo40 didn't infringe the '140
6  patent but brought an infringement lawsuit anyway"); *Move, Inc. v. Real Est. All. Ltd.*, No. CV 07-
7  2185-GHK (AJWx), 2008 WL 11338568, at *2 (C.D. Cal. Dec. 22, 2008) ("Plaintiffs' allegation
8  that REAL knew that its '989 patent was invalid is relevant, not just to the subjective component
9  of bad faith, but to the objective component as well").

10  MediaTek's claim that the "parties and the Court know that [the PAE Defendants] cared
11  quite a lot about the result[] of the Realtek cases" because of a third party settlement agreement
12  regarding hundreds of patents is also unavailing.  MTR at 5.  First, as a factual matter, that
13  agreement (the RPX Agreement) does not reflect *any* specific consideration paid for any of the
14  three patents or claims asserted against Realtek (rather than the hundreds of other licensed patents
15  by multiple licensees) – so it says nothing about what the PAE Defendants obtained through their
16  baseless litigations.  Second, MediaTek cites no authority for its seeming argument that where an
17  action settles for value, the action was not meritless – such a rule would also defy logic, as parties
18  settle baseless cases for value all the time to avoid litigation costs (or for other reasons).  Third, this
19  is yet another attempt by MediaTek to have this case resolved prematurely on a quintessential fact
20  issue – even if MediaTek were correct that the RPX Agreement evidenced a settlement for value
21  for the patents asserted against *Realtek* (and that fact could be determined on the pleadings), PAE
22  Defendants' *intent* in bringing and dismissing the claims cannot be resolved on the pleadings
23  anyway.

24  **III.  The DOJ is Correct that *Liberty Lake* Does Not Control the Outcome of Defendants' Motions to Dismiss**

26  In light of the Court's directive that Realtek's amended complaint should focus on
27  "identify[ing] the specific ways in which the defendants used the litigation itself . . . as an
28  anticompetitive weapon," (*i.e.*, the *Noerr-Pennington* exceptions), ECF No. 95 at 12-13, Realtek

did not principally focus its motion to dismiss briefing on arguing that *Noerr-Pennington* does not apply *at all*. However, Realtek continues to fully agree with the DOJ's argument that the Ninth Circuit's decision in *Liberty Lake* "should not . . . be read to stand for the principle that a competitor is exempt under Noerr-Pennington any time it writes a check that encourages litigation against a rival." Statement at 16; ECF No. 172 at 9 n. 8 (making a similar argument). As the DOJ correctly notes, the *Liberty Lake* case considered a developer who funded litigation (brought by a third party) to prevent a rival developer from building a shopping center, and the only real holdings in that case were that the funded lawsuits were (i) not shams; (ii) and, as a result, protected petitioning activity. Statement at 16.

But *funding* a litigation is very different from *rewarding* a litigation. It makes complete sense, and is consistent with *Noerr-Pennington*'s purpose (protecting the right to petition), to immunize a party that provides the resources necessary for another party to litigate, thus *participating* in the petitioning conduct through the provision of funds. It is a different question entirely – and one that *Liberty Lake* does not answer – whether rewarding a litigant (but not otherwise participating in the litigation) is petitioning conduct. As the reward has nothing to do with actually enabling the petitioning, it certainly would be logical to conclude that providing an award is *not* protected conduct. That is also why the PAE Defendants' citation to the Fourth Circuit's decision in *Baltimore Scrap* is not on point. That case, too, considered a litigation that was "surreptitiously finance[ed]," *i.e.*, enabled, by a competitor. *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 396 (4th Cir. 2001). Unlike a financed litigant, the PAE Defendants could easily have sued Realtek themselves if they had a claim and reason to do so (they didn't, prior to the bounty).

**CONCLUSION**

For the reasons stated herein, Realtek respectfully requests that this Court duly consider the DOJ's Statement of Interest in deciding the pending motions to dismiss and accordingly deny both motions.

|   |   |   |
|---|---|---|
| DATED: October 31, 2024 | By: | /s/ Rudy Y. Kim |

*Attorneys for Plaintiff Realtek Semiconductor Corp.*

RUDY Y. KIM (SB# 199426)
rudykim@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, CA 94304
Tel: (650) 320-1800
Fax: (650) 320-1900

JAMES M. PEARL (SB# 198481)
jamespearl@paulhastings.com
EMMA FARROW (SB# 347126)
emmafarrow@paulhastings.com
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Tel: (310) 620-5700
Fax: (310) 620-5899

MICHAEL F. MURRAY (*pro hac vice*)
michaelmurray@paulhastings.com
JAMES W. BROWN (*pro hac vice forthcoming*)
jamesbrown@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 551-1700
Fax: (202) 551-0460

NOAH B. PINEGAR (*pro hac vice*)
noahpinegar@paulhastings.com
ERIC W. LIN (*pro hac vice*)
ericlin@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 318-6000
Fax: (212) 319-4090